**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*,[1] | ) | |
| | ) | (Joint Administration Requested) |
| | ) | |
| Debtors. | ) | |
| | ) | Hearing Date: February 19, 2019 |
| | ) | Hearing Time: 1:30 p.m. |
| | ) | Hearing Location: Courtroom 7 North |

**DEBTORS' MOTION FOR AN ORDER
IMPLEMENTING CROSS-BORDER INSOLVENCY PROTOCOL**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order (the "Order")[2] approving and implementing a procedural protocol (the "Protocol"), attached as **Exhibit A** hereto, which shall govern matters with respect to any cross-border issues arising from the Debtors' concurrent insolvency proceedings in the United States (the "U.S. Proceedings") and Canada (the "Canadian Proceedings," and together with the U.S. Proceedings, the "Insolvency Proceedings"). In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors (as defined herein) in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179]. With respect to certain taxing authorities, the Debtors' address is 2001 Bryan Street, Suite 800, Dallas, TX 75201. However, the location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource Inc., 3231 S.E. 6th Avenue, Topeka, Kansas 66607.

[2] A copy of the Proposed Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://cases.primeclerk.com/pss.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief requested herein is section 105 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code").

## BACKGROUND

4.      The Debtors and their non-debtor affiliates (together, the "Company") are the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices.  The Company operates approximately 3,400 stores in more than 40 countries.  The Debtors are headquartered in Topeka, Kansas with extensive operations that span across the United States, Canada, Latin America, Asia, the Middle East and Europe.

5.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors have requested that their cases be consolidated for procedural purposes and administered jointly.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.     The Debtors commenced these chapter 11 cases approximately 18 months after completing a restructuring and emerging from chapter 11 protection with a reduced debt burden.[3] The Debtors, however, have been unable to sustain profitable operations in the current retail environment as a result of various factors more fully described in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "First Day Declaration").[4]   Accordingly, the Debtors have determined that the best way to maximize value for all of their stakeholders is to liquidate all North America brick and mortar locations through the immediate commencement of going out of business sales.  The Debtors believe, in the exercise of their business judgment, that such measures are in the best interests of the Debtors' estates.

7.     A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

## CROSS- BORDER INSOLVENCY PROTOCOL

8.     Payless ShoeSource Canada Inc. and Payless ShoeSource Canada GP Inc. (together with  Payless ShoeSource Canada LP, (the "Canadian Debtors"), will seek relief in Canada under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") by filing an application with the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court", and together with the Court, the "North American Courts").  The

---

[3] On April 4, 2017, the Debtors' predecessors-in-interest commenced chapter 11 cases (the "Prior Cases") before the United States Bankruptcy Court for the Eastern District of Missouri, which were jointly administered under the caption *In re Payless Holdings LLC*, No. 17-42267.  A plan of reorganization was confirmed in the Prior Cases on July 26, 2017, and such plan went effective on August 10, 2017.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Canadian Debtors are Debtors in the chapter 11 cases.  The remaining Debtors in these chapter 11 cases are domiciled in the United States (the "U.S. Debtors").

9.      As part of the relief in the CCCA proceedings, the Canadian Debtors sought entry of an initial order from the Canadian Court (as may be amended from time to time, the "Initial Order"), *inter alia*, (a) granting the Canadian Debtors certain relief under the CCAA; (b) appointing FTI Consulting Canada Inc. as monitor of the Canadian Debtors (the "Monitor"), with the rights, powers, duties and limitations upon liabilities set forth in the Initial Order; and (c) granting a stay of proceedings in respect of the Canadian Debtors.

### OVERVIEW OF MATERIAL TERMS

10.     While the U.S. Proceedings and the Canadian Proceedings are full and separate proceedings, cross border issues may arise given the complex, transnational nature of the Debtors.  Accordingly, the Protocol has been developed to promote, among other things, the following mutually desirable goals and objectives in the Insolvency Proceedings: (i) harmonize and coordinate activities in the Insolvency Proceedings before the North American Courts; (ii) promote the orderly and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of the Insolvency Proceedings and reduce costs associated therewith; (iii) honor the independence and integrity of the North American Courts and other courts and tribunals of the U.S. and Canada, respectively; (iv) facilitate the fair, open and efficient administration of the Insolvency Proceedings for the benefit of all creditors and interested parties of the Debtors, wherever located; and (v) implement a framework of general principles to address basic administrative issues arising out of the cross-border and international nature of the Insolvency Proceedings.

11.    The Protocol provides that it shall not divest or diminish the independent jurisdiction of this Court over the chapter 11 cases or of the Canadian Court over the Canadian Proceedings.  In particular, nothing in the Protocol shall be construed to, among other things, (i) require this Court to take any action inconsistent with the laws of the United States, (ii) require the Canadian Court to take any action inconsistent with the laws of Canada, (iii) require the Debtors or any estate professionals to take any action, or refrain from taking action, that would result in a breach of duty imposed on them by applicable law, (iv) authorize any action that otherwise requires the specific approval of this Court, except to the extent such action is specifically provided for in the Protocol as approved by this Court or (v) preclude Debtors, or any party in interest, from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other jurisdiction.

