## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*,[1] | ) | |
| | ) | (Joint Administration Requested) |
| | ) | |
| Debtors. | ) | |
| | ) | Hearing Date: February 19, 2019 |
| | ) | Hearing Time: 1:30 p.m. (Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

### DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of interim and final orders (the "Proposed Interim Order" and "Proposed Final Order," respectively):[2] (i) authorizing, but not directing, the Debtors to (a) continue to operate the Debtors' cash management system as illustrated on **Exhibit A** annexed hereto (the "Cash Management System"); (b) honor certain prepetition obligations

---

[1] The Debtors (as defined herein) in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: [Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [N/A]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179]]. With respect to certain taxing authorities, the Debtors' address is 2001 Bryan Street, Suite 800, Dallas, TX 75201. However, the location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource Inc., 3231 S.E. 6th Avenue, Topeka, Kansas 66607.

[2] A copy of the Proposed Interim Order and Proposed Final Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://cases.primeclerk.com/pss.

related thereto; (c) maintain existing business forms; and (d) continue to perform the Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense status to Intercompany Claims (as defined below) in accordance with the terms set forth herein; and (ii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81.901(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and procedural bases for the relief requested herein are sections 105, 345, 363, 364 and 503 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Missouri (the "Local Bankruptcy Rules").

## BACKGROUND

4.     The Debtors and their non-debtor affiliates are the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices.  The Company operates approximately 3,400 stores in more than 40 countries.  The Debtors are headquartered in Topeka, Kansas, with extensive operations that span across the United States, Canada, Latin America, Asia, the Middle East and Europe.

5.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their

businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors have requested that their cases be consolidated for procedural purposes and administered jointly.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.      The Debtors commenced these chapter 11 cases approximately 18 months after completing a restructuring and emerging from chapter 11 protection with a reduced debt burden.[3] The Debtors, however, have been unable to sustain profitable operations in the current retail environment as a result of various factors more fully described in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* ("the First Day Declaration").[4]  Accordingly, the Debtors have determined that the best way to maximize value for all of their stakeholders is to liquidate all North America brick and mortar locations through the immediate commencement of going out of business sales.  The Debtors believe, in the exercise of their business judgment, that such measures are in the best interests of the Debtors' estates.

7.      A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

### THE CASH MANAGEMENT SYSTEM

8.      The Debtors and their non-Debtor affiliates (collectively, the "Company") use an integrated, centralized cash management system (the "Cash Management System") to collect,

---

[3] On April 4, 2017, the Debtors' predecessors-in-interest commenced chapter 11 cases (the "Prior Cases") before the United States Bankruptcy Court for the Eastern District of Missouri, which were jointly administered under the caption *In re Payless Holdings LLC*, No. 17-42267.  A plan of reorganization was confirmed in the Prior Cases on July 26, 2017, and such plan went effective on August 10, 2017.
[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

transfer and disburse funds generated by their operations.  The Cash Management System facilitates cash monitoring, forecasting and reporting, and enables the Debtors to maintain control over the administration of approximately 178 bank accounts (together with any other bank accounts the Debtors may open in the ordinary course of their business, the "Bank Accounts") owned by the Company maintained with multiple banks (collectively, the "Banks"), including those set forth on **Exhibit B** attached hereto and reflected on the diagram of the Cash Management System set forth on **Exhibit A** attached hereto.  The Debtors' treasury department maintains daily oversight over the Cash Management System and implements cash management controls for entering, processing and releasing funds.

9.      The Cash Management System is vital to the Debtors' ability to conduct business throughout the United States and in foreign markets, and is tailored to meet the Debtors' operating needs (including the Debtors' need to continue operations during the pendency of the North America going-out-of-business sales).  Specifically, the integrated Cash Management System helps control funds, serves as a repository for cash receipts, manages cash disbursements, ensures cash availability for each of the Debtors, and reduces administrative expenses by facilitating the movement of funds among multiple entities by centralizing cash operations.  The Cash Management System is generally similar to those commonly employed by complex businesses comparable in size and scale to the Debtors.  Any disruption of the Cash Management System would have an immediate adverse effect on the Debtors' business and operations to the detriment of their estates and numerous stakeholders, as their business requires prompt access to cash and accurate cash tracking.  Accordingly, to minimize disruption caused by these chapter 11 cases and to maximize the value of the Debtors' estates, the Debtors request authority to continue

4

to utilize their existing Cash Management System during the pendency of these chapter 11 cases, subject to the terms described herein.

## I.     Description of the Cash Management System

### A.     The Bank Accounts

10.     The Debtors' Cash Management System is comprised of Bank Accounts held by the following Debtors and non-Debtor affiliates: (a) 132 Bank Accounts are held by Payless ShoeSource, Inc. ("Payless ShoeSource"); (b) 12 Bank Accounts are held by Payless Finance, Inc. ("Payless Finance"); (c) 13 Bank Accounts are held by Payless ShoeSource Canada LP; (d) six Bank Accounts are held by non-Debtor Collective Brands Logistics, Limited ("CBLL"); (e) four Bank Accounts are held by non-Debtor Dynamic Assets Limited ("DAL"); (f) two Bank Accounts are held by Payless ShoeSource Canada, Inc.; (g) two Bank Accounts are held by Payless ShoeSource Canada GP Inc.; (h) one Bank Account is held by non-Debtor Collective Franchising, Ltd.; (i) one Bank Account is held by non-Debtor Payless India Franchising, LLC; (j) two Bank Accounts are held by Payless ShoeSource of Puerto Rico, Inc.; (k) two Bank Accounts are held by non-Debtor Payless ShoeSource Saipan, Inc. and (l) one Bank Account is held by Payless ShoeSource Worldwide, Inc.  A schedule of the accounts described above is attached hereto as **Exhibit B**.

11.     The Company's primary Cash Management Bank is Wells Fargo Bank, N.A. ("Wells Fargo"), where the Debtors and their affiliates maintain 17 of the Bank Accounts.  The Debtors also maintain Bank Accounts with a number of Banks other than Wells Fargo, each of which is identified on the schedule attached hereto as **Exhibit B**.  As discussed more fully below, 31 of the 178 Bank Accounts are maintained with Banks designated by the Office of the United States Trustee for the Eastern District of Missouri (the "U.S. Trustee"), pursuant to the U.S.

Trustee's *Operating Guidelines and Financial Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").

