**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) | |
| | ) | (Joint Administration Requested) |
| Debtors.[1] | ) | |
| | ) | Hearing Date: February 19, 2019 |
| | ) | Hearing Time: 1:30 p.m. (Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND
FINAL ORDERS (I) PROHIBITING UTILITY PROVIDERS FROM
ALTERING, REFUSING OR DISCONTINUING UTILITY SERVICES,
(II) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE
UTILITY SERVICES, (III) ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an interim order and final order (the "Proposed Interim Order" and the "Proposed Final Order")[2]: (i) prohibiting utility providers from (a) altering, refusing or discontinuing services to or discriminating against, the Debtors on account of any outstanding amounts for services rendered prepetition or (b) drawing upon any existing security deposit, surety bond or other form of security to secure future payment for utility services; (ii)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179]. With respect to certain taxing authorities, the Debtors' address is 2001 Bryan Street, Suite 800, Dallas, Texas 75201. However, the location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource Inc., 3231 S.E. 6th Avenue, Topeka, Kansas 66607.

[2] A copy of the Proposed Inteirm Order and Proposed Final Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://cases.primeclerk.com/pss.

determining adequate assurance of payment for future utility services; (iii) establishing procedures for determining adequate assurance of payment for future utility services (the "Adequate Assurance Procedures"); and (iv) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Eastern District of Mssouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and procedural bases for the relief requestd herein are sections 105(a) and 366 of title 11 of the United States Code §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Missouri (the "Local Bankruptcy Rules").

## BACKGROUND

4. The Debtors and their non-debtor affiliates (together, the "Company") are the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices. The Company operates approximately 3,400 stores in more than 40 countries. The Debtors are headquartered in Topeka, Kansas, with extensive operations that span across the United States, Canada, Latin America, Asia, the Middle East, and Europe.

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their

2

businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. The Debtors have requested that their cases be consolidated for procedural purposes and administered jointly. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6. The Debtors commenced these chapter 11 cases approximately 18 months after completing a restructuring and emerging from chapter 11 protection with a reduced debt burden.[3] The Debtors, however, have been unable to sustain profitable operations in the current retail environment as a result of various factors more fully described in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "First Day Declaration").[4] Accordingly, the Debtors have determined that the best way to maximize value for all of their stakeholders is to liquidate all North America brick and mortar locations through the immediate commencement of going out of business sales. The Debtors believe, in the exercise of their business judgment, that such measures are in the best interests of the Debtors' estates.

7. A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

---

[3] On April 4, 2017, the Debtors' predecessors-in-interest commenced chapter 11 cases (the "Prior Cases") before the United States Bankruptcy Court for the Eastern District of Missouri, which were jointly administered under the caption *In re Payless Holdings LLC*, No. 17-42267. A plan of reorganization was confirmed in the Prior Cases on July 26, 2017, and such plan went effective on August 10, 2017.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

**THE UTILITY SERVICES**

8.      In the ordinary course of their business and management of their properties, the Debtors obtain traditional utility services and other similar utility services (collectively, the "Utility Services") from approximately 1331 utility providers (collectively, the "Utility Providers"). A non-exclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Service List") is attached hereto as **Exhibit A**.[5]

9.      Preserving Utility Services on an uninterrupted basis is essential to the Debtors' ability to conduct liquidation sales, and, therefore, to the maximization of the Debtors' estate. Indeed, any interruption of Utility Services, even for a brief period of time, would seriously jeopardize the Debtors' operations, customer relationships, revenue and profits, the Debtors' liquidation efforts and, ultimately, the Debtors' asset values and creditor recoveries. It is, therefore, critical that Utility Services continue uninterrupted during these chapter 11 cases.

10.     On average, the Debtors pay approximately $2,103,384.77 each month for the Utility Services, calculated as a historical average over the twelve months ended December 2018. Accordingly, the Debtors estimate that the cost for the Utility Services during the next 30 days will be approximately $2,200,000.00.[6]

**I.      Proposed Adequate Assurance of Payment**

11.     The Debtors intend to pay postpetition obligations owed to the Utility Providers in the ordinary course of business and in a timely manner. In the ordinary course of business, the

---

[5] Although the Debtors believe that the Utility Service List includes all of their Utility Providers, the Debtors reserve the right to supplement the list if they inadvertently omitted any Utility Provider. Additionally, the listing of an entity on the Utility Service List is not an admission that such entity is a utility within the meaning of Bankruptcy Code section 366, and the Debtors reserve the right to contest any such characterization in the future.

