**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Case No. 19-40883-659 |
| | ) Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) |
| | ) (Joint Administration Requested) |
| Debtors.[1] | ) |
| | ) Hearing Date: February 19, 2019 |
| | ) Hearing Time: 1:30 p.m. (Central Time) |
| | ) Hearing Location: Courtroom 7 North |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR
PREPETITION INSURANCE PROGRAM AND SATISFY PREPETITION
OBLIGATIONS RELATED THERETO AND (B) RENEW, SUPPLEMENT, OR
PURCHASE INSURANCE POLICIES, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (the "Motion") for entry of the proposed interim and final orders (respectively, the

"Proposed Interim Order" and "Proposed Final Order")[2] (i) authorizing the Debtors to (a)

continue their prepetition insurance program and satisfy prepetition obligations related thereto

and (b) renew, supplement or purchase insurance policies and (ii) granting related relief.  In

support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179].  With respect to certain taxing authorities, the Debtors' address is 2001 Bryan Street, Suite 800, Dallas, Texas 75201.  However, the location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource Inc., 3231 S.E. 6th Avenue, Topeka, Kansas 66607.

[2] A copy of the Proposed Interim Order and the Proposed Final Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://cases.primeclerk.com/pss.

<u>**JURISDICTION AND VENUE**</u>

1.      The United States Bankruptcy Court for the Eastern District of Missouri (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this district pursuant to 28 U.S.C. §1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 2015-3(B) of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "<u>Local Bankruptcy Rules</u>").

<u>**BACKGROUND**</u>

4.      The Debtors and their non-Debtor affiliates (together, the "<u>Company</u>") are the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices.  The Company operates approximately 3,400 stores in more than 40 countries.  The Debtors are headquartered in Topeka, Kansas with extensive operations that span across the United States, Canada, Latin America, Asia, the Middle East, and Europe.

5.      On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have requested that their cases be consolidated for procedural purposes and administered jointly.  No request for the appointment of a trustee or

2

examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.      The Debtors commenced these chapter 11 cases approximately 18 months after completing a restructuring and emerging from chapter 11 protection with a reduced debt burden.[3] The Debtors, however, have been unable to sustain profitable operations in the current retail environment as a result of various factors more fully described in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "First Day Declaration").[4]   Accordingly, the Debtors have determined that the best way to maximize value for all of their stakeholders is to liquidate all North America brick and mortar locations through the immediate commencement of going out of business sales.  The Debtors believe, in the exercise of their business judgment, that such measures are in the best interests of the Debtors' estates.

7.      A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

## THE DEBTORS' INSURANCE PROGRAM

8.      In the ordinary course of business, the Debtors maintain approximately 110 domestic and foreign insurance policies (collectively, the "Insurance Policies")[5] that are administered by various third-party insurance carriers (collectively, the "Insurance Carriers").

---

[3] On April 4, 2017, the Debtors' predecessors-in-interest commenced chapter 11 cases (the "Prior Cases") before the United States Bankruptcy Court for the Eastern District of Missouri, which were jointly administered under the caption *In re Payless Holdings LLC*, No. 17-42267.  A plan of reorganization was confirmed in the Prior Cases on July 26, 2017, and such plan went effective on August 10, 2017.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[5] Approximately 60 Insurance Policies are either global or cover North American territory.  Such policies are included in the schedule attached hereto as **Exhibit A**.

The Insurance Policies provide the Debtors with coverage for, among other things, the Debtors' property, general liability, automobile liability, marine cargo, travel accident, directors' and officers' liability, employment practices liability and fiduciary liability.  In addition, the Insurance Policies include several layers of excess liability coverage and an umbrella policy.  A schedule of the Insurance Policies is attached hereto as **Exhibit A**,[6] which is incorporated herein by reference.