12.    The salient provisions of the Protocol are summarized below:[5]

a.    <u>Comity and Independence of the North American Courts</u>.  The Protocol shall not divest or diminish the Court's or Canadian Court's independent jurisdiction over the subject matter of the U.S. Proceedings and the Canadian Proceeding, respectively.  By approving this Protocol, neither the Court, the Canadian Court, the U.S. Debtors, the Canadian Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the U.S. or Canada.

b.    <u>Cooperation</u>.  To assist in the efficient administration of the Insolvency Proceedings and in recognizing that a U.S. Debtor or Canadian Debtor may be a creditor of one another's estate, the U.S. Debtors, the Canadian Debtors and their respective professionals shall, where appropriate, (i) reasonably cooperate with each other in connection with actions taken in both the Court and the Canadian Court and (ii) take any other reasonable steps to coordinate the administration of the U.S. Proceedings and the Canadian Proceedings for the benefit of the U.S. Debtors' and Canadian Debtors' respective estates and stakeholders.  To harmonize and coordinate the Insolvency Proceedings, the Court and Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural or substantive matter

---

[5] This section is intended only to provide a summary of the material terms of the Protocol, and it is qualified in its entirety by reference to the Protocol, a copy of which is attached as **Exhibit A** hereto.  To the extent there are any inconsistencies between this summary and the Protocol, the Protocol shall govern.

relating to the Insolvency Proceedings. The Court and the Canadian Court may conduct joint hearings with respect to any matter relating to the conduct, administration, determination or disposition of any aspect of the Insolvency Proceedings.

c.  <u>Retention and Compensation of Estate Representatives and Professionals</u>. The Protocol preserves the independent jurisdiction of each North American Court over (i) any estate representative appointed by such North American Court and (ii) the retention and compensation of professionals in the respective Insolvency Proceedings. Nothing in the Protocol creates any fiduciary duty, duty of care or other duty owed by any representatives that they would not otherwise have had in the absence of the Protocol.

d.  <u>Recognition of Stays of Proceeding</u>. The Court and the Canadian Court will recognize the validity of the stay of proceedings in each jurisdiction. Nothing in the Protocol shall limit the U.S. Debtors', the Canadian Debtors' or any other parties' rights to assert the applicability or non-applicability of a stay of proceeding with respect to any particular proceeding, property, asset, activity or other matter.

e.  <u>Procedure for Resolving Disputes.</u> Disputes relating to the terms, intent or application of the Protocol may be addressed by interested parties to either the Court, the Canadian Court, or both North American Courts upon the notice requirement set forth in the Protocol. In rendering a determination in any such dispute, the North American Court to which the issue is addressed shall consult with the other North American Court and may, in its sole discretion, either (i) render a binding decision after such consultation, (ii) defer to the determination of the other North American Court by transferring the matter, in whole or in part, to the other court or (iii) seek a joint hearing of both North American Courts.

## RELIEF REQUESTED

13.  By this Motion, and pursuant to Bankruptcy Code section 105, the Debtors seek entry of an Order approving and implementing the Protocol, attached as **Exhibit A** hereto, which shall govern matters with respect to any cross-border issues arising from the Debtors' concurrent insolvency proceedings in the United States and Canada.

## BASIS FOR RELIEF

14.  The relief requested herein is authorized under the Court's general equitable powers, as codified in Bankruptcy Code sections 105(a) and 105(d). Pursuant to Bankruptcy

Code section 105(a), the court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Further, under section 105(d), the Court may "hold such status conferences as are necessary to further the expeditious and economical resolution of the cases," and at such conferences "may issue an order . . . to ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d)(1) and (2).

15.    The Debtors submit that it is necessary to implement a cross-border protocol between this Court and the Canadian Court to address certain issues that are anticipated to arise in coordinating the Insolvency Proceedings. The Protocol provides a necessary and appropriate framework for cooperation and communication between the North American Courts. Such communication and cooperation will prove beneficial to the administration of both the U.S. Proceedings and the Canadian Proceedings.

16.    Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates, creditors and all parties in interest, and therefore, should be granted in these chapter 11 cases. Specifically, the Protocol is needed to ensure that: (i) the Insolvency Proceedings are coordinated to avoid inconsistent, conflicting or duplicative rulings by the North American Courts; (ii) all parties in interest are provided sufficient notice of key issues in both Insolvency Proceedings; (iii) the substantive rights of all the parties are protected and (iv) the jurisdictional integrity of the North American Courts is preserved. The Protocol is designed to achieve these objectives by implementing a framework of general principles and timing considerations to address the basic administrative and procedural issues arising out of the cross-border nature of the Insolvency Proceedings. Such coordination is essential and should, among other things, maximize the efficiency of the

Insolvency Proceedings, reduce the costs associated therewith and avoid duplication of effort and the possibility of conflicting rulings by the North American Courts.

17.     A number of courts have authorized similar protocols for managing cross-border insolvency proceedings.  *See*, *e.g.*, *In re Toys "R" Us, Inc.*, No 17-34665 (KLP) (Bankr. E.D. Va. Sept. 18, 2017) [Docket No. 725]; *In re BPS US Holdings Inc.*, No. 16-12373 (KJC) (Bankr. D. Del. Nov. 9, 2016) [Docket No. 108]; *In re Trident Microsystems, Inc.*, No. 12-10069 (CSS) (Bankr. D. Del. Jan. 26, 2012) [Docket No. 107]; *In re Graceway Pharmaceuticals, LLC*, No. 11-13036 (PJW) (Bankr. D. Del. Oct. 5, 2011) [Docket No. 152]; and *In re Quebecor World (USA) Inc.*, No. 08-10152 (Bankr. S.D.N.Y. Apr. 9, 2008) [Docket No. 528].