12.     The bulk of the Debtors' cash on hand is comprised of proceeds from the Debtors' ongoing business operations.  As of the Petition Date, the Debtors have an aggregate amount of approximately $52.3 million in the Bank Accounts.[5]  Generally, the Cash Management System is organized around a central concentration account maintained by Payless Finance at Wells Fargo, as described below.  The Cash Management System also includes two groups of Bank Accounts maintained to facilitate the Company's operations in Canada and in Asia, respectively, reflecting the Debtors' globally integrated business.  The roles of the Cash Management System's key Bank Accounts are summarized below:

    a.    "Master Account": The Debtors maintain a master or "concentration" Bank Account held by Payless Finance at Wells Fargo.  The Master Account is the Company's main operating account into which funds are regularly swept from other of the Company's Bank Accounts and from which funds are disbursed to meet the Company's ordinary course obligations.

    b.    "Wire/ACH Accounts": The Debtors maintain two Bank Accounts held by Payless Finance at Wells Fargo to process outbound and inbound wires and ACH transfers, consisting of one disbursement account (the "Wire/ACH Disbursement Account") and one receipt account (the "Wire/ACH Receipt Account").  Both of these accounts are zero balance accounts.  The Wire/ACH Disbursement Account is used to process virtually all outgoing wires and ACH transfers related to accounts payable, excluding payroll disbursement accounts and the specialized disbursement accounts described below.  This is the Debtors' largest disbursement account.  The Wire/ACH Receipt Account is used to process inbound wires and ACH transfers from the deposit accounts described below, as well as all domestic credit card and debit card receipts.

    c.    "Deposit Accounts" include:

        •    the Wire/ACH Receipt Account described above;

---

[5] This figure reflects the approximate aggregate cash balance as of February 14, 2019.

- 33 consolidated store Bank Accounts (the "Consolidated Store Accounts") established to receive daily deposits of checks and cash funds from approximately 2,250 of the Debtors and their affiliates' stores located in the United States, Puerto Rico, Guam and Saipan. 29 of these accounts are held by Payless ShoeSource, two are held by Payless ShoeSource of Puerto Rico, Inc., one is held by Payless Shoesource Worldwide, Inc., and one is held by non-Debtor Payless ShoeSource Saipan, Inc. The Consolidated Store Accounts are swept daily by the Debtors into the Wire/ACH Receipt Account;

- 102 non-consolidated store Bank Accounts held by Payless ShoeSource (the "Non-Consolidated Store Accounts") established to receive daily deposits of checks and cash funds from 102 of the Debtors' stores. These accounts are functionally equivalent to the Consolidated Store Accounts, but are maintained on an individual store basis rather than on a consolidated basis for stores located in rural areas where choice of bank depositories is extremely limited. Each of these accounts is swept by the Debtors into the Wire/ACH Receipt Account on any day during which the account balance exceeds $3,500;

- one Bank Account held by non-Debtor Payless ShoeSource Saipan, Inc. at U.S. Bank National Association established to serve as a Saipan concentration account, which is currently not in use;

- two Bank Accounts held at Wells Fargo established to receive all franchising-related deposits. One Bank Account is held by non-Debtor Payless India Franchising LLC and receives all deposits related to the Company's franchising business in India. This Bank Account is a zero balance account with respect to the Master Account. The other Bank Account is held by non-Debtor Collective Franchising, Ltd., and receives all deposits related to the Company's franchising business outside of India. This Bank Account is a zero balance account with respect to the Wire/ACH Receipt Account; and

- one Bank Account held by Payless Finance at Wells Fargo established to receive all receipts relating to accounts receivable purchases, including gift card purchases. This Bank Account is a zero balance account.

- one Bank Account held by Payless Finance at Wells Fargo established to receive miscellaneous corporate-level deposits. This Bank Account is a zero balance account;

    d.      "<u>Disbursement Accounts</u>" include:

- the Wire/ACH Disbursement Account described above;

- one Bank Account held by Payless Finance at Wells Fargo established to disburse all payments made by check related to accounts payable. This Bank Account is a zero balance account with respect to the Master Account;

- one Bank Account held by Payless ShoeSource at Lake Region Bank (the "<u>Returned Check Account</u>") established in connection with the Company's returned check processing agent, which account disburses all amounts related to retail customer checks that "bounce" or are returned by the check-writing bank due to insufficient funds. This Bank Account is funded by the Debtors from the Master Account on an as-needed basis;

- three Bank Accounts held by Payless Finance established to disburse domestic payroll by direct deposit, check issuance and paycard programs. Two of these accounts are held at Wells Fargo and one is held at Bank of the Internet (paycard program). The paycard account is funded by the Master Account on an as-needed basis, while the direct deposit and check issuance accounts are zero balance accounts with respect to the Master Account;

- one Bank Account held by Payless Finance at Wells Fargo established to disburse duty payments. This Bank Account is a zero balance account with respect to the Master Account;

- one Bank Account held by Payless Finance at Wells Fargo established to process disbursements related to medical provider claims, including disability and life insurance. This Bank Account is a zero balance account with respect to the Master Account; and

- one Bank Account held by Payless Finance at Wells Fargo established to disburse payments related to taxes and postage. This Bank Account is a zero balance account with respect to the Master Account.

    e.      "<u>Canada Operations Accounts</u>": Debtors Payless ShoeSource Canada, Inc., Payless ShoeSource Canada LP and Payless ShoeSource Canada GP Inc. (together, the "<u>Canadian Debtors</u>") hold 16 Bank Accounts (together, the "<u>Canada Operations Accounts</u>") primarily established to facilitate the Debtors' retail operations in Canada. All of the Canada Operations Accounts are held at Canadian Banks and together operate largely as a self-contained cash management system within the Company's overall Cash Management System. The Debtors' primary Cash Management Bank in Canada is the Royal Bank of Canada ("<u>RBC</u>"). Similar to the

organization of the Master Account, the Receipt Accounts and the Disbursement Accounts described above, the Canadian Debtors maintain a master or "concentration" account at RBC (the "Canada Master Account"). The Debtors' retail stores in Canada make deposits into five different Bank Accounts, which are functionally equivalent to the Consolidated Store Accounts described above. These funds are then swept into the Canada Master Account. Canadian credit card receipts are deposited by the Canadian Debtors' credit card processors into a Bank Account held by Payless ShoeSource Canada LP at RBC, and then swept into the Canada Master Account. Ordinary course disbursements in CAD, that are made by wire or ACH, such as payroll and retail store rental payments for the Debtors' operations in Canada, are made directly from the Canada Master Account. Disbursements required to be made by check (to certain of the Canadian Debtors' operating vendors and tax authorities) in CAD are funded from the Canada Master Account into a disbursement account also held by the Canadian Debtors at RBC. When USD payments are required, funds from the Canadian Master Account and transferred into a USD account held by Payless ShoeSource Canada LP at RBC (the "Canada USD Master Account") and then into one of two additional RBC accounts depending on the required form of payment.

f.   "Canada Multicurrency Account": Payless ShoeSource Canada LP holds one Bank Account at Wells Fargo that is a USD/CAD multicurrency account (the "Canada Multicurrency Account"). The Canada Multicurrency Account is held to facilitate any cash sweep from the Canada Master Account to Wells Fargo in the event of a "cash dominion" under the terms of the ABL Credit Facility.

g.   "Asia Operations Accounts": Non-Debtors CBLL and DAL hold 10 Bank Accounts (together, the "Asia Operations Accounts") primarily established to facilitate payments to certain of the Debtors' merchandise providers located in Asia and to fund related business operations located in Asia. As such, most of these Bank Accounts are disbursement accounts and are funded by the Master Account through the Wire/ACH Disbursement Account. Specifically, funds are disbursed from the Wire/ACH Disbursement Account into a domestic Bank Account held by CBLL at Wells Fargo or to an international bank account held by DAL (together, the "Asia Intermediary Accounts"), generally with cash sufficient to cover the Company's obligations that are due to be paid out from the various Asia Operations Accounts. Funds are then sent from the Asia Intermediary Accounts to the various Asia Operations Accounts for payment of the Company's obligations related to operations in Asia or to the Company's merchandise providers located in Asia. All other disbursements from these Bank Accounts relate to CBLL and DAL's business operating costs, such as payroll for employees located in Asia. Finally, one of the overseas Asia Operations Accounts held by DAL receives funds from certain of the Company's foreign wholesale

9

purchasing partners.  This Bank Account is the only Asia Operations Account that receives funds from third parties.