[6] Certain of the Debtors' obligations to Utility Providers are incurred in Canadian dollars. For purposes of estimation, any obligations incurred in Canadian dollars have been converted to U.S. dollars based on an exchange rate of approximately 0.7525.

Debtors pay the Utility Providers through third-party agents. Specifically, Engie Insight Services, Inc. ("Engie") and Tangoe Inc. ("Tangoe," and together with Engie, the "Utility Agents") pay the Utility Providers directly for Utility Services on behalf of the Debtors.

12. In general practice, the Utility Providers submit invoices directly to the Utility Agents. The Utility Agents, in turn, bill the Debtors electronically ten (10) days in advance of the date that a payment is due to a particular Utility Provider. The Debtors then transfer funds to the Utility Agents, who in turn pay the Utility Providers on the Debtors' behalf as payments for Utility Services come due. Engie and Tangoe invoice the Debtors for their services on 45-day intervals, separate from the invoices they submit to the Debtors on behalf of the Utility Providers for Utility Services (the "Utility Agent Fees"). As of the Petition Date, the Debtors estimate that they have accrued approximately $80,100 in prepetition Utility Agent Fees. Approximately $40,000 of the Utility Agent Fees will become due and owing within 21 days after the Petition Date. Thus, the Debtors request authority to remit up to $40,000 in Utility Agent Fees upon entry of the Proposed Interim Order, and to continue remitting Utility Agent Fees in the ordinary course on a postpetition basis.

13. The Debtors seek authority to honor any amounts owed on account of prepetition Utility Agent Fees and to pay any Utility Agent Fees that may arise on a postpetition basis in the ordinary course of business in accordance with prepetition practices to ensure that Utility Services are uninterrupted. The Debtors believe that cash held by the Debtors and generated in the ordinary course of business will provide sufficient liquidity to pay the Utility Agents and, by connection, the Utility Providers, for Utility Services in accordance with prepetition practice during the pendency of these chapter 11 cases.

14. Consistent with Bankruptcy Code section 366(c)(1)(A), which defines the phrase "assurance of payment" to include, among other things, a cash deposit, the Debtors propose to deposit approximately $1,100,000.00 into a segregated account (the "Adequate Assurance Deposit"). The Adequate Assurance Deposit equals approximately two weeks of Utility Services, calculated as a historical average over the twelve months ended December 2018, net of any prepetition deposits, letters of credit or surety bonds already provided to the Utility Providers in the ordinary course. The Adequate Assurance Deposit will be held in a segregated account for the benefit of the Utility Providers (the "Adequate Assurance Account") for the duration of these chapter 11 cases and may be applied to any postpetition defaults in payment to the Utility Providers. The Adequate Assurance Deposit will be held by the Debtors; no liens will encumber the Adequate Assurance Deposit or the Adequate Assurance Account.

15. The Debtors, however, shall have the right to reduce the Adequate Assurance Deposit to the extent: (i) the Adequate Assurance Deposit includes an amount on account of a Utility Provider that the Debtors subsequently determine should be removed from the Utility Services List; (ii) a Utility Provider and/or corresponding account has been removed from the Utility Services List because the Debtors have closed the store that was previously serviced by such Utility Provider; (iii) that any Utility Provider has instead been provided with a letter of credit or some other form of security acceptable to the Utility Provider; or (iv) an Additional Adequate Assurance Request (as defined below) is properly served by a Utility Provider and any settlement results in such Utility Provider's removal from the Utility Services List or in the payment of alternate assurance to the Utility Provider.

16. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' cash flow and cash on hand, demonstrates their ability to pay for future Utility Services

6

in accordance with prepetition practice (collectively, the "Proposed Adequate Assurance") and constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of Bankruptcy Code section 366.