### A.    Premium Payments

9.    In fiscal year 2018 ("Fiscal Year 2018"), the Debtors paid approximately $3.2 million in the aggregate in premiums for the Insurance Policies, plus applicable taxes and surcharges, deductibles, broker and consulting fees and commissions (the "Premiums").  The Insurance Policies are generally one year in length and renew at various times throughout the year.  For most of the Insurance Policies, the Debtors prepay the entire Premium on or around the start date of each policy period.  The Premium payments for certain of the Insurance Policies are made in several installments during the policy period, as set forth in each insurance contract, respectively.

10.    As of the Petition Date, the Debtors estimate that they owe approximately $400,000 in Premiums on account of the Insurance Policies, all of which will become due within 21 days after the Petition Date.  The Debtors do not believe that they were in default of any

---

[6] The descriptions of the Insurance Policies set forth in **Exhibit A** constitute a summary only. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions contained in this Motion.  The Debtors request authority to honor obligations and renew all Insurance Policies, as applicable, regardless of whether the Debtors inadvertently fail to include a particular insurance policy on **Exhibit A**.  Moreover, and in addition to the Insurance Policies listed on **Exhibit A**, the Debtors maintain numerous insurance policies with respect to, among other things, workers' compensation, employee health, dental, and disability.  These programs are described, and relief is requested with respect to such programs, in the Debtors' *Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.

Premiums obligations due under the Insurance Policies as of the Petition Date. As such, the Debtors seek authority to remit up to $400,000 in Premium obligations on account of the Insurance Policies upon entry of the Proposed Interim Order and purchase additional insurance required in Canada as may be permitted by the Canadian court, and, pursuant to the Proposed Final Order, the Debtors seek authority to continue paying Premium obligations in the ordinary course of business on a postpetition basis to ensure uninterrupted coverage of their Insurance Policies.[7]

11.     Certain of the Insurance Policies are subject to regular audits (the "Insurance Policy Audits"), which may result in adjustments of the Premiums owed on account thereof. Insurance Policy Audits for prepetition Premium payments will not conclude until after the Petition Date. As a result, the aggregate amount of the Debtors' obligations arising from the Insurance Policy Audits is not known at this time. Accordingly, the Debtors seek authority to honor any amounts owed on account of any Insurance Policy Audits in the ordinary course of business.

**B.      Deductible Fees**

12.     Some of the Insurance Policies require the Debtors to pay a per incident deductible (a "Deductible"). For instance, the Debtors' general liability and auto liability policies carry a $500,000 deductible, per claim. Other Insurance Policies with Deductibles have per claim deductibles ranging from $250,000 to $1,000,000. Depending on the type of claim and the applicable Insurance Policy, the Debtors must ultimately pay up to the applicable deductible

---

[7] As described in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions and (II) Granting Related Relief* (the "Cash Management Motion") from time to time the Debtors may be obligated to pay Premiums on account of the Insurance Policies on behalf of foreign non-Debtor subsidiaries.

threshold for each successful or settled claim against these particular Insurance Policies. Any claim amounts due in excess of the deductible threshold for any given claim are the Insurance Carrier's responsibility. The Debtors' Insurance Policies do not have any annual deductible thresholds.

13.     Generally, if a claim is made against one of the Debtors' Insurance Policies, the Insurance Administrator (as defined below) or an Insurance Carrier will administer the claim and make any payments in connection therewith. On a weekly basis, the Debtors reimburse,[8] via a deductible payment to a bank account managed by the Debtors' for this purpose, the Insurance Administrator or the Insurance Carrier for applicable payments made on account of insurance claims (the "Deductible Fees").[9]

14.     As of the Petition Date, the Debtors estimate that approximately $360,000 in Deductible Fees on account of prepetition claims under the Insurance Policies will become due and owing within 21 days of the Petition Date. Additionally, going forward, the Debtors will need to continue paying Deductible Fees on a weekly basis (should they arise) to preserve the coverage provided under certain Insurance Policies. Over the last year, the Deductible Fees averaged approximately $120,000 per week, but such amount varies from week to week and the weekly (or aggregate) liability on account of Deductible Fees during the pendency of these chapter 11 cases (or during the first three weeks of these cases) cannot be ascertained with any degree of certainty as of the Petition Date. Accordingly, the Debtors request authority pursuant to the Proposed Interim Order to remit up to $360,000 in Deductible Fees on account of

---

[8] If a single claim amount exceeds $100,000, the Debtors prefund that claim when paying Deductible Fees (as defined below).