### RESERVATION OF RIGHTS

18.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' or any other party-in-interest's rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code section 365.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be, nor should it be construed as, an admission as to the validity of any claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

### NOTICE

19.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding

and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (e) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard) (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (f) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (g) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (h) counsel to any statutory committee appointed in the chapter 11 cases; (i) the United States Attorney's Office for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for all states in which the Debtors conduct business; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### CONCLUSION

20.     WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested by this Motion and such further relief as may be just and necessary under the circumstances.

*[Remainder of page intentionally left blank.]*

9

Dated:  February 19, 2019
        St. Louis, Missouri

/s/  *Richard W. Engel, Jr.*

Richard W. Engel, Jr. MO 34641
Erin M. Edelman MO 67374
John G. Willard MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
rengel@armstrongteasdale.com
eedelman@armstrongteasdale.com
jwillard@armstrongteasdale.com

-and-

Ira Dizengoff (*pro hac vice* admission pending)
Meredith A. Lahaie (*pro hac vice* admission pending)
Kevin Zuzolo (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

- and -

Julie Thompson (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

10

## Exhibit A

**Cross-Border Insolvency Protocol**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) | |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | Related Docket No.: [●] |

**CROSS-BORDER INSOLVENCY PROTOCOL**

This cross-border insolvency protocol (the "Protocol") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as such term is defined herein).

The Guidelines for Communication and Cooperation Between Courts in Cross-Border Insolvency Matters (the "Guidelines"), annexed as "Schedule A" hereto, shall be incorporated by reference and form part of this Protocol. To the extent there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

**A.    Background**

1.      On February 18, 2019 (the "Petition Date"), Payless Holdings LLC and certain of its subsidiaries and affiliates (collectively, the "Debtors")[1] commenced cases (collectively, the

---

[1] The Debtors (as defined herein) in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; Collective Brands Logistics, Limited [6466]; Dynamic Assets Limited [1978]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179]. With respect to certain taxing authorities, the Debtors' address is 2001 Bryan Street, Suite 800, Dallas, TX 75201. However, the location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource Inc., 3231 S.E. 6th Avenue, Topeka, Kansas 66607.

"U.S. Proceedings") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri.

2.        On February 19, 2019, certain of the Debtors, specifically Payless ShoeSource Canada Inc. and Payless ShoeSource Canada GP Inc., (together with Payless ShoeSource Canada LP, the "Canadian Debtors"), also sought protection in Canada (the "Canadian Proceedings" and together with the U.S. Proceedings, the "Insolvency Proceedings") by filing an application und*er the Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") with the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and together with the U.S. Court, the "Courts" and each individually, a "Court").  The remaining Debtors in these chapter 11 cases are domiciled in the United States (the "U.S. Debtors").

3.        The Canadian Debtors sought an initial order from the Canadian Court (as may be amended from time to time, the "CCAA Order"), *inter alia*, (a) granting the Canadian Debtors relief under the CCAA; (b) appointing FTI Consulting Canada Inc. as monitor of the Canadian Debtors (the "Monitor"), with the rights, powers, duties and limitations upon liabilities set forth in the CCAA Order; and (c) granting a stay of proceedings in respect of the Canadian Debtors.

4.        The Debtors continue to operate and maintain their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  The Office of the United States Trustee (the "U.S. Trustee") may appoint an official committee of unsecured creditors (if appointed, the "U.S. Creditors' Committee") in the U.S. Proceedings.

**B.        Purpose and Goals**

5.        While the U.S. Proceedings and the Canadian Proceedings are full and separate proceedings pending in the United States of America (the "U.S.") and Canada, the implementation of basic administrative procedures and cross-border guidelines is both necessary

2

and desirable to coordinate certain activities in the Insolvency Proceedings, protect the rights of parties thereto and ensure the maintenance of the Court's independent jurisdiction and comity. Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in the Insolvency Proceedings:

(a)     harmonize and coordinate activities in the Insolvency Proceedings before the Courts;

(b)     promote the orderly and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of the Insolvency Proceedings, reduce the costs associated therewith and avoid duplication of effort;

(c)     honor the independence and integrity of the Courts and other courts and tribunals of the U.S. and Canada, respectively;

(d)     promote international cooperation and respect for comity among the Courts, the Debtors, the U.S. Creditors' Committee, the U.S. Representatives (defined below), the Canadian Representatives (defined below and together with the U.S. Representatives, the "Estate Representatives"), the U.S. Trustee and other creditors and interested parties in the Insolvency Proceedings;

(e)     facilitate the fair, open and efficient administration of the Insolvency Proceedings for the benefit of all of the creditors and interested parties of the Debtors, wherever located; and

(f)     implement a framework of general principles to address basic administrative issues arising out of the cross-border and international nature of the Insolvency Proceedings.

## C.     Comity and Independence of the Courts

6.     The approval and implementation of this Protocol shall not divest or diminish the U.S. Court's and the Canadian Court's independent jurisdiction over the subject matter of the U.S. Proceedings and the Canadian Proceedings, respectively.  By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors, the Estate Representatives nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the U.S. or Canada.

3

7.      The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the U.S. Proceedings and the hearing and determination of matters arising in the U.S. Proceedings.  The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Proceedings and the hearing and determination of matters arising in the Canadian Proceedings.

8.      In accordance with the principles of comity and independence established in the preceding paragraphs, nothing contained herein shall be construed to:

(a)     increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the U.S. or Canada, including the ability of any such court or tribunal to provide appropriate relief under applicable law on an ex parte or "limited notice" basis;

(b)     require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the U.S.;

(c)     require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

(d)     require any of the Debtors, the Monitor, the U.S. Creditors' Committee, the Estate Representatives or the U.S. Trustee to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

(e)     authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

(f)     preclude any of the Debtors, the Monitor, the U.S. Creditors' Committee, the Estate Representatives, the U.S. Trustee, or any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the U.S., Canada or any other relevant jurisdiction including, without limitation, the rights of interested parties or affected persons to appeal from the decisions taken by one or both of the Courts.