13.     The Debtors incur periodic service charges and other fees in connection with the maintenance of the Cash Management System (the "<u>Bank Fees</u>").  Generally, the Bank Fees for each month are paid in arrears each month and are automatically deducted from the Debtors' Bank Accounts as Bank Fees for each Bank Account are assessed by the applicable Banks. Historically, the Debtors estimate that they pay approximately $200,000 in Bank Fees each month, depending on transaction volume.  The Debtors estimate that approximately $200,000 in Bank Fees remain outstanding as of the Petition Date.

**B.     Description of Funds Processing**

14.     A diagram setting forth the flow of funds among the Bank Accounts is attached as **<u>Exhibit A</u>** annexed hereto.  The following list describes the manner in which cash generally moves through the Cash Management System:

- *Receipts and Revenues*.  As detailed above, receipts and revenues are deposited into the Deposit Accounts and are ultimately funded into the Master Account, either directly or through the Wire/ACH Receipt Account.  Receipts and revenues associated with the Debtors' Canadian retail operations are ultimately funded into the Canada Master Account, as described above.

- *Disbursements*.  With respect to the zero balance Disbursement Accounts, such accounts are funded, as needed, by the Master Account with cash sufficient to satisfy the Debtors' disbursement obligations on a given day. With respect to non-zero-balance Disbursement Accounts, such as the Returned Check Account, such accounts are periodically funded from the Master Account on an as-needed basis.  All of the Disbursement Accounts are directly funded by the Master Account. Disbursements made by the Asian Operating Accounts are indirectly funded by the Master Account as detailed above.  Disbursements made by the Canada Operating Accounts are funded from the Canada Master Account.

## II.    Intercompany Transactions

15.    The Debtors maintain business relationships with each other and with non-Debtor affiliates, and thus engage in intercompany transactions (collectively, the "Intercompany Transactions") in the ordinary course of business.  The Intercompany Transactions cover a number of different categories, including intercompany loans, intercompany accounts receivable and accounts payable under various intercompany agreements, the direct payment of third-party obligations by one affiliate on behalf of another affiliate (with a corresponding adjustment to the Debtors' books and records), and categories related to other amounts outstanding on account of the Debtors' Cash Management System.  The Debtors' ability to continue to make and receive payments related to these business operations in the ordinary course is essential to preserving value for the estates' stakeholders.

### A.    Background on Foreign Non-Debtor Transactions

16.    In the ordinary course of business, the Debtors enter into agreements and financing arrangements with and make payments to and on behalf of foreign non-Debtor affiliates.  Although the Debtors are not party to any joint venture or partnership agreements with third parties, certain non-Debtor affiliates are parties to such agreements, and the Debtors conduct certain of their foreign business operations through those agreements.  Importantly, the Debtors make payments to many of their merchandise vendors through a joint venture arrangement between non-Debtor affiliate Payless Sourcing, LLC and non-Debtor affiliate CBLL.  In the ordinary course, CBLL is funded by payments to the Asia Operations Accounts by Debtor Payless Finance Inc.

17.     The Company operates its business in the following countries through joint venture agreements between certain non-Debtor affiliates[6] and third parties: Antigua, Barbados, Colombia, Costa Rica, Dominica, the Dominican Republic, Ecuador, El Salvador, Grenada, Guatemala, Honduras, Jamaica, St. Kitts, St. Lucia, Nicaragua, Panama, Peru, and Trinidad and Tobago.  Pursuant to these joint venture agreements, as well as related agreements between the Company and the respective joint venture entities, such as sourcing, licensing and technology agreements, the Company has ongoing obligations to these entities, including capital funding obligations.  The remainder of the Company's business abroad is operated by third-parties under franchise agreements.

18.     The foreign joint ventures described in the paragraph above each have their own cash management operations and maintain bank accounts separate and apart from the Debtors' Cash Management System.  Generally, and other than on account of Intercompany Transactions, these foreign joint ventures only contribute cash to the Debtors' Cash Management System if the Debtors direct the associated non-Debtor affiliates to contribute cash to the Debtors' Bank Accounts.  The Debtors do not otherwise regularly repatriate this cash.

### B.     Non-Debtor Affiliate Transactions

19.     At any given time, as a result of ordinary course Intercompany Transactions, there may be claims owing by one Debtor or non-Debtor affiliate to another Debtor or non-Debtor affiliate (the "Intercompany Claims").  For example, by the operation of the Cash Management System, certain of the Debtors make payments to third parties on behalf of other Debtors and non-Debtor affiliates, resulting in intercompany receivables and payables.  In other instances, Debtors transfer funds to certain non-Debtor affiliates to, inclusive of other reasons, fund

---

[6] The following non-Debtor affiliates are parties to joint venture agreements with third parties: Payless CA Management Limited, Payless CO Management Ltd., PSS Latin America Holdings and Collective Brands Cooperatief U.A.

payments by the non-Debtor affiliates to third parties, also resulting in intercompany receivables and payables.  The Debtors track all intercompany balances in their accounting system and can ascertain, trace and account for all Intercompany Claims.  The Debtors will continue to track postpetition intercompany transfers and payments made by the Debtors to third parties on behalf of non-Debtor affiliates.  Each payment from a Debtor and each bookkeeping entry between Debtors and between Debtors and non-Debtor affiliates on account of a postpetition Intercompany Transaction (each, a "Postpetition Intercompany Transaction") is an essential component of the Cash Management System.  Discontinuing the Intercompany Transactions postpetition would unnecessarily disrupt the Cash Management System and the Debtors' operations to the detriment of the Debtors and their stakeholders.

20.    In certain instances, Intercompany Claims between Debtors and between Debtors and non-Debtor affiliates are "netted" to allocate outstanding amounts due and owing at the Debtors' discretion.  By this Motion, the Debtors respectively request to continue these "netting" practices postpetition on an ordinary course basis.  The Debtors additionally request authority to continue entering into ordinary course Intercompany Transactions between Debtors and non-Debtor affiliates.  The Debtors have implemented internal mechanisms that will permit them, with the assistance of their advisors, to accurately track the balance of all prepetition and postpetition Intercompany Claims.