## II.     The Adequate Assurance Procedures

17.     In light of the severe consequences to the Debtors that would result from any interruption in Utility Services—but also recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance—the Debtors request that the Court approve, and allow the Debtors to implement, the following procedures (the "Adequate Assurance Procedures") by which a Utility Provider not satisfied with the Proposed Adequate Assurance may request additional adequate assurance:

a.  The Debtors will serve copies of the Motion and the Proposed Interim Order and Proposed Final Order granting the relief requested herein to each Utility Provider within two (2) business days after entry of the order by the Court.

b.  Subject to paragraphs (e)–(h) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $1,100,000.00, in the Adequate Assurance Account within five (5) business days after entry of a final order granting this Motion; *provided* that to the extent any Utility Provider receives any value from the Debtors as adequate assurance of payment, the Debtors may reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account by such amount.

c.  If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to: (a) the Debtors, 3231 SE 6th Avenue, Topeka, KS 66607; (b) proposed counsel to the Debtors (i) Akin Gump Strauss Hauer & Feld LLP (Attn: Meredith A. Lahaie, Kevin Zuzolo and Julie Thompson), (ii) Armstrong Teasdale LLP (Attn: Richard W. Engel, Jr., Erin M. Edelman and John G. Willard) and (iii) Cassels Brock & Blackwell LLP (Attn: Ryan Jacobs, Jane Dietrich, Natalie Levine and Monique Sassi); (c) the Office of the United States Trustee for the Eastern District of Missouri; (d) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (e) counsel to the Prepetition ABL Administrative Agent (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and

7

(ii) Thompson Coburn LLP (Attn: Mark Bossi); (f) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (g) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide) (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard) (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (h) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (i) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (j) counsel to any statutory committee appointed in the chapter 11 cases; (k) the Office of the United States Trustee for the Eastern District of Missouri; (l) the United States Attorney's Office for the Eastern District of Missouri; (m) the Internal Revenue Service; (n) the United States Securities and Exchange Commission; (o) the state attorneys general for all states in which the Debtors conduct business; and (p) any party that has requested notice pursuant to Bankruptcy Rule 20020 (collectively, the "Utility Notice Parties"). The Debtors shall honor such request within five (5) business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court; *provided* that in no event shall a Utility Provider be permitted to receive aggregate disbursements in excess of the total amount set forth for such Utility Provider under the column labeled "Adequate Assurance Deposit" on the Utility Service List attached hereto as **Exhibit A**.

d. The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the earlier of (i) the reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Provider; and (ii) the effective date of any chapter 11 plan approved in these chapter 11 cases.

e. Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Utility Notice Parties.

f. Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which the Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtors; (iv) provide evidence that the Debtors have a direct obligation to the Utility Provider; and (v) explain why the Utility Provider believes the Adequate Assurance Deposit is insufficient adequate assurance of payment.

8

g. An Additional Assurance Request may be made at any time. If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be: (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with Bankruptcy Code section 366; and (ii) forbidden from discontinuing, altering, or refusing Utility Services to or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h. Upon the Debtors' receipt of any Additional Assurance Request, the Debtors shall have 30 days from the receipt of such Additional Assurance Request (the "Resolution Period") to negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request; *provided* that the Debtors and Utility Provider may extend the Resolution Period by mutual agreement.

i. The Debtors may, and without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider.

j. If the Debtors determine, in their sole discretion, that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, may request a hearing (a "Determination Hearing") before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider pursuant to Bankruptcy Code section 366(c)(3) .

k. Pending resolution of any such Determination Hearing, the relevant Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing or discontinuing Utility Services to the Debtors on account of: (i) unpaid charges for prepetition services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

l. Upon the closure of one of the Debtors' retail locations and the discontinuance of the Utility Services associated therewith, or the termination of Utility Services independent thereof, the Debtors may, in their discretion and without further notice or order of the Court, reduce the Adequate Assurance Deposit by an amount not exceeding, for each of the Utility Services being discontinued, the lesser of (i) the estimated two-week utility expense for such Utility Services and (ii) the amount of the Adequate Assurance Deposit then attributable to the applicable Utility Provider.