[9] The Debtors utilize the services of Gallagher Basset to serve as a third-party administrator for automobile and workers' compensation claims (the "Insurance Administrator"), alleviating the substantial burden on the Debtors that would result from needing to administer the claims process for these claims, as partially more described in the Wages Motion.

prepetition claims that become due and owing within the 21 days of the Petition Date, and to continue paying Deductible Fees in the ordinary course of business on a postpetition basis to ensure uninterrupted coverage of the Insurance Policies.

### C.    Insurance Broker and Administrator Fees

15.    The Debtors obtain their Insurance Policies through their insurance brokers, Lockton Companies, LLC ("Lockton"), Marsh USA ("Marsh"), JLT Specialty ("JLT") and BFL Canada  Risk & Insurance ("BFL") and their respective affiliates (collectively, the "Insurance Brokers").  The Insurance Brokers assist the Debtors in obtaining comprehensive insurance coverage for their operations in a cost-effective manner, negotiating policy terms, provisions and premiums, assisting with Debtors with claims, and providing ongoing support throughout the applicable policy periods.

16.    The Debtors pay the Insurance Brokers on account of their services in various manners (all such payments collectively, the "Brokerage Fees").  The Brokerage Fees on account of services provided by Marsh, JLT and BFL are included in the Premiums paid on account of the Insurance Policies.  By contrast, Lockton charges the Debtors a flat annual fee of $160,550 for its services, which fee is paid once a year.[10]  As of the Petition Date, the Debtors do not believe that they owe any amounts to the Insurance Brokers on account of Brokerage Fees or any other prepetition obligations.

17.    The Debtors pay the Insurance Administrator approximately $20,000 per month on account of its services (the "Insurance Administrator Fees").  As of the Petition Date, the

---

[10] The Brokerage Fees for Lockton also include fees for its services related to procurement of surety bonds, as described more fully in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Continue and Renew the Surety Bond Program on an Uninterrupted Basis, and (II) Granting Related Relief* (the "Surety Bond Motion"), filed contemporaneously herewith.

Debtors do not believe that they owe any amounts to the Insurance Administrator on account of Insurance Administrator Fees.

18.     Notwithstanding the foregoing, out of an abundance of caution, the Debtors request authority to pay any prepetition amounts outstanding on account of Brokerage Fees and Insurance Administrator Fees and to continue paying Brokerage Fees and Insurance Administrator Fees in the ordinary course of business on a postpetition basis in order to ensure uninterrupted coverage and administration of the Insurance Policies.

## RELIEF REQUESTED

19.     By this Motion, and pursuant to of Bankruptcy Code sections 105(a), 363(b), 503, 1107(a), 1108 and 1112(b) and Rule 6004 and Local Rule 2015-3(B), the Debtors seek entry of the Proposed Interim Order and Proposed Final Order: (i) authorizing the Debtors to (a) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto in the ordinary course of business and (b) renew, supplement or purchase insurance coverage in the ordinary course of business on a postpetition basis; and (ii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## BASIS FOR RELIEF

**I.      The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors to Maintain Insurance Coverage and Satisfy Their Insurance Obligations**

20.     As discussed above, the Debtors' existing Insurance Policies provide a comprehensive range of protection for the Debtors' businesses, properties and assets.  As such, it is essential that the Debtors' insurance coverage continues in full force and effect during the course of these chapter 11 cases.  Under Bankruptcy Code Section 1112(b)(4)(C), "failure [of a

8

debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, the *Chapter 11 Guidelines for Debtors-in-Possession* (the "U.S. Trustee Guidelines") require that a debtor "shall maintain" certain types of insurance coverage following the Petition Date, and "make all premium payments thereon when due."  *See U.S. Trustee Guidelines*, § 6.  To ensure that the Debtors comply with Bankruptcy Code section 1112(b)(4)(C), applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority to: (i) pay the prepetition amounts currently due and owing under the Insurance Policies in the ordinary course of business, including those prepetition amounts due in connection with Premiums, Deductible Fees and Brokerage Fees; (ii) continue to honor obligations arising under the Insurance Policies and, if necessary, (iii) renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of their businesses.