9.      Subject to the terms hereof, the Debtors, the U.S. Creditors' Committee, the Estate Representatives and their respective employees, members, agents and professionals shall

respect and comply with the independent, non-delegable duties imposed upon them by the Bankruptcy Code, the CCAA, the CCAA Order and other applicable laws and orders of the Courts, as applicable.

### D.  Cooperation

10.     To assist in the efficient administration of the Insolvency Proceedings and in recognizing that a Debtor may be a creditor of another Debtor's estate, the Debtors and the Estate Representatives shall where appropriate:

(a)     reasonably cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court; and

(b)     take any other reasonable steps to coordinate the administration of the U.S. Proceedings and the Canadian Proceedings for the benefit of the Debtors' respective estates and stakeholders, including, without limitation, developing in consultation with the U.S. Creditors' Committee and seeking approval of any cross-border claims protocol by the Canadian and U.S. Courts.

11.     To harmonize and coordinate the administration of the Insolvency Proceedings, the U.S. Court and the Canadian Court each may coordinate activities with and defer to the judgment of the other Court, where appropriate and feasible. In furtherance of the foregoing:

(a)     The U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural or substantive matter relating to the Insolvency Proceedings;

(b)     Where the issue of the proper jurisdiction or Court to determine an issue is raised by an interested party in either of the Insolvency Proceedings with respect to a motion or an application filed in either Court, the Court before which such motion or application was initially filed may contact the other Court to determine an appropriate process by which the issue of jurisdiction will be determined.  Such process shall be subject to submissions by the Debtors, the Estate Representatives, the U.S. Creditors' Committee, the Monitor, the U.S. Trustee and any interested party before any determination on the issue of jurisdiction is made by either Court; and

5

(c)     The Courts may, but are not obligated to, coordinate activities in the Insolvency Proceedings such that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in a single Court.

12.     The U.S. Court and the Canadian Court may conduct joint hearings with respect to any matter relating to the conduct, administration, determination or disposition of any aspect of the U.S. Proceedings and the Canadian Proceedings, including the interpretation or implementation of this Protocol if both Courts consider such joint hearings to be necessary or advisable and, in particular, to facilitate or coordinate with the proper and efficient conduct of the U.S. Proceedings and the Canadian Proceedings. With respect to any such joint hearing, unless otherwise ordered, the following procedures will be followed:

(a)     a telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear the proceedings in the other Court;

(b)     notices, submissions, applications or motions by any party that are or become the subject of a joint hearing of the Courts (collectively, "Pleadings") shall be made or filed initially only to the Court in which such party is appearing and seeking relief. Promptly after the scheduling of any joint hearing, the party submitting such Pleadings to one Court shall file courtesy copies with the other Court. In any event, Pleadings seeking relief from both Courts shall be filed with both Courts.

(c)     any party intending to rely on any written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any joint hearing shall file such materials, which shall be identical insofar as possible and shall be consistent with the procedure and evidentiary rules and requirements of each Court, in advance of the time of such hearing or the submissions of such application;

(d)     If a party has not previously appeared in or attorned or does not wish to attorn to the jurisdiction of either Court, it shall be entitled to file such materials without, by the act of filing, being deemed to have attorned to the jurisdiction of the Court in which such material is filed, so long as it does not request in its materials or submissions any affirmative relief from the Court to which it does not wish to attorn;

(e)     the Judge of the U.S. Court and the Justice of the Canadian Court who will hear any such application or motion shall be entitled to communicate with each other

in advance of the hearing on the application or motion, with or without counsel being present, to establish guidelines for the orderly submission of pleadings, papers and other materials and the rendering of decisions by the U.S. Court and the Canadian Court, and to address any related procedural, administrative or preliminary matters; and

(f)     the Judge of the U.S. Court and the Justice of the Canadian Court, having heard any such application, shall be entitled to communicate with each other after the hearing on such application or motion, without counsel present, for the purpose of determining whether consistent rulings can be made by both Courts, and coordinating the terms upon which such rulings shall be made, as well as to address any other procedural or non-substantive matter relating to such applications or motions.

13.     Notwithstanding the terms of the preceding paragraph, the Protocol recognizes that the U.S. Court and the Canadian Court are independent courts.  Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with respect to:

(a)     the conduct of the parties appearing in matters presented to such Court; and

(b)     matters presented to such Court, including without limitation, the right to determine if matters are properly before such Court.

14.     In the interest of cooperation and coordination of these proceedings, each Court shall recognize and consider all privileges applicable to communications between counsel and parties, including those contemplated by the common interest doctrine or like privileges, which would be applicable in each respective Court.  Such privileges in connection with communications shall be applicable in both Courts with respect to all parties to these proceedings having any requisite common interest.

15.     Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court in order to determine an issue before it, the Court with jurisdiction over such matter may, among other things, hear expert evidence or seek the

advice and direction of the other Court in respect of the foreign law to be applied, subject to paragraph 38 herein.