21.    Further, to ensure that each Debtor will not fund the operations of another entity at the expense of such Debtors' creditors, the Debtors respectfully request: (i) pursuant to Bankruptcy Code sections 503(b)(1) and 364(b), that all valid Intercompany Claims arising from postpetition payments from Debtors to other Debtors or from non-Debtor affiliates to Debtors on account of Postpetition Intercompany Transactions be accorded administrative expense status;

13

and (ii) unless prohibited by applicable law, that (a) transfers made by Debtors to non-Debtor affiliates and (b) payments to third parties made by Debtors on behalf of non-Debtor affiliates, each pursuant to Postpetition Intercompany Transactions, be deemed claims against, and loans to, such non-Debtor affiliates (and not contribution of capitals), in each case except to the extent that such Postpetition Intercompany Transactions are on account of antecedent debts. This relief will ensure that each entity receiving payments from a Debtor or having payment obligations met by a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

### III.      The Debtors' Existing Business Forms

22.      The Debtors use a variety of preprinted and electronic business forms including checks, letterhead, correspondence forms, invoices, purchase orders and other business forms in the ordinary course of business (collectively, and as they may be modified from time to time, the "Business Forms"). The Debtors also maintain books and records to document their financial results and a wide array of necessary operating activities. Rather than requiring the Debtors to incur the expense and delay of ordering entirely new business forms as required under the U.S. Trustee Guidelines, the Debtors seek authority to continue using all currently existing Business Forms (including, without limitation, printed and/or electronic checks, letterhead, correspondence forms, invoices and purchase orders) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession. This will minimize expenses to the Debtors' estates and avoid confusion and the potential for error on the part of employees, customers, vendors and suppliers during the pendency of these chapter 11 cases.

## RELIEF REQUESTED

23.      The Debtors seek entry of the Proposed Interim Order, pending the entry of the Proposed Final Order, authorizing, but not directing, the Debtors to continue to operate the Cash Management System, and to honor certain prepetition obligations in accordance with the operation of the Cash Management System.  Specifically, the Debtors request authority to: (i) continue to use, with the same account numbers, each of the Bank Accounts; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; and (iii) conduct banking transactions by all usual means and debit the Bank Accounts on account of all usual items and payment instructions.

24.      Additionally, the Debtors seek authority to: (i) use, in their present form, all Business Forms (including check stock, letterhead, purchase orders and invoices) and other correspondence and documents related to the Bank Accounts, without reference to the Debtors' status as debtors in possession and (ii) continue the Intercompany Transactions between and among the Debtors and between the Debtors and their non-Debtor affiliates in the ordinary course of business and grant administrative expense status to Intercompany Claims.[7]  The Debtors also request that, upon entry of the Proposed Interim Order, the Court schedule a final hearing (the "Final Hearing") on the Motion to consider the relief requested herein on a final basis.

---

[7] Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors believe the Intercompany Transactions are ordinary course transactions within the meaning of Bankruptcy Code section 363(c)(l) and, therefore, do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  The continued performance of the ordinary course Intercompany Transactions is necessary to ensure the Debtors' ability to operate their international businesses and wind down their North American businesses during these chapter 11 cases.

<u>**BASIS FOR RELIEF**</u>

**I.      The Court Should Approve the Debtors' Continued Use of the Cash Management System Because It Is Essential to the Debtors' Operations**

25.      The Cash Management System constitutes an ordinary course and essential business practice of the Debtors.  The Cash Management System provides significant benefits to the Debtors including, among other things, the ability to control corporate funds, ensure the availability of funds when necessary, and reduce costs and administrative expenses by facilitating the movement of funds and developing timely and accurate account balance information.  Thus, to ensure the Debtors' smooth transition into chapter 11 and realize the benefits of the Cash Management System, the Debtors should be allowed to continue using the Cash Management System and should not be required to open new bank accounts.

26.      Unless otherwise ordered by the Court, the U.S. Trustee Guidelines require a debtor to, among other things, establish one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes), close all existing bank accounts and open new debtor in possession accounts, maintain a separate debtor in possession account for cash collateral, obtain checks that bear the designation "debtor in possession," and reference the bankruptcy case number and the type of account on such checks.  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the petition date.

27.      The continuation of the Cash Management System is nevertheless permitted pursuant to Bankruptcy Code section 363(c)(1), which authorizes debtors in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  Bankruptcy Code section 363(c)(1) also allows a debtor in possession to engage in

16

the ordinary course transactions required to operate its business without additional oversight from its creditors or the court. *See, e.g., Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Harbinger, Inc. v. Metropolitan Cosmetic & Reconstructive Surgical Clinic, P.A.*, 124 B.R. 784, 786 (Bankr. D. Minn. 1990) (citing *United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592 (Bankr. M.D. Tenn. 1990)). Included within the purview of Bankruptcy Code section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Bankruptcy courts within the Eighth Circuit have held that a transaction qualifies as "ordinary course" if it "is of a type that is commonly undertaken within the debtor's industry." *Peltz v. Gulfcoast Workstation Grp. (In re Bridge Information Systems, Inc.*), 293 B.R. 479, 486 (Bankr. E D. Mo. 2003).

28.     Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter," *see In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987), and have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

29.     Here, requiring the Debtors to adopt a new, segmented cash management system at this critical stage of the chapter 11 cases would be expensive, create unnecessary administrative burdens, and be extraordinarily disruptive.  New bank accounts would increase operating costs, and the delays that would result from opening new accounts, revising cash management procedures and redirecting daily store deposits would hamper the Debtors' ability to conduct an orderly liquidation of their North American stores and otherwise operate their businesses.  Further, the Debtors would be subject to significant administrative burdens and expenses because they would need to execute new signatory cards and depository agreements and create an entirely new manual system for issuing checks and paying postpetition obligations, all as would otherwise be required by the U.S. Trustee Guidelines.  *See* U.S. Trustee Guidelines, at 2-3.

30.     By contrast, maintaining the current Cash Management System would greatly facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.  Importantly, the Cash Management System provides the Debtors with the ability to, among other things, quickly create status reports on the location and amount of funds, which allows the Debtors' management team to track and control such funds, ensure cash availability and reduce administrative costs through a centralized method of coordinating the collection and movement of funds.  Finally, maintaining the current Cash Management System would allow the Debtors' treasury and accounting employees to focus on their daily responsibilities.

31.     The Debtors satisfy the standards for maintaining an existing cash management system.  The Debtors have utilized the Cash Management System in its current form for years as part of their ordinary and usual business practices, and as such, the Debtors believe the continued

use of the Cash Management System falls within the purview of ordinary course transactions permitted under Bankruptcy Code section 363(c)(1). In addition, the Debtors respectfully submit that parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that payments will not be made on account of obligations incurred before the Petition Date, other than those authorized by the Court. Specifically, with the assistance of their professional advisors, the Debtors have implemented internal protocols that prohibit payments on account of prepetition debts, including prepetition intercompany debts, without the prior approval of the Debtors' finance department. The Debtors will continue to work closely with the Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval. In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

32. Accordingly, the Debtors respectfully request that the Court authorize the continued use of the existing Cash Management System to facilitate the Debtors' transition into chapter 11. Specifically, the Debtors respectfully request that the Court authorize the Banks to maintain, service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business. The Debtors further respectfully request that the Court authorize and direct the Banks to receive, process, honor and pay any and all checks, wire transfer, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or

subsequent to the Petition Date.[8]  The Debtors also respectfully request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition.  Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.