9

18.     Absent compliance with the Adequate Assurance Procedures, the Debtors request that the Utility Providers, including subsequently added Utility Providers, be forbidden from altering, refusing or discontinuing service or requiring additional adequate assurance of payment other than the Proposed Adequate Assurance, pending entry of a final order approving the relief requested herein.

### III.    Modifications to the Utility Service List

19.     The Debtors have made an extensive and good-faith effort to identify all Utility Providers and include them on the Utility Service List.  Nonetheless, to the extent the Debtors subsequently identify additional Utility Providers or discontinue any Utility Services, the Debtors seek authority, in their sole discretion, to amend the Utility Service List to add or remove any Utility Provider.  The Debtors further request that the relief requested in this Motion, including the proposed Adequate Assurance Procedures, and any order granting this Motion shall apply to any subsequently identified Utility Provider, regardless of when such Utility Provider was added to the Utility Service List.  The Debtors will serve a copy of this Motion and any order approving the requested relief on any Utility Provider subsequently added to the Utility Service List; and any subsequent added Utility Provider shall have 20 days from the date of service of this Motion and the order to make a request for adequate assurance of payment. Further, the Debtors shall have the period specified in the proposed Adequate Assurance Procedures to seek to resolve any subsequently added Utility Provider's request for adequate assurance of payment by mutual agreement with the Utility Provider without further order of the Court or the need to schedule a hearing with the Court to determine the adequacy of assurance payment in accordance with the proposed Adequate Assurance Procedures.

20.     The Debtors request that all Utility Providers, including subsequently added Utility Providers to the Utility Service List and those Utility Providers directly paid by the Utility

10

Agents, be prohibited from altering, refusing or discontinuing any Utility Services to the Debtors absent further order of the Court.

## RELIEF REQUESTED

21.     By this Motion, and pursuant to Bankruptcy Code sections 105(a) and 366 and Bankruptcy Rules 6003 and 6004(h), the Debtors seek entry of the Proposed Interim Order and the Proposed Final Order: (i) prohibiting utility providers from altering, refusing, or discontinuing services; (ii) determining adequate assurance of payment for future utility services; (iii) establishing the Adequate Assurance Procedures; and (iv) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the date hereof to consider approval of this Motion on a final basis.

## BASIS FOR RELIEF

22.     Bankruptcy Code section 366 protects a debtor against the immediate termination or alteration of utility services after the Petition Date.  *See* 11 U.S.C. § 366.  Further, Bankruptcy Code section 366(c) requires a debtor to provide "adequate assurance" of payment for postpetition utility services in a form "satisfactory" to a utility provider within 30 days of the petition, or the utility company may alter, refuse, or discontinue service.  11 U.S.C. § 366(c)(2).  Bankruptcy Code section 366(c)(1) provides a non-exhaustive list of examples of what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1).  Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtors' ability to pay.  *See, e.g., Long Island Lighting Co. v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.),* No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) ("Courts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full.") (citation omitted); *In re Caldor, Inc.-NY,* 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate

11

assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.-NY,* 117 F.3d 646 (2d Cir. 1997).

23. When considering whether a given assurance of payment is "adequate," a court should examine the totality of the circumstances to make an informed decision as to whether a utility provider will be subject to an unreasonable risk of nonpayment. *See, e.g., Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.),* 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *Va. Elec. & Power Co. v. Cunha* (*In re Cunha*), 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.,* 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *See Va. Elec. & Power Co.,* 117 F.3d at 650 (internal quotations omitted) (emphasis is original) (citing *In re Penn Jersey Corp.,* 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987), *abrogated on other grounds, In re Lease-A-Fleet*, 131 B.R. 945, 949-50 (Bankr. E.D. Pa. 1991)).