## II.    Renewing, Supplementing, Entering into New Policies, and Paying Obligations Under the Insurance Policies in the Ordinary Course of Business are Warranted

21.    Bankruptcy Code section 363(c)(1) expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing."  Therefore, the Debtors believe they are permitted to pay all postpetition amounts due pursuant to the Insurance Policies and to renew or obtain new insurance policies as such actions are in the ordinary course of the Debtors' businesses and are necessary throughout these chapter 11 cases.  Out of an abundance of caution, however, the Debtors seek entry of an order granting the relief requested herein to avoid any disruptions to the administration of these chapter 11 cases.

22.     The relief requested herein may be granted by the Court pursuant to Bankruptcy Code sections 363(b) and 105(a).  Bankruptcy Code section 363(b) provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the debtor "show that a sound business purpose" justifies the proposed use of property.  *See In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) (authorizing debtor to pay prepetition claims of vendors because the vendors are "critical to the Debtor's reorganization"); *In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (authorizing sale of assets because there was a "good business reason to grant such an application"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071–72 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (under section 363(b), debtor must "show that a sound business purpose" justifies the proposed use of property).  Moreover, Bankruptcy Code section 503(b)(1)(A) provides that: "After notice and a hearing, there shall be allowed, administrative expenses[,] including . . . the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  The Court, therefore, can authorize the Debtors to use estate funds to pay any obligations under the Insurance Policies arising during or relating to the period after the Petition Date.

23.     Further, the Court may authorize payment of prepetition claims in appropriate circumstances under Bankruptcy Code section 105(a).  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under Bankruptcy Code section 105(a), courts may permit preplan

payments of prepetition obligations when essential to the continued operation of a debtor's businesses.    The bankruptcy court's power under section 105(a) to authorize payment of prepetition obligations is popularly referred to as the "necessity of payment" rule (also referred to as the "doctrine of necessity").

24.    Courts in this and other districts have long recognized the "doctrine of necessity" or the "necessity of payment" rule, as the rehabilitation of a debtor in reorganization cases is "the paramount policy and goal of Chapter 11." *In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) ("Pursuant to 11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such payments are necessary to the continued operation of the Debtor."); *In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging the existence of the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre- petition claim"); *In re Just For Feet*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.") and *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation" is appropriate).

11

25.     Relief similar to the relief requested herein is routinely granted in this district. *See, e.g., In re Armstrong Energy, Inc.,* No. 17-47541-659 (Bankr. E.D. Mo. Dec. 1, 2017) [Docket No. 205]; *In re Payless Holdings, LLC,* No. 17-42267-659 (Bankr. E.D. Mo. May 9, 2017) [Docket No. 634]; *In re Total Hockey, Inc.*, No. 16-44815-705 (Bankr. E.D. Mo. July 26, 2016) [Docket No. 184]; *In re Peabody Energy Corp.*, No. 16-42529-399 (Bankr. E.D. Mo. May 17, 2016) [Docket No. 519]; *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (Bankr. E.D. Mo. Feb. 11, 2016) [Docket No. 107]; *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo. Jan. 14, 2016) [Docket No. 85]; and *In re Bakers Footwear Grp. Inc.*, No. 12-49658-705 (Bankr. E.D. Mo Oct. 9, 2012) [Docket No. 76].