**E.**     **Retention and Compensation of Estate Representatives and Professionals**

16.     The Monitor, its officers, directors, employees, counsel, agent and any other professionals related therefor, wherever located (collectively, the "Monitor Parties") and any other estate representatives in the Canadian Proceedings and their counsel and other professionals (collectively with the Monitor Parties, the "Canadian Representatives") shall all be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including:

(a)     the Canadian Representatives' appointment and tenure in office;

(b)     the retention and compensation of the Canadian Representatives;

(c)     the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Insolvency Proceedings; and

(d)     the hearing and determination of any matters relating to the Canadian Representatives arising in the Canadian Proceedings under the CCAA or other applicable Canadian law.

17.     Additionally, the Canadian Representatives and the Debtors' Canadian counsel:

(a)     shall be compensated for their services solely in accordance with the CCAA and other applicable Canadian law or orders of the Canadian Court; and

(b)     shall not be required to seek approval of their compensation in the U.S. Court.

18.     The Monitor Parties shall be entitled to the protections of Bankruptcy Code section 306 and the same protections and immunities in the U.S. as those granted to them under the CCAA and the CCAA Order.  In particular, except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the Monitor Parties shall incur no liability or

obligations as a result of the appointment of the Monitor, the carrying out of its duties or the provisions of the CCAA and the CCAA Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or willful misconduct.

19.     Any estate representative appointed in the U.S. Proceedings, including without limitation, any restructuring officer appointed under Bankruptcy Code section 306, the U.S. Creditors' Committee and any examiner or trustee appointed pursuant to Bankruptcy Code section 1104, and their respective counsel and other professionals (collectively, the "U.S. Representatives"), shall be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including:

(a)     the U.S. Representatives' tenure in office;

(b)     the U.S. Representatives' retention and compensation;

(c)     the U.S. Representatives' liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Insolvency Proceedings; and

(d)     the hearing and determination of any other matters relating to the U.S. Representatives arising in the U.S. Proceedings under the Bankruptcy Code or other applicable laws of the U.S.

20.     Nothing in this Protocol creates any fiduciary duty, duty of care or other duty owed by the U.S. Representatives to the stakeholders in the Canadian Proceedings or by the Canadian Representatives to the stakeholders in the U.S. Proceedings that they would not otherwise have in the absence of this Protocol.

21.     The U.S. Representatives shall not be required to seek approval of their retention in the Canadian Court. Additionally, the U.S. Representatives:

(a)     shall be compensated for their services solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court; and

9

(b)    shall not be required to seek approval of their compensation in the Canadian Court.

22.    Any professionals retained by or with the approval of the Debtors for Canadian related advice, activities performed in Canada or in connection with the Canadian Proceeding, including, in each case, counsel, financial advisors, accountants, consultants and experts (collectively, the "Canadian Professionals") shall be subject to the sole and exclusive jurisdiction of the Canadian Court.  Accordingly, the Canadian Professionals:  (a) shall be subject to the procedures and standards for retention and compensation applicable in the Canadian Court under the CCAA, the CCAA Order any other applicable Canadian law or orders of the Canadian Court; and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court.  The Debtors will include the identity and the amount of payments with respect to the Canadian Professionals in the Debtors' monthly operating reports.

23.    Any professionals retained by or with approval of the Debtors for activities performed in the U.S. or in connection with the U.S. Proceedings, including, in each case, counsel, financial advisors, accountants, consultants and experts (collectively, the "U.S. Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Accordingly, the U.S. Professionals:  (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the U.S. or orders of the U.S. Court; and (b) shall not be required to seek approval of their retention of compensation in the Canadian Court.

24.    Any professionals retained by the U.S. Creditors' Committee, including, in each case, counsel and financial advisors (collectively, the "Committee Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Accordingly, the Committee

10

Professionals: (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the U.S. or orders of the U.S. Court; and (b) shall not be required to seek approval of their retention of compensation in the Canadian Court.

## F.    **Rights to Appear and Be Heard**

25.    Each of the Debtors, their creditors and other interested parties in the Insolvency Proceedings, including the Canadian Representatives and the U.S. Representatives shall have the right and standing to:

(a)    appear and be heard in either the U.S. Court or the Canadian Court in the Insolvency Proceedings to the same extent as a creditor and other interested party domiciled in the forum country, but solely to the extent such party is a creditor or other interested party in the subject forum, subject to any local rules or regulations generally applicable to all parties appearing in the forum; and

(b)    subject to 25(a) above, file notices of appearance or other papers with the Clerk of the U.S. Court or the Canadian Court in the Insolvency Proceedings; *provided*, *however*, that any appearance or filing may subject a creditor or interested party to the jurisdiction of the Court in which the appearance or filing occurs; provided further, that appearance by the U.S. Creditors' Committee in the Canadian Proceedings shall not form a basis for personal jurisdiction in Canada over the members of the U.S. Committee. Notwithstanding the foregoing, and in accordance with the policies set forth above:

(i)    the Canadian Court shall have jurisdiction over the U.S. Representatives and the U.S. Trustee solely with respect to the particular matters as to which the U.S. Representatives or the U.S. Trustee appear before the Canadian Court; and

(ii)    the U.S. Court shall have jurisdiction over the Canadian Representatives solely with respect to the particular matters as to which the Canadian Representatives appear before the U.S. Court.

26.    Solely with respect to consensual due diligence the U.S. Creditors' Committee will execute confidentiality agreements in the form to be agreed to by the Canadian Debtors and the U.S. Creditors' Committee.

11

**G.**     **Claims Protocol**

27.     It may be necessary to implement a specific claims protocol to address, among other things and without limitation, the timing, process, jurisdiction and applicable governing law to be applied to the resolution of claims filed by the Debtors' creditors (including intercompany claims) in the Canadian Proceedings and the U.S. Proceedings. In such event, and in recognition of the inherent complexities of the intercompany claims that may be asserted in the Insolvency Proceedings, the Debtors shall submit a specific claims protocol.