33.     Finally, the Debtors respectfully request that the Court authorize the Debtors to continue to pay the Bank Fees, including any prepetition Bank Fees, and further authorize the Banks to chargeback returned items to the Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

34.     In other large, complex, and/or well-publicized chapter 11 cases, such as these, courts in this district and in other jurisdictions regularly waive the U.S. Trustee Guideline requirements and allow the continued use of cash management systems and prepetition bank accounts employed in the ordinary course of a debtor's prepetition business. *See, e.g., In re Armstrong Energy, Inc.,* No. 17-47541-659 (Bankr. E.D. Mo. Dec. 1, 2017) [Docket No. 199]; *In re Payless Holdings LLC,* No. 17-42267-659 (Bankr. E.D. Mo. May 25, 2017) [Docket No. 892]; *In re Peabody Energy Corp.,* No. 16-42529-399 (Bankr. E D. Mo. May 17, 2016) [Docket No. 515]; *In re Arch Coal, Inc.,* No. 16-40120-705 (Bankr. ED. Mo. Apr. 8, 2016) [Docket No. 671]; *see also In re Sabine Oil & Gas Corp.,* No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015) [Docket No. 315] (allowing debtors to continue using their cash management system); *In re*

---

[8] The Debtors also request authority for the Cash Management Banks to honor any check, draft, or other notification that the Debtors advised the Cash Management Banks to have been drawn, issued or otherwise presented prior to the Petition Date only to the extent authorized by order of the Court.

*Eagle Bulk Shipping Inc*., No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014) [Docket No. 100] (same).

## II.    The Court Should Authorize the Debtors to Continue Using Debit, Wire, Credit Card and ACH Payments

35.    The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  As discussed above, in the ordinary course of business, the Debtors conduct transactions through ACH transfers and other similar methods.  In addition, a sizable percentage of the Debtors' customer receipts are received through credit card and cash payments.  The Debtors also utilize a paycard account to pay for certain payroll expenses.  If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, credit card or other similar methods is impaired, the Debtors may be unable to perform under certain payroll obligations, their business operations may be unnecessarily disrupted, and their estates will incur additional costs.

## III.    The Court Should Authorize the Debtors to Continue Using the Existing Business Forms

36.    To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  The Debtors submit that the continued use of the Business Forms will not prejudice parties in interest because parties doing business with the Debtors undoubtedly will know of the Debtors' status as debtors in possession.  Such relief will avoid unnecessary expenses and administrative delays at this critical time.

37.     Courts in this district routinely allow debtors to use their prepetition business forms without the "debtor in possession" label.  *See, e.g., In re Armstrong Energy, Inc.*, No. 17-47541-659 (Bankr. E.D. Mo. Dec. 1, 2017) [Docket No. 199]; *In re Peabody Energy Corp.*, No. 16-42529-399 (Bankr. E.D. Mo. May 17, 2016) [Docket No. 515]; *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo. Apr. 8, 2016) [Docket No. 671]; *see also In re BCBG Max Azria Glob. Holdings, LLC*, No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) [Docket No. 245]; *In re Limited Stores Co.*, No. 17-10124 (KJC) (Bankr. D. Del. Feb. 16, 2017) [Docket No. 230].

**IV.  The Court Should Authorize the Debtors to Continue Engaging in Postpetition Intercompany Transactions in the Ordinary Course and Should Afford Administrative Expense Status to Postpetition Intercompany Transactions Among the Debtors and Non-Debtor Affiliates**

38.     Allowing the Debtors to engage in Postpetition Intercompany Transactions is in the best interests of the Debtors' estates and their creditors, and the Debtors seek authority to enter into such Postpetition Intercompany Transactions in the ordinary course of business. Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors respectfully submit that Postpetition Intercompany Transactions arising in the ordinary course are authorized as a matter of law pursuant to Bankruptcy Code section 363(c)(1), and thus, do not require the Court's approval.[9]  The Debtors will continue to maintain records of Postpetition Intercompany Transactions, including records of all current intercompany accounts receivables and payables, to facilitate parties' access to information where reasonably requested, in accordance with their current Intercompany Claims tracking system.

39.     The Debtors respectfully submit that the relief requested herein fairly balances the Debtors' needs to ensure continued access to their Cash Management System, minimize

---

[9] Nevertheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.

disruption, and preserve value, on the one hand, with the interests of their stakeholders in transparency, on the other hand. The requested relief will also ensure that a Debtor's estate will not be unduly burdened by the cost of transfers to, or on behalf of, Debtor and non-Debtor affiliates. As noted above, the Debtors request authority to continue Postpetition Intercompany Transactions in the ordinary course (including with respect to "netting" or setoffs of postpetition Intercompany Claims arising in the ordinary course).[10]

40.    Additionally, the Debtors respectfully request, pursuant to Bankruptcy Code section 503(b)(1), that this Court order: (i) that all Intercompany Claims arising after the Petition Date be afforded administrative expense priority and (ii) unless prohibited by applicable law, that all  (a) transfers made by Debtors to non-Debtor affiliates and (b) payments to third parties made by Debtors on behalf of non-Debtor affiliates, each pursuant to Postpetition Intercompany Transactions, be deemed claims against, and loans to, such non-Debtor affiliates (and not contributions of capital), in each case except to the extent that such Postpetition Intercompany

---

[10] Bankruptcy Code section 553(a) provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).  A creditor need only establish two elements before a setoff may be asserted—mutuality and timing. *See United States v. Gerth*, 991 F.2d 1428, 1431 (8th Cir. 1993); *Gulfcoast Workstation Corp. & Relational Fund Corp. v. Peltz (In re Bridge Info. Sys., Inc.)*, 314 B.R. 421, 428 (Bankr. E.D. Mo. 2004); *Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re Bennett Funding Grp., Inc.)*, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997), *aff'd* 146 F.3d 136 (2d Cir. 1988).  Although courts have not uniformly defined the elements of mutuality, most courts require that debts are owed between the same parties and in the same right or capacity. *See, e.g.*, *Bank of Cairo & Moberly v. Thurston (In re Thurston)*, 139 B.R. 14 (Bankr. W.D. Mo. 1992); *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1537 (10th Cir. 1990).  Timing requires that both claims arise prepetition. *See, e.g.*, *Gerth*, 991 B.R. at 1431; *Packaging Indus. Grp., Inc. v. Dennison Mfg. Co. (In re Sentinel Prods. Corp.)*, 192 B.R. 41, 45 (S.D.N.Y. 1996); *Scherling v. Hellman Elec. Corp. (In re Westchester Structures Inc.)*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995).  In addition, courts have allowed the parties to offset claims postpetition in the same manner as a prepetition setoff, as long as the mutuality requirements are met. *See, e.g.*, *United States v. Gordon Sel-Way, Inc. (In re Gordon Sel-Way, Inc.)*, 239 B.R. 741, 751-55 (E.D. Mich. 1999), *aff'd*, 270 F.3d 280 (6th Cir. 2001); *Mohawk Indus., Inc. v. United States (In re Mohawk Indus., Inc.)*, 82 B.R. 174, 179 (Bankr. D. Mass. 1987).  The Cash Management System allows the Debtors to track all obligations owing between related entities and thereby ensures that all setoffs of Intercompany Claims on account of Postpetition Intercompany Transactions will meet both the mutuality and timing requirements of Bankruptcy Code section 553.  Therefore, the Debtors respectfully request that the Debtors expressly be authorized to set off postpetition Intercompany Claims between a Debtor and another Debtor or between a Debtor and a non-Debtor affiliate.