24. Here, the Proposed Adequate Assurance adequately assures the Utility Providers against any risk of nonpayment for future Utility Services. The Adequate Assurance Deposit, the Debtors' ongoing ability with its cash on hand to meet obligations as they come due in the ordinary course and the direct payments being made by the Utility Agents on behalf of the Debtors to various Utility Providers each and together provide assurance of the Debtors' payment of their future utility obligations. Moreover, termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.,* 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility

12

service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

25.  Courts are permitted to approve reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under Bankruptcy Code section 366.  *See, e.g., In re Circuit City Stores, Inc.,* No. 08-35653 (KRH), 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the Utility Order.").  Absent such procedures, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id*.  Here, notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under Bankruptcy Code sections 366(b) and (c)(2) are wholly preserved under the Adequate Assurance Procedures.  *Cf. id*. at *5-6.  The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance.  *Cf. id*. at *6.  The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services.  *Cf. id*. at *5.

26.  Because the Adequate Assurance Procedures are reasonable and in accord with Bankruptcy Code section 366, the Court should grant the relief requested herein.  Similar procedures have been approved by courts in this district and by courts in other jurisdictions.  *See, e.g., In re THI Selling Corp. (f/k/a Total Hockey, Inc.),* No. 16-44815 (Bankr. E.D. Mo. July 8, 2016) [Docket No. 57] (approving payment of equal to two weeks of utility service into segregated interest bearing account as adequate assurance to utility providers); *In re Peabody*

*Energy Corp.,* No. 16-42529 (Bankr. E.D. Mo. Apr. 15, 2016) [Docket No. 122] (same); *In re Noranda Aluminum, Inc.,* No. 16-10083 (Bankr. E.D. Mo. Mar. 10, 2016) [Docket No. 391]; *In re Arch Coal, Inc.,* No. 16-40120 (Bankr. E.D. Mo. Jan. 14, 2016) [Docket No. 91] (same); *In re Bakers Footwear Grp. Inc.,* No. 12-49658 (Bankr. E.D. Mo. Oct. 18, 2012) [Docket No. 109]; *In re ContinentalAFA Dispensing Co.,* No. 08-45921 (Bankr. E.D. Mo. Aug 29, 2008) [Docket No. 82]; *see also In re Breitburn Energy Partners LP,* No. 16-11390 (SMB) (Bankr. S.D.N.Y. June 16, 2016) [Docket No. 145] (same); and *In re ARO Liquidation, Inc. (f/k/a Aéropostale, Inc.),* No. 16-11275 (SHL) (Bankr. S.D.N.Y. May 24, 2016) [Docket No. 191] (same).

27.  Further, the Court possesses the power, under Bankruptcy Code section 105(a), to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions in the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under Bankruptcy Code sections 366 and 105(a) and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

28.  Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. For the reasons discussed above, authorizing the Debtors to deposit the Adequate Assurance Deposit into the Adequate Assurance Account is vital to the Debtors' operations and the failure to make said Adequate Assurance Deposit can potentially severely disrupt the Debtors' operations at a critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and

14

irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### RESERVATION OF RIGHTS

29. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' or any other parties-in-interests' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code section 365. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' or any other parties-in-interests' rights to subsequently dispute such claim.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

30. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfied Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

31. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (e) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii)

15

Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard), (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (f) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (g) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (h) counsel to any statutory committee appointed in the chapter 11 cases; (i) the United States Attorney's Office for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for all states in which the Debtors conduct business; (m) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (n) the parties on the Utility Service List (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Interim Order granting the relief requested in the Motion and such other and further relief as may be just and proper, and (b) schedule a final hearing on the Motion as soon as is otherwise practicable thereafter to consider entry of the Proposed Final Order.

[*Remainder of page intentionally left blank.*]

Dated:  February 19, 2019
           St. Louis, Missouri

/s/ *Richard W. Engel, Jr.*
Richard W. Engel, Jr. MO 34641
Erin M. Edelman MO 67374
John G. Willard MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
rengel@armstrongteasdale.com
eedelman@armstrongteasdale.com
jwillard@armstrongteasdale.com

-and-

Ira Dizengoff (*pro hac vice* admission pending)
Meredith A. Lahaie (*pro hac vice* admission pending)
Kevin Zuzolo (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

- and -

Julie Thompson (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Proposed Counsel to the Debtors and Debtors in Possession*

17

**<u>Exhibit A</u>**

**Utility Service List**