26.     The Debtors submit that there is sufficient business justification to grant the relief requested herein because failure to pay Premiums and related insurance expenses when due may harm the Debtors' estates in several ways.  Specifically, continuation of the Insurance Policies is essential to the preservation of the value of the Debtors' assets and operations during these chapter 11 cases.  Moreover, in many instances, insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' activities.

27.     The Debtors believe it is essential to their estates that they continue to maintain and make all payments required under their Insurance Policies, and have the authority to supplement, amend, extend, renew or replace their Insurance Policies pursuant to Bankruptcy Code sections 105(a), 363(b) and 503.  Indeed, the Debtors' Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties, assets and the estates, as well as their ability to successfully prosecute these chapter 11 cases.  Accordingly, in the event any of the Insurance Policies lapse or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement or purchase insurance coverage on a postpetition basis in

the ordinary course of business.  The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud or other unforeseen events.

### III.     Processing of Checks and Electronic Fund Transfers Should Be Authorized

28.     The Debtors have sufficient funds to pay the amounts described in this motion.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.   Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

29.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.   For the reasons discussed above, authorizing the Debtors to continue to honor obligations arising under the Insurance Policies and, if necessary, to renew, supplement or purchase insurance coverage on a postpetition basis in the ordinary course of business is vital to the Debtors' operations and the failure to permit such relief can potentially severely disrupt the Debtors' operations at a critical juncture.   Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

13

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

30.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

31.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' or any other parties-in-interests' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code section 365.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' or any other parties-in-interests' rights to subsequently dispute such claim.

## NOTICE

32.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (e) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard), (iii) Stroock & Stroock & Lavan LLP

14

(Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (f) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (g) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (h) counsel to any statutory committee appointed in the chapter 11 cases; (i) the United States Attorney's Office for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for all states in which the Debtors conduct business; (m) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (n) the Insurance Carriers (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

<strong>C<small>ONCLUSION</small></strong>

33.    WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Interim Order granting the relief requested in the Motion and such other and further relief as may be just and proper, and (b) schedule a final hearing on the Motion as soon as is otherwise practicable thereafter to consider entry of the Proposed Final Order.

[<em>Remainder of page intentionally left blank.</em>]

Dated:  February 19, 2019
St. Louis, Missouri

/s/ *Richard W. Engel, Jr.*

Richard W. Engel, Jr. MO 34641
Erin M. Edelman MO 67374
John G. Willard MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
rengel@armstrongteasdale.com
eedelman@armstrongteasdale.com
jwillard@armstrongteasdale.com

-and-

Ira Dizengoff (*pro hac vice* admission pending)
Meredith A. Lahaie (*pro hac vice* admission pending)
Kevin Zuzolo (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

- and -

Julie Thompson (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Proposed Counsel to the Debtors and Debtors in Possession*

16

## <u>Exhibit A</u>

**Insurance Policies**

| Type of Policy | Insurance Carrier(s) | Policy Number | Effective Date | Expiration Date | Geographic/Foreign Limitations | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| Workers Comp | Zurich American Ins. Co. | WC5918470 13 | 5/1/2018 | 5/1/2019 | US | $369,791 |
| Workers Comp | Zurich American Ins. Co. | WC 5918471 13 | 5/1/2018 | 5/1/2019 | US | $1,142 |
| Workers Comp | Pacific Indemnity Ins. Co. | WC001600007 | 5/27/2018 | 5/27/2019 | Guam/Saipan | $2,818 |
| General Liability | Zurich American Ins. Co. | GLO5918469-12 (US) | 5/1/2018 | 5/1/2019 | US | $154,227 |
| General Liability | Zurich Canada | 8834208 (CAN) | 5/1/2018 | 5/1/2019 | Canada | $8,486 |
| Auto | Zurich American Ins. Co. | BAP5918468-12 (U.S) | 5/1/2018 | 5/1/2019 | US | $28,525 |
| Auto | Zurich Canada | AF 9800025 (CAN) | 5/1/2018 | 5/1/2019 | Canada | $14,538 |
| Property | Liberty Mutual | YAC-L9L-448456-028 | 2/1/2019 | 2/1/2020 | Global | $644,106 |
| Local Property | Royal & Sun Alliance | COM047201595 | 2/1/2019 | 2/1/2020 | Canada | $32,880 |
| Cargo | AGCS Marine Insurance Company (Allianz) | OC96062300 | 2/1/2019 | 2/1/2020 | Global | $35,286 |
| Travel Specialty | International SOS | n/a Service Agreement | 2/1/2019 | 2/1/2020 | Global | $43,002 |
| Business Travel Accident | ACE American Insurance Company | ADDN01172013R | 2/1/2019 | 2/1/2020 | Global | $36,960 |
| Storage Tank Liability | ACE American Insurance Company | G24730438 005 | 10/10/2018 | 10/10/2019 | US | $1,027 |