**H.**     **Notice**

28.     Notice of any motion, application or other pleading or paper filed in one or both of the Insolvency Proceedings relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier or electronic forms of communication) to the following:

(a)     all creditors and other interested parties in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur and order of the applicable court ; and

(b)     to the extent not otherwise entitled to receive notice under subpart (a) of this paragraph, to:

(i)     U.S. Counsel to the Debtors, Akin Gump Stauss Hauer & Feld LLP, Bank of America Tower, 1 Bryant Park, New York, NY 10036, USA (Attn: Meredith Lahaie and Kevin Zuzolo) and Armstrong Teasdale LLP, 7700 Forsyth Blvd., Suite 1800, St. Louis, MO 63105, USA (Attn: Erin Edelman and John Willard);

(ii)     Canadian Counsel to the Debtors, Cassels Brock & Blackwell LLP, 2100, 40 King Street West, Toronto, ON Canada, M5H 3C2  (Attn: Ryan Jacobs, Jane Dietrich, Natalie Levine);

(iii)     the Monitor, FTI Consulting Canada Inc., TD Waterhouse Tower, 79 Wellington Street West, Suite 2010, P.O. Box 104, Toronto, ON Canada, M5K 1G8 (Attn: Greg Watson, Paul Bishop), and its counsel, Bennett

12

Jones LLP, 3400, One First Canadian Place, Toronto, ON Canada, M5X 1A4 (Attn: Sean Zweig, Kevin J. Zych);

(iv)    Counsel to the ABL Agent, Choate Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin Simard, Doug Gooding and Jonathan Marshall); Thompson Coburn LLP, One US Bank Plaza, St. Louis, MO 63101 (Attn: Mark Bossi); and Norton Rose Fulbright Canada LLP, Suite 3800, Royal Bank Plaza, South Tower, 200 Bay Street, P.O Box 84, Toronto, ON Canada, M5J 2Z4 (Attn: Tony Reyes and David Amato);

(v)    Counsel to the Ad Hoc Term Lender Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, USA (Attn: Stephen D. Zide); Doster, Ullom & Boyle, LLC, 16090 Swingley Ridge Road, Suite 620, Chesterfield, Missouri 63017, USA (Attn: Gregory D. Willard); and Fasken Martineau DuMoulin LLP, Bay Adelaide Centre, 333 Bay Street, Suite 2400, P.O. Box 20, Toronto, ON Canada, M5H 2T6 (Attn: Stuart Brotman)

(vi)    Counsel to any statutory committee or any other official appointed in the U.S. Proceedings;

(vii)    the Office of the United States Trustee for Eastern District of Missouri;

(viii)    such other parties as may be designated by either Court from time to time.

29.    Notice in accordance with this paragraph may be designated by either of the Courts from time to time.  Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur.  In addition to the foregoing, upon request, the U.S. Debtors or the Canadian Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of any orders, decisions, opinions or similar papers issued by the other Court in the Insolvency Proceedings.

30.    When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notices shall be provided in the manner and to the parties referred to in paragraph 28 above.

## I.     Recognition of Stays of Proceedings

31.     The Canadian Court hereby recognizes the validity of the stay of proceedings and actions against or respecting the U.S. Debtors and their property under Bankruptcy Code section 362 (the "U.S. Stay").  In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding the interpretation, extent, scope and applicability of the U.S. Stay, and any orders of this U.S. Court modifying or granting relief from the U.S. Stay.

32.     The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against or respecting the Canadian Debtors, its property and the current and former directors and officers of the Canadian Debtors under the CCAA and the CCAA Order (the "Canadian Stay").  In implementing the terms of this paragraph, the U.S. Court may consult with the Canadian Court regarding the interpretation, extent, scope and applicability of the Canadian Stay, and any orders of the Canadian Court modifying or granting relief from the Canadian Stay.

33.     Nothing contained herein shall affect or limit the Debtors or other parties' rights to assert the applicability or non-applicability of the U.S. Stay or the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located. Subject to the terms hereof: (a) any motion with respect to the application of the stay of proceedings issued by the Canadian Court in the CCAA Proceeding shall be heard and determined by the Canadian Court and (b) any motion with respect to the application of the stay under Bankruptcy Code section 362 shall be heard and determined by the U.S. Court.

## J.     Effectiveness; Modification

34.     This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

14

35.     This Protocol may not be supplemented, modified, terminated or replaced in any manner except by the U.S. Court and the Canadian Court after notice and a hearing. Notice of any legal proceeding to supplement, modify, terminate or replace this Protocol shall be given in accordance with the notice provision contained in this Protocol.

**K.     <u>Procedure for Resolving Disputes Under the Protocol</u>**

36.     Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to either the U.S. Court, the Canadian Court or both Courts upon notice as set forth in paragraphs 28 and 29 above.  In rendering a determination in any such dispute, the Court to which the issue is addressed:

(a)     shall consult with the other Court; and

(b)     may, in its sole discretion, either:

(i)     render a binding decision after such consultation;

(ii)    defer to the determination of the other Court by transferring the matter, in whole or in part, to the other Court; or

(iii)   seek a joint hearing of both Courts.

37.     Notwithstanding the foregoing, each Court in making a determination shall have regard to the independence, comity or inherent jurisdiction of the other Court established under existing law.