Transactions are on account of antecedent debts. The Debtors believe that such relief is necessary to ensure that each entity using funds that flow through the Cash Management System will continue to bear the ultimate responsibility for its ordinary-course transactions with affiliates, and a particular Debtor's estate will not be required to fund the operations of other Debtors and non-Debtor affiliates without adequate recompense.

41.     Such relief is consistent with the relief granted by Courts in this jurisdiction and others in similarly situated matters—particularly where, as here, the debtor operates a multinational enterprise and an integrated cash management system. *See, e.g., In re Armstrong Energy, Inc.*, No. 17-47541-659 (Bankr. E.D. Mo. Dec. 1, 2017) [Docket No. 199]; *In re Peabody Energy Corp.*, No. 16-42529-399 (Bankr. E D. Mo. May 17, 2016) [Docket No. 515]; *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (Bankr. E D. Mo. Apr. 13, 2016) [Docket No. 643]; *In re Arch Coal*, No. 16-40120-705 (Bankr. E.D. Mo. Apr. 8, 2016) [Docket No. 671]; *see also In re BCBG Max Azria Global Holdings, LLC*, No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) [Docket No. 245]; *In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y. Jan. 23, 2017) [Docket No. 56] (interim order); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015) [Docket No. 315]; *In re Patriot Coal Co.*, No. 15-32450 (KLP) (Bankr. E.D. Va. May 13, 2015) [Docket No. 53].

## V.     Cause Exists for Waiving the Deposit Guidelines of Bankruptcy Code Section 345 and Certain of the U.S. Trustee Guidelines

42.     The majority of the Bank Accounts comply with Bankruptcy Code section 345(b) because such Bank Accounts are maintained at banks insured by federal agencies, such as the Federal Deposit Insurance Corporation (the "FDIC") and the National Credit Union Insurance Fund (the "NCUSIF"). *See* 11 U.S.C. § 345(b). As of the Petition Date, all of the Debtors' 158 domestic Bank Accounts were held at Banks insured by the FDIC or the NCUSIF. Thirty-one

(31) of the 178 Bank Accounts are maintained with banks designated as authorized depositories by the U.S. Trustee pursuant to the U.S. Trustee Guidelines (each, an "Authorized Depository" and, collectively, the "Authorized Depositories").  The U.S. Trustee has designated the following banks that hold Bank Accounts as Authorized Depositories: Wells Fargo, Bank of America, Bank of the Ozarks, Bank of the West, Capital One, N.A., Citibank, N.A., Commerce Bank, Fifth Third Bank, First Tennessee Bank, Key Bank N.A., PNC Bank, N.A., Regions Bank, N.A., UMB Bank, and US Bank, N.A.  One hundred forty-seven (147) Bank Accounts are held at Banks that are not Authorized Depositories under the U.S. Trustee Guidelines.  The vast majority of the Bank Accounts held by these Banks are (a) foreign bank accounts related to the Company's business operations in Canada and Asia and (b) Non-Consolidated Store Accounts, which, as noted above, receive daily deposits from stores located in rural areas in the United States where the choice of bank depositories is limited.  Indeed, these Banks are typically the only banks located nearby these stores, meaning that if the Debtors are not permitted to maintain these Non-Consolidated Store Accounts, the 102 stores that make daily deposits into such accounts will most likely have to submit their required daily deposits by mail, creating additional operational burdens and expenses to the detriment of the Debtors' business and their estates. Such disruption is particularly unwarranted in this case as the majority of the Debtors' Bank Accounts consist of Non-Consolidated Store Accounts that typically hold less than $3,500 at any given time and which are regularly swept into Bank Accounts held at Wells Fargo, an Authorized Depository.  Moreover, all of the Debtors' 102 Non-Consolidated Store Accounts comply with Bankruptcy Code section 345(b) as they are insured by the FDIC or NCUSIF. Thus, these Banks are well-capitalized and financially stable institutions, and the Debtors request

that the Court waive the requirements of Bankruptcy Code section 345(b) and the U.S. Trustee Guidelines with respect to authorized depository requirements.

43.     The Debtors further respectfully request that cause exists to waive the requirements for Bankruptcy Code section 345(b) for all Bank Accounts held in foreign jurisdictions.  None of the foreign Bank Accounts relate to investment activity.  As described above, these foreign Bank Accounts are integral to the Debtors' operations and overall Cash Management System and are used primarily to fund the Debtors' operations in Canada or facilitate payments to the Debtors' overseas merchandise providers.  The risk of vendors declining to perform at this critical time out of administrative delays and confusion relating to opening new bank accounts compliant with section 345(b) requirements far outweighs any benefit to halting or changing the Debtors' ordinary course flow of funds.  If the Debtors are granted a waiver, the Debtors will not be burdened with the significant administrative difficulties and expenses relating to opening new accounts in a manner that ensures all of their funds are fully insured.  In addition, the risk of severe disruption of the Debtors' integrated global operations, particularly with respect to ordinary course merchandise flows to Latin American and franchise businesses and Asia operations, will be minimized.

44.     Courts in this district and in other jurisdictions have liberally construed the requirements of Bankruptcy Code section 345(b) that the debtor in possession obtain a bond from any entity with which their money is deposited.  In those instances, courts have waived the requirements of Bankruptcy Code section 345(b) and replaced them with alternative procedures. *See, e.g., In re Payless Holdings LLC*, No. 17-42267-659 (Bankr. E.D. Mo. May 25, 2017) [Docket No. 892]; *In re Peabody Energy Corp.*, No. 16-42529-399 (Bankr. E.D. Mo. May 17, 2016) [Docket No. 515]; *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (Bankr. E.D. Mo.