| Umbrella Liability | American Guarantee and Liability Insurance Company (Zurich) | AUC 0140954-01 | 5/1/2018 | 5/1/2019 | Global | $147,662 |
|---|---|---|---|---|---|---|
| Excess Liability | Navigators Insurance Company | CH18FXR862843IV | 5/1/2018 | 5/1/2019 | Global | $29,155 |
| Excess Liability | The Ohio Casualty Insurance Company (Liberty) | ECO (19) 5590 2385 | 5/1/2018 | 5/1/2019 | Global | $25,000 |
| Excess Liability | Allianz Global Risks US Insurance Company | USL 00056318 | 5/1/2018 | 5/1/2019 | Global | $25,000 |
| Excess Liability | Great American Insurance Company | TUE 6680256 12 | 5/1/2018 | 5/1/2019 | Global | $25,000 |
| Excess Liability | C.N.A | 6024082862 | 5/1/2018 | 5/1/2019 | Global | $25,000 |
| Excess Liability | XL Insurance | US00008657LI18A | 5/1/2018 | 5/1/2019 | Global | $25,000 |
| Foreign Casualty | Generali | GFP900023-02 | 5/1/2018 | 5/1/2019 | Global | $43,475 |
| Cyber Primary | Beazley Group | W1C0D9180301 | 7/15/2018 | 8/10/2019 | Global | $176,175 |
| Cyber First Excess | XL Catlin | MTE903377102 | 7/15/2018 | 8/10/2019 | Global | $88,358 |
| Cyber Second Excess | Argo Pro | XS407451 | 7/15/2018 | 8/10/2019 | Global | $31,066 |
| Monopolistic WC Alberta | Monopolistic - Local Agency | 3944192 | 1/1/2019 | 12/31/2019 | Canada | $24,000 |
| Monopolistic WC British Columbia | Monopolistic - Local Agency | 6119267 | 1/1/2019 | 12/31/2019 | Canada | $56,000 |