38.     In implementing the terms of the Protocol, the U.S. Court and the Canadian Court may, in their sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

(a)     The U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

15

(b)      The Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

(c)      Copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 28 hereof; and

(d)      The Courts may jointly decide to invite the Debtors, the Estate Representatives, the U.S. Trustee, the Monitor and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court.

39.      For clarity, the provisions of paragraph 38 shall not be construed to restrict the ability of the U.S. Court or the Canadian Court to confer, as provided above, whenever they deem it appropriate to do so.

**L.      <u>Preservation of Rights</u>**

40.      Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall (a) prejudice or affect the powers, rights, claims and defenses of the Debtors and their estates, the Estate Representatives, the U.S. Trustee, the Monitor or any of the Debtors' creditors under applicable law, including the Bankruptcy Code, the CCAA and the Orders of the Courts or (b) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of the United States or Canada.

## <u>Schedule A</u>

**Guidelines for Communication and Cooperation
Between Courts in Cross-Border Insolvency Matters**

## GUIDELINES FOR COMMUNICATION AND COOPERATION BETWEEN
## COURTS IN CROSS-BORDER INSOLVENCY MATTERS

### INTRODUCTION

A.      The overarching objective of these Guidelines is to improve in the interests of all stakeholders the efficiency and effectiveness of cross-border proceedings relating to insolvency or adjustment of debt opened in more than one jurisdiction ("Parallel Proceedings") by enhancing coordination and cooperation amongst courts under whose supervision such proceedings are being conducted. These Guidelines represent best practice for dealing with Parallel Proceedings.

B.      In all Parallel Proceedings, these Guidelines should be considered at the earliest practicable opportunity.

C.      In particular, these Guidelines aim to promote:

     (i)      the efficient and timely coordination and administration of Parallel Proceedings;

     (ii)      the administration of Parallel Proceedings with a view to ensuring relevant stakeholders' interests are respected;

     (iii)      the identification, preservation and maximisation of the value of the debtor's assets, including the debtor's business;

     (iv)      the management of the debtor's estate in ways that are proportionate to the amount of money involved, the nature of the case, the complexity of the issues, the number of creditors, and the number of jurisdictions involved in Parallel Proceedings;

     (v)      the sharing of information in order to reduce costs; and

     (vi)      the avoidance or minimisation of litigation, costs and inconvenience to the parties[7] in Parallel Proceedings.

D.      These Guidelines should be implemented in each jurisdiction in such manner as the jurisdiction deems fit.[8]

E.      These Guidelines are not intended to be exhaustive and in each case consideration ought to be given to the special requirements in that case.

F.      Courts should consider in all cases involving Parallel Proceedings whether and how to implement these Guidelines. Courts should encourage and where necessary direct, if they have the power to do so, the parties to make the necessary applications to the court to facilitate such implementation by a protocol or order derived from these

---

[7] The term "parties" when used in these Guidelines shall be interpreted broadly.

[8] Possible modalities for the implementation of these Guidelines include practice directions and commercial guides.

2

Guidelines, and encourage them to act so as to promote the objectives and aims of these Guidelines wherever possible.

## ADOPTION & INTERPRETATION

Guideline 1:    In furtherance of paragraph F above, the courts should encourage administrators in Parallel Proceedings to cooperate in all aspects of the case, including the necessity of notifying the courts at the earliest practicable opportunity of issues present and potential that may (a) affect those proceedings; and (b) benefit from communication and coordination between the courts. For the purpose of these Guidelines, "administrator" includes a liquidator, trustee, judicial manager, administrator in administration proceedings, debtor-in-possession in a reorganisation or scheme of arrangement, or any fiduciary of the estate or person appointed by the court.

Guideline 2:    Where a court intends to apply these Guidelines (whether in whole or in part and with or without modification) in particular Parallel Proceedings, it will need to do so by a protocol or an order,[9] following an application by the parties or pursuant to a direction of the court if the court has the power to do so.

Guideline 3:    Such protocol or order should promote the efficient and timely administration of Parallel Proceedings. It should address the coordination of requests for court approvals of related decisions and actions when required and communication with creditors and other parties. To the extent possible, it should also provide for timesaving procedures to avoid unnecessary and costly court hearings and other proceedings.

Guideline 4:    These Guidelines when implemented are not intended to:

(i)    interfere with or derogate from the jurisdiction or the exercise of jurisdiction by a court in any proceedings including its authority or supervision over an administrator in those proceedings;

(ii)    interfere with or derogate from the rules or ethical principles by which an administrator is bound according to any applicable law and professional rules;

(iii)    prevent a court from refusing to take an action that would be manifestly contrary to the public policy of the jurisdiction; or

(iv)    confer or change jurisdiction, alter substantive rights, interfere with any function or duty arising out of any applicable law, or encroach upon any applicable law.

Guideline 5:    For the avoidance of doubt, a protocol or order under these Guidelines is procedural in nature. It should not constitute a limitation on or waiver by the court of any powers, responsibilities or authority or a substantive determination of any matter in controversy before the court or before the other court or a waiver by any of the parties of any of their substantive rights and claims.

---

[9] In the normal case, the parties will agree on a protocol derived from these Guidelines and obtain the approval of each court in which the protocol is to apply.

Guideline 6:    In the interpretation of these Guidelines or any protocol or order under these Guidelines, due regard shall be given to their international origin and to the need to promote good faith and uniformity in their application.