Apr. 13, 2016) [Docket No. 643]; *In re Arch Coal, Inc*., No. 16-40120-705 (Bankr. E.D. Mo. Apr. 8, 2016) [Docket No. 671]; *In re Bakers Footwear Grp. Inc*., No. 12-49658-705 (Bankr. E.D. Mo. Nov. 1, 2012) [Docket No. 165]; *see also In re HorseheadHolding Corp*., No. 16-10287 (CSS) (Bankr. D. Del. Feb. 3, 2016) [Docket No. 58] (interim order); *In re NII Holdings, Inc*., Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. May 21, 2015) [Docket No. 750] (interim order); *In re Alpha Natural Res., Inc*., No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 8, 2015) [Docket No. 624].  Cause exists for a similar waiver in these cases.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

45.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, authorizing the Debtors to (a) continue using their existing Cash Management System, Bank Accounts, and Business Forms, (b) honor certain prepetition obligations thereto, (c) continue to perform Intercompany Transactions consistent with historical practice, (d) grant administrative expense status to postpetition Intercompany Claims and (e) waive deposit requirements is integral to the Debtors' ability to ensure a smooth transition of their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  As further discussed herein, the relief requested is necessary for the Debtors to launch a smooth liquidation process in North America and maximize the asset values of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

46.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

47.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' or any other party-in-interest's rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code section 365.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be, nor should it be construed as an admission as to the validity of, any claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## NOTICE

48.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (e) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard) (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T.

Magnus); (f) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (g) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (h) counsel to any statutory committee appointed in the chapter 11 cases; (i) the United States Attorney's Office for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for all states in which the Debtors conduct business; (m) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (n) the Banks (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Interim Order granting the relief requested in the Motion and such other and further relief as may be just and proper, and (b) schedule a final hearing on the Motion as soon as is otherwise practicable thereafter to consider entry of the Proposed Final Order.

*[Remainder of page intentionally left blank.]*

Dated:  February 19, 2019
St. Louis, Missouri

/s/ *Richard W. Engel, Jr.*
Richard W. Engel, Jr. MO 34641
Erin M. Edelman MO 67374
John G. Willard MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
rengel@armstrongteasdale.com
eedelman@armstrongteasdale.com
jwillard@armstrongteasdale.com

-and-

Ira Dizengoff (*pro hac vice* admission pending)
Meredith A. Lahaie (*pro hac vice* admission pending)
Kevin Zuzolo (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

- and -

Julie Thompson (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

## **EXHIBIT A**

**Cash Management System Flow of Funds**

# Cash Management System Flow of Funds Overview



**NOTES:** * Individual bank account information is listed on the Bank Account Schedule annexed as Exhibit 2 to this Order.
** The Canadian Debtors include Payless ShoeSource Canada LP, Payless ShoeSource Canada, Inc., and Payless ShoeSource Canada GP Inc.

# Cash Management System Flow of Funds Overview - Canada



**NOTES:** *Account 4399 is not considered an operations account for Canada

## **EXHIBIT B**

**Bank Accounts**

**Bank Accounts**

| Entity[1] | Bank Name | Account Number | Account Type |
|---|---|---|---|
| Collective Brands Logistics, Limited* | Wells Fargo Bank, N.A. | Ending 7336 | Asia Intermediary Account |
| Collective Brands Logistics, Limited* | ANZ Bank (Taiwan) Limited | Ending 9007 | Asia Operations Account |
| Collective Brands Logistics, Limited* | ANZ Bank (Taiwan) Limited | Ending 0132 | Asia Operations Account |
| Collective Brands Logistics, Limited* | HSBC (Hong Kong) | Ending 3838 | Asia Operations Account |
| Collective Brands Logistics, Limited* | Wells Fargo Bank, N.A. | Ending 3111 | Asia Operations Account |
| Collective Brands Logistics, Limited* | Taishin International Bank | Ending 3400 | Asia Operations Account |
| Collective Franchising, Ltd.* | Wells Fargo Bank, N.A. | Ending 1038 | Franchising Deposits |
| Dynamic Assets Limited* | HSBC (Hong Kong) | Ending 1001 | Asia Operations Account |
| Dynamic Assets Limited* | HSBC (Hong Kong) | Ending 1274 | Asia Operations Account |
| Dynamic Assets Limited* | Taishin International Bank | Ending 2580 | Asia Operations Account |
| Dynamic Assets Limited* | Taishin International Bank | Ending 7552 | Asia Operations Account |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 5863 | Master Account |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 3955 | Payroll (Check) |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 8148 | Corporate Deposit |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 5454 | Payroll (ACH) |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 6500 | Duty Payments |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 7331 | Medical Provider Claims Payments |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 2832 | Tax and Postage Payments |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 4762 | Accounts Receivable Deposits |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 4778 | Outgoing Wire/ACH |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 6427 | Incoming Wire/ACH |
| Payless Finance, Inc. | Wells Fargo Bank, N.A. | Ending 3936 | Accounts Payable Checks |
| Payless Finance, Inc. | Bank of the Internet | Ending 8655 | Payroll (Paycard) |
| Payless India Franchising, LLC* | Wells Fargo Bank, N.A. | Ending 5144 | Franchising Deposits |
| Payless ShoeSource Canada GP Inc. | Royal Bank of Canada | Ending 5535 | Canada Operations Account |
| Payless ShoeSource Canada GP Inc. | Royal Bank of Canada | Ending 6670 | Canada Operations Blocked Account |
| Payless ShoeSource Canada Inc. | Royal Bank of Canada | Ending 5477 | Canada Operations Account |
| Payless ShoeSource Canada Inc. | Royal Bank of Canada | Ending 6688 | Canada Operations Blocked |

---

[1] Entities marked with an asterisk (*) are non-Debtor affiliates.

| Entity[1] | Bank Name | Account Number | Account Type |
|---|---|---|---|
| | | | Account |
| Payless ShoeSource Canada LP | Royal Bank of Canada | Ending 6662 | Canada Operations Blocked Account |
| Payless ShoeSource Canada LP | Royal Bank of Canada | Ending 6937 | Canada Operations Account |
| Payless ShoeSource Canada LP | Royal Bank of Canada | Ending 6911 | Canada Operations Account |
| Payless ShoeSource Canada LP | Royal Bank of Canada | Ending 8517 | Canada Operations Account |
| Payless ShoeSource Canada LP | Royal Bank of Canada | Ending 9832 | Canada Operations Account |
| Payless ShoeSource Canada LP | Royal Bank of Canada | Ending 6945 | Canada Master Account |
| Payless ShoeSource Canada LP | Royal Bank of Canada | Ending 3979 | Canada Operations Account |
| Payless ShoeSource Canada LP | Royal Bank of Canada | Ending 8525 | Canada Operations Account |
| Payless ShoeSource Canada LP | Bank of Montreal | Ending 1836 | Canada Operations Account |
| Payless ShoeSource Canada LP | CIBC | Ending 6917 | Canada Operations Account |
| Payless ShoeSource Canada LP | Bank of Nova Scotia | Ending 6412 | Canada Operations Account |
| Payless ShoeSource Canada LP | Toronto Dominion | Ending 6429 | Canada Operations Account |
| Payless ShoeSource Canada LP | Wells Fargo Bank, N.A. | Ending 4399 | Canada Multicurrency Account |
| Payless ShoeSource of Puerto Rico, Inc. | Banco Popular | Ending 1584 | Consolidated Store Deposits |
| Payless ShoeSource of Puerto Rico, Inc. | Banco Santander | Ending 0908 | Consolidated Store Deposits |
| Payless ShoeSource Saipan, Inc.* | Bank of Hawaii - Saipan | Ending 2104 | Consolidated Store Deposits |
| Payless ShoeSource Saipan, Inc.* | U.S. Bank N.A. | Ending 8464 | Saipan Concentration Account |
| Payless ShoeSource Worldwide, Inc. | Bank of Hawaii - Guam | Ending 5469 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Lake Region Bank | Ending 5072-F | Returned Check Disbursements |
| Payless ShoeSource, Inc. | Wells Fargo Bank, N.A. | Ending 4582 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | TD Bank | Ending 1253 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Huntington National | Ending 7960 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Corefirst Bank | Ending 5975 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Santander | Ending 1616 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | US Bank | Ending 2887 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | M&T Trust Company | Ending 9511 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Capital One | Ending 7396 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Commerce | Ending 3194 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Citizens | Ending 8162 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | JPMorgan Chase | Ending 9880 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First National | Ending 9310 | Consolidated Store Deposits |