| Monopolistic WC Nova Scotia | Monopolistic - Local Agency | 185230 | 1/1/2019 | 12/31/2019 | Canada | $15,200 |
|---|---|---|---|---|---|---|
| Monopolistic WC Ontario | Monopolistic - Local Agency | 2111989 | 1/1/2019 | 12/31/2019 | Canada | $215,000 |
| Monopolistic WC Quebec | Monopolistic - Local Agency | 3363413959 | 1/1/2019 | 12/31/2019 | Canada | $10,000 |
| Monopolistic WC Saskatchewan | Monopolistic - Local Agency | A113399 | 1/1/2019 | 12/31/2019 | Canada | $5,100 |
| Monopolistic WC Manitoba | Monopolistic - Local Agency | 1299528 | 1/1/2019 | 12/31/2019 | Canada | $3,000 |
| Monopolistic WC New Brunswick | Monopolistic - Local Agency | 600272 | 1/1/2019 | 12/31/2019 | Canada | $7,100 |
| Monopolistic WC Newfoundland | Monopolistic - Local Agency | 2039124 | 1/1/2019 | 12/31/2019 | Canada | $5,800 |
| Monopolistic WC Prince Edwards | Monopolistic - Local Agency | 18983 | 1/1/2019 | 12/31/2019 | Canada | $2,400 |
| Monopolistic WC Puerto Rico | Monopolistic - Local Agency | 9212001024 | 1/1/2019 | 12/31/2019 | Puerto Rico | $80,000 |
| Monopolistic WC Ohio DC/Stores | Monopolistic - Local Agency | 80008491/80008492 | 7/13/2018 | 7/13/2019 | US | $450,000 |
| Monopolistic WC Washington | Monopolistic - Local Agency | 913, 129-01 | 1/1/2019 | 12/31/2019 | US | $140,000 |
| Monopolistic WC North Dakota | Monopolistic - Local Agency | 652016 | 1/1/2019 | 12/31/2019 | US | $6,000 |
| Monopolistic WC Wyoming | Monopolistic - Local Agency | 5043316 | 1/1/2019 | 12/31/2019 | US | $4,500 |
| Monopolistic WC Virgin Islands | Monopolistic - Local Agency | 9927 | 1/1/2019 | 12/31/2019 | Virgin Islands | $8,200 |
| D&O Primary | Nationwide | PHF1800357 | 8/10/2018 | 8/10/2019 | Global | $65,511 |
| D&O First Excess | Tokio Marine | 14-MGU-18-A44602 | 8/10/2018 | 8/10/2019 | Global | $42,582 |

3

| D&O Second Excess | Continental Casualty Company | 652024450 | 8/10/2018 | 8/10/2019 | Global | $34,950 |
|---|---|---|---|---|---|---|
| D&O Third Excess | Chubb | DOX G46801507 002 | 8/10/2018 | 8/10/2019 | Global | $30,008 |
| D&O Fourth Excess | Beazley | V241BC180101 | 8/10/2018 | 8/10/2019 | Global | $30,000 |
| D&O Lead Side A/DIC | Lloyd's of London | B0509FINMW1801322 | 8/10/2018 | 8/10/2019 | Global | $30,000 |
| International D&O (Side-A Only) | Zurich | B0509FINMW1801469 | 8/10/2018 | 8/10/2019 | International | $37,605 |
| Local D&O Canada | | B0509FINMW1801468 | 8/10/2018 | 8/10/2019 | Canada | $10,800 |
| EPL Primary | Nationwide | PHF1800357 | 8/10/2018 | 8/10/2019 | Global | $109,604 |
| EPL Excess | Beazley | V241C1180101 | 8/10/2018 | 8/10/2019 | Global | $49,000 |
| Fiduciary Primary | Nationwide | PHF1800357 | 8/10/2018 | 8/10/2019 | Global | $20,106 |
| Fiduciary Excess | Continental Casualty Company | 596816933 | 8/10/2018 | 8/10/2019 | Global | $5,400 |
| Crime Primary | Beazley | V2417D180101 | 8/10/2018 | 8/10/2019 | Global | $48,849 |
| Crime Excess | RLI | BND0101854 | 8/10/2018 | 8/10/2019 | Global | $27,000 |
| Special Crime | Chubb | 8225-9848 | 8/10/2018 | 8/10/2019 | Global | $36,454 |
| Runoff D&O Primary | JLT Specialty[11] | | 8/10/2018 | 8/10/2015 | Global | $163,778 |
| Runoff D&O First Excess | JLT Specialty | | 8/10/2018 | 8/10/2025 | Global | $106,455 |
| Runoff D&O Second Excess | JLT Specialty | | 8/10/2018 | 8/10/2025 | Global | $87,375 |
| Runoff D&O Third Excess | JLT Specialty | | 8/10/2018 | 8/10/2025 | Global | $150,000 |
| Runoff D&O Fourth Excess | JLT Specialty | | 8/10/2018 | 8/10/2025 | Global | $75,000 |

---

[11] Certain of the Debtors' insurance policies, while fully active, are newly renewed and do not yet have a policy number.

4