**COMMUNICATION BETWEEN COURTS**

Guideline 7:    A court may receive communications from a foreign court and may respond directly to them. Such communications may occur for the purpose of the orderly making of submissions and rendering of decisions by the courts, and to coordinate and resolve any procedural, administrative or preliminary matters relating to any joint hearing where Annex A is applicable. Such communications may take place through the following methods or such other method as may be agreed by the two courts in a specific case:

> (i)    Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings or other documents directly to the other court and providing advance notice to counsel for affected parties in such manner as the court considers appropriate.

> (ii)    Directing counsel or other appropriate person to transmit or deliver copies of documents, pleadings, affidavits, briefs or other documents that are filed or to be filed with the court to the other court in such fashion as may be appropriate and providing advance notice to counsel for affected parties in such manner as the court considers appropriate.

> (iii)    Participating in two-way communications with the other court, by telephone or video conference call or other electronic means, in which case Guideline 8 should be considered.

Guideline 8:    In the event of communications between courts, other than on administrative matters, unless otherwise directed by any court involved in the communications whether on an *ex parte* basis or otherwise, or permitted by a protocol, the following shall apply:

> (i)    In the normal case, parties may be present.

> (ii)    If the parties are entitled to be present, advance notice of the communications shall be given to all parties in accordance with the rules of procedure applicable in each of the courts to be involved in the communications.

> (iii)    The communications between the courts shall be recorded and may be transcribed. A written transcript may be prepared from a recording of the communications that, with the approval of each court involved in the communications, may be treated as the official transcript of the communications.

> (iv)    Copies of any recording of the communications, of any transcript of the communications prepared pursuant to any direction of any court involved in the communications, and of any official transcript prepared from a recording may be filed as part of the record in the proceedings and made available to the parties and subject to such directions as to confidentiality as any court may consider appropriate.

> (v)    The time and place for communications between the courts shall be as directed by the courts. Personnel other than judges in each court may communicate with each other to establish appropriate arrangements for

the communications without the presence of the parties.

Guideline 9:    A court may direct that notice of its proceedings be given to parties in proceedings in another jurisdiction. All notices, applications, motions and other materials served for purposes of the proceedings before the court may be ordered to be provided to such other parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the court in accordance with the procedures applicable _in the court.

**APPEARANCE IN COURT**

Guideline 10:  A court may authorize a party or an appropriate person, to appear before and be heard by a foreign court, subject to approval of the foreign court to such appearance.

Guideline 11:  If permitted by its law and otherwise appropriate, a court may authorize a party to a foreign proceeding or an appropriate person, to appear and be heard by it without thereby becoming subject to its jurisdiction.

**CONSEQUENTIAL PROVISIONS**

Guideline 12:  A court shall, except on proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in other jurisdictions without further proof. For the avoidance of doubt, such recognition and acceptance does not constitute recognition or acceptance of their legal effect or implications.

Guideline 13:  A court shall, except upon proper objection on valid grounds and then only to the extent of such objection, accept that orders made in the proceedings in other jurisdictions were duly and properly made or entered on their respective dates and accept that such orders require no further proof for purposes of the proceedings before it, subject to its law and all such proper reservations as in the opinion of the court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such orders. Notice of any amendments, modifications, extensions or appellate decisions with respect to such orders shall be made to the other court(s) involved in Parallel Proceedings, as soon as it is practicable to do so.

Guideline 14:  A protocol, order or directions made by a court under these Guidelines is subject to such amendments, modifications, and extensions as may be considered appropriate by the court, and to reflect the changes and developments from time to time in any Parallel Proceedings. Notice of such amendments, modifications or extensions shall be made to the other court(s) involved in Parallel Proceedings, as soon as it is practicable to do so.

**ANNEX A (JOINT HEARINGS)**

Annex A to these Guidelines relates to guidelines on the conduct of joint hearings. Annex A shall be applicable to, and shall form a part of these Guidelines, with respect to courts that may signify their assent to Annex A from time to time. Parties are encouraged to address the matters set out in Annex A in a protocol or order.

**ANNEX A**: **JOINT HEARINGS**

A court may conduct a joint hearing with another court. In connection with any such joint hearing, the following shall apply, or where relevant, be considered for inclusion in a protocol or order:

(i)  The implementation of this Annex shall not divest nor diminish any court's respective independent jurisdiction over the subject matter of proceedings. By implementing this Annex, neither a court nor any party shall be deemed to have approved or engaged in any infringement on the sovereignty of the other jurisdiction.

(ii)  Each court shall have sole and exclusive jurisdiction and power over the conduct of its own proceedings and the hearing and determination of matters arising in its proceedings.

(iii)  Each court should be able simultaneously to hear the proceedings in the other court. Consideration should be given as to how to provide the best audio-visual access possible.

(iv)  Consideration should be given to coordination of the process and format for submissions and evidence filed or to be filed in each court.

(v)  A court may make an order permitting foreign counsel or any party in another jurisdiction to appear and be heard by it. If such an order is made, consideration needs to be given as to whether foreign counsel or any party would be submitting to the jurisdiction of the relevant court and/or its professional regulations.

(vi)  A court should be entitled to communicate with the other court in advance of a joint hearing, with or without counsel being present, to establish the procedures for the orderly making of submissions and rendering of decisions by the courts, and to coordinate and resolve any procedural, administrative or preliminary matters relating to the joint hearing.

(vii)  A court, subsequent to the joint hearing, should be entitled to communicate with the other court, with or without counsel present, for the purpose of determining outstanding issues. Consideration should be given as to whether the issues include procedural and/or substantive matters. Consideration should also be given as to whether some or all of such communications should be recorded and preserved.

6