| Entity[1] | Bank Name | Account Number | Account Type |
|---|---|---|---|
| Payless ShoeSource, Inc. | Bank of the West | Ending 3324 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Bank of Hawaii | Ending 7839 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Tennessee | Ending 1314 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Compass | Ending 7232 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | PNC | Ending 3145 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Key Bank | Ending 3530 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Citizens | Ending 4883 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | United National | Ending 8808 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Fifth Third | Ending 3442 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | International Bank of Commerce | Ending 3296 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Bank of America | Ending 4606 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Regions | Ending 9423 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Branch Banking and Trust Company | Ending 8060 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | American Savings | Ending 6280 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Trustmark | Ending 9211 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Harris | Ending 2064 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Banco Popular - Virgin Islands | Ending 6823 | Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Peoples Bank | Ending 1390 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | UMB Bank | Ending 1819 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Arvest Bank | Ending 9656 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Bank Kansas | Ending 1348 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Fidelity Bank | Ending 8814 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Bank of the Ozarks | Ending 2108 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Woodforest National Bank | Ending 1250 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Arvest Bank | Ending 9737 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First American Bank | Ending 7103 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | United Community Bank | Ending 7461 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Crossroads Bank | Ending 7876 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Pioneer National Bank | Ending 5463 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Star Financial Bank | Ending 3977 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Arvest Bank | Ending 4044 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Bank of Oklahoma | Ending 6325 | Non-Consolidated Store Deposits |

| Entity[1] | Bank Name | Account Number | Account Type |
|---|---|---|---|
| Payless ShoeSource, Inc. | Arvest Bank | Ending 9643 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Town & Country Bank | Ending 0616 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Kansas Bank | Ending 7226 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First NBC Bank | Ending 3464 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Woodforest National Bank | Ending 0148 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | International Bank | Ending 4952 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Arvest Bank | Ending 4271 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Sabine State Bank & Trust | Ending 1423 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Bancorp South | Ending 6842 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Financial Bank | Ending 4701 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Jefferson Bank of Missouri | Ending 0357 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Mabrey Bank | Ending 8872 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Simmons Bank | Ending 6403 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Guaranty Bond Bank | Ending 5877 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Interstate Bank | Ending 1053 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | S & T Bank | Ending 0935 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Arvest Bank | Ending 5073 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First State Bank | Ending 0256 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Broadway Bank | Ending 0257 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Hometown National Bank | Ending 7929 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Alliance Bank | Ending 0435 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Ameris Bank | Ending 3503 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Midwest Bank | Ending 8278 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First State Bank | Ending 0249 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Lake City Bank | Ending 2922 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Frost Bank | Ending 4152 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Central National Bank | Ending 0959 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Woodforest National Bank | Ending 0818 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Guaranty Bank and Trust | Ending 9216 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Ameris Bank | Ending 3123 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Arvest Bank | Ending 6827 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | WesBanco Bank | Ending 4901 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Fort Davis State Bank | Ending 7203 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Boone County National | Ending 6634 | Non-Consolidated Store Deposits |

| Entity[1] | Bank Name | Account Number | Account Type |
|---|---|---|---|
| | Bank | | |
| Payless ShoeSource, Inc. | TCF Bank | Ending 3501 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Tri-Counties Bank | Ending 3422 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | NBT Bank | Ending 0469 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Columbia Bank | Ending 0842 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Elmira Savings Bank | Ending 5766 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Centier Bank | Ending 5323 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Centennial Bank | Ending 5385 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Beneficial Bank | Ending 7986 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Citizens First National Bank | Ending 9077 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Arvest Bank | Ending 5708 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First National Bank | Ending 4141 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Sun National Bank | Ending 6473 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Honesdale National Bank | Ending 6901 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Commonwealth Bank | Ending 1245 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Trustco Bank | Ending 2514 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Financial Bank | Ending 2732 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Alpine Bank | Ending 7203 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Wayne Bank | Ending 0058 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Alamosa National Bank | Ending 3507 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Community Bank | Ending 1298 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Woodforest National Bank | Ending 1276 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Eastern Savings Bank | Ending 1098 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Citizens Community Bank | Ending 0561 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Central Savings Bank | Ending 3554 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Parkway Bank | Ending 0808 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Citibank | Ending 2988 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Convenience | Ending 6743 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Convenience | Ending 2735 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First National Bank PA | Ending 2463 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Bangor Savings Bank | Ending 5809 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First United | Ending 6178 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Salem Five Bank | Ending 9464 | Non-Consolidated Store Deposits |

| Entity[1] | Bank Name | Account Number | Account Type |
|---|---|---|---|
| Payless ShoeSource, Inc. | United Bank | Ending 3648 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | NBT Bank | Ending 1014 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Woodforest National Bank | Ending 1334 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Lake Sunapee Bank | Ending 1570 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Fulton Bank of New Jersey | Ending 0357 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Salem Five | Ending 9941 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Camden National Bank | Ending 4048 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Alpine Bank and Trust | Ending 0538 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Capital City Bank | Ending 1701 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Union Bank | Ending 8228 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Commonwealth Bank | Ending 4093 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Peoples Bank | Ending 2637 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Citizens National Bank | Ending 0800 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Chemical Bank | Ending 0845 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Horizon Bank | Ending 7964 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Summit Bank | Ending 0440 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Community Bank | Ending 3033 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | First Commonwealth Bank | Ending 4942 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | NBT Bank | Ending 6718 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Northwest Savings Bank | Ending 8343 | Non-Consolidated Store Deposits |
| Payless ShoeSource, Inc. | Elmira Savings Bank | Ending 6178 | Non-Consolidated Store Deposits |

6