**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*,[1] | ) | |
| | ) | (Joint Administration Requested) |
| | ) | |
| Debtors. | ) | |
| | ) | Hearing Date:  February 19, 2019 |
| | ) | Hearing Time:  1:30 p.m. (Central Time) |
| | ) | Hearing Location:  Courtroom 7 North |

**DEBTORS' APPLICATION SEEKING**
**AN ORDER AUTHORIZING THE EMPLOYMENT AND**
**RETENTION OF REEVEMARK, LLC AS CORPORATE COMMUNICATIONS**
**CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), file this application (the "Application") for the entry of an order (the "Proposed Order")[2] authorizing the employment and retention of Reevemark, LLC ("Reevemark") to serve as corporate communications consultants to the Debtors effective *nunc pro tunc* to the Petition Date (as defined below).  In support of this Application, the Debtors submit the Declaration of Hugh Burns, a Partner at Reevemark (the "Burns Declaration"), attached hereto as **Exhibit A**, and respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179].  With respect to certain taxing authorities, the Debtors' address is 2001 Bryan Street, Suite 800, Dallas, Texas 75201.  However, the location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource Inc., 3231 S.E. 6th Avenue, Topeka, Kansas 66607.

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and procedural bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"), Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014A and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Missouri (the "Local Bankruptcy Rules").

### BACKGROUND

4.      The Debtors and their non-debtor affiliates (together, the "Company") are the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices.  The Company operates approximately 3,400 stores in more than 40 countries.  The Debtors are headquartered in Topeka, Kansas, with extensive operations that span across the United States, Canada, Latin America, Asia, the Middle East, and Europe.

5.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors have requested that their cases be consolidated for

---

[2] A copy of the Proposed Order will be provided to the Notice Parties (as defined below) and made available on the

procedural purposes and administered jointly.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.      The Debtors commenced these chapter 11 cases approximately 18 months after completing a restructuring and emerging from chapter 11 protection with a reduced debt burden.[3] The Debtors, however, have been unable to sustain profitable operations in the current retail environment as a result of various factors more fully described in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "First Day Declaration").[4]  Accordingly, the Debtors have determined that the best way to maximize value for all of their stakeholders is to liquidate all North America brick and mortar locations through the immediate commencement of going out of business sales.  The Debtors believe, in the exercise of their business judgment, that such measures are in the best interests of the Debtors' estates.

7.      A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

**RELIEF REQUESTED**

---

Debtors' case information website at https://cases.primeclerk.com/pss.
[3] On April 4, 2017, the Debtors' predecessors-in-interest commenced chapter 11 cases (the "Prior Cases") before the United States Bankruptcy Court for the Eastern District of Missouri, which were jointly administered under the caption *In re Payless Holdings LLC*, No. 17-42267.  A plan of reorganization was confirmed in the Prior Cases on July 26, 2017, and such plan went effective on August 10, 2017.

8.      By this Application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014A and 2016-1, the Debtors seek entry of an order: (i) authorizing the employment and retention of Reevemark, as its corporate communications consultants, pursuant to the terms and conditions contained in the engagement letter dated as of January 17, 2019 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit B**;[5] (ii) approving the terms of Reevemark's employment; and (iii) granting such other and further relief as the Court deems appropriate.

9.      In support of this Application, the Debtors submit the Burns Declaration, attached as **Exhibit A** hereto.

**REEVEMARK'S QUALIFICATIONS**

10.      Under the Engagement Letter, the Debtors retained Reevemark to evaluate and advise the Debtors on a variety of corporate communications and public relations issues deriving from or associated with the Debtors' filing under chapter 11 of the Bankruptcy Code.

11.      Since entry into the Engagement Letter, the Debtors and Reevemark have worked closely with respect to the matters set forth in the Engagement Letter.  In doing so, Reevemark has become uniquely familiar with the Debtors' business affairs and current corporate communications and public relations needs.  Reevemark's services are necessary to the Debtors because Reevemark will be able to assist the Debtors in protecting, retaining, and developing the goodwill and confidence of a number of constituency groups and stakeholders during these chapter 11 cases.  The cooperative participation of parties such as employees, partners,

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[5] Any references to or summaries of the Engagement Letter in this Application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the summaries provided herein.  Additionally, any capitalized terms used in this Application and not otherwise defined herein or in

customers, vendors, creditors, and lenders is essential to the Debtors' ability to maximize the

value of their estates for the benefit of all parties-in-interest.  Accordingly, the Debtors submit

that the retention of Reevemark on the terms and conditions set forth herein is necessary and

appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and

should be granted.

12.     Reevemark has provided advice and assisted the Debtors in connection with

corporate communications and public relations aspects of the restructuring efforts and has been

instrumental in developing and drafting specific communication materials and related strategy

designed to facilitate the smooth transition of the Debtors' operations into chapter 11, including

communications to key constituencies.

13.     Reevemark was founded in September 2018 by Brandy Bergman, Hugh Burns,

Paul Caminiti, Delia Cannan and Renée Soto (collectively, the "Reevemark Partners").  The

Debtors are familiar with the professional standing and reputation of the Reevemark Partners.

The Reevemark Partners have extensive experience in providing corporate communications and

public relations advice and enjoy an excellent reputation for services they have rendered in large

and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.  A

non-exclusive list of such cases includes: *In re The Great Atlantic & Pacific Tea Company, Inc.*,

No. 15-23007 (RDD) (Bankr. S.D.N.Y. July 20, 2015); *In re Southeastern Grocers, LLC*, No.

18-10700 (MFW) (Bankr. D. Del. March 27, 2018); *In re Lehman Brothers Holdings Inc.*, No.

08-13555 (SCC) (Bankr. S.D.N.Y. September 15, 2008);  *In re New Century Holdings, Inc.*, No.

07-51598 (BLS) (Bankr. D. Del. June 20, 2007); *In re Adelphia Communications Corp.*, No. 02-

41729 (REG) (Bankr. S.D.N.Y. June 10, 2002); *In re Velo Holdings Inc.*, No. 12-11384 (MG)

the First Day Declaration shall have the meanings ascribed to such terms in the Engagement Letter.

(Bankr. S.D.N.Y. April 3, 2012); *In re General Growth Properties, Inc.*, No. 09-11977 (ALG) (Bankr. S.D.N.Y. April 16, 2009); and *In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. October 8, 2005).

14.     Reevemark will assist the Debtors in protecting, retaining, and developing the goodwill and confidence of a number of constituency groups and stakeholders during the chapter 11 cases.  In this regard, it is crucial that communications be tailored appropriately to each particular constituency.  The cooperative participation of parties such as employees, partners, customers, vendors, creditors and lenders is essential to the Debtors' ability to maximize the value of their estates for the benefit of all parties-in-interest.  Accordingly, the Debtors submit that the retention of Reevemark on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and should be granted.

15.     Further, the services of Reevemark are also necessary to enable the Debtors to efficiently and effectively control and address media-related inquiries and matters.  Indeed, inaccurate media reporting may raise a variety of negative issues, which may be significantly detrimental to the Debtors' public image, ultimately affecting or even jeopardizing the successful outcome of these chapter 11 cases.  The Debtors need the assistance of a professional public relations firm to properly address such media-related inquires and matters.  For these reasons, Reevemark's retention is in the best interest of the Debtors, their estates and their creditors, and should be approved.  Further, the Debtors believe that Reevemark is well qualified and able to assist the Debtors in a cost-effective, efficient, and timely manner.

## SCOPE OF SERVICES

16.    Under the terms of the Engagement Letter, Reevemark will provide such corporate communications and public relations consulting and advisory services as Reevemark and the Debtors deem appropriate and feasible to advise the Debtors in the course of the chapter 11 cases.

## TERMS OF RETENTION

17.    The Debtors understand that Reevemark intends to apply to this Court for allowances of compensation and reimbursement of expenses for its services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, orders of this Court and guidelines established by the Office of the United States Trustee for the Eastern District of Missouri.    The customary hourly rates, subject to periodic adjustments, charged by Reevemark professionals anticipated to be assigned to this case are as follows:  Founding Partners, $720/hour, Managing Directors, $620/hour, Senior Vice Presidents, $540/hour, Vice Presidents $440/hour, Senior Associates $360/hour and Associates $240/hour. Reevemark may involve other professionals employed by Reevemark with similar experience and rates to implement communications strategies as may be necessary from time to time.

18.    The rates charged by Reevemark are comparable to what is generally charged by other firms of similar stature to Reevemark for comparable engagements, both in and out of bankruptcy, and represents a discount to Reevemark's standard fee amounts.  Reevemark and the Debtors believe that the foregoing compensation arrangement is reasonable and market-based and consistent with Reevemark's normal and customary billing levels for comparably sized and complex cases, both in and out-of-court, involving the services to be provided in the chapter 11 cases.

19.     In addition, the Debtors have agreed to reimburse Reevemark for all reasonable, documented out-of-pocket expenses actually incurred by Reevemark upon submission of itemized monthly statements.  Reevemark will follow its customary expense reimbursement guidelines and practices in seeking expense reimbursement from the Debtors.

20.     The Debtors paid Reevemark $100,000 as an initial retainer (the "Retainer"), and replenished that amount from time to time prior to the Petition Date.  In total, prior to the Petition Date, the Debtors paid Reevemark $300,000 (the "Retainer Amounts") which Reevemark applied against Reevemark's prepetition fees and costs, such that Reevemark believes it did not have any outstanding and unpaid fees as of the Petition Date.  As of the Petition Date, Reevemark had approximately $0.00 remaining on hand from the total Retainer Amounts.  Reevemark has agreed to waive any prepetition amounts owed that may not have been applied or accounted for prior to the filing date. Reevemark intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Fee Guidelines, the Bankruptcy Rules, and any applicable orders of this Court.  Such applications will include time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. Time is billed by Reevemark in increments of one-tenth of an hour.  Reevemark will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above.

### DISINTERESTEDNESS

21.     Reevemark has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors attached here at

Schedule 1 and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Burns Declaration, Reevemark represents that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

22.     To the best of the Debtors' knowledge, Reevemark is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), as Reevemark represents in the Burns Declaration, among other things, that:

(a)     Reevemark has further informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Reevemark will supplement its disclosure to this Court.

(b)     Reevemark has also agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with the case.

(c)     the Debtors believe that Reevemark is not owed any amounts with respect to its prepetition fees and expenses.

23.     To the extent that there is any inconsistency between this Application, the Retention Order, and the Engagement Letter, the Retention Order shall govern.

## NOTICE

24.     Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (e) counsel to certain Prepetition

Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard) (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (f) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (g) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (h) counsel to any statutory committee appointed in the chapter 11 cases; (i) the United States Attorney's Office for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for all states in which the Debtors conduct business; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request entry of the Proposed Order, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated: February 19, 2019                    */s/ Stephen Marotta*
                                            Stephen Marotta
                                            Chief Restructuring Officer, Payless Holdings LLC

## **Exhibit A**

**Burns Declaration**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) | |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | |

**DECLARATION OF HUGH BURNS IN SUPPORT OF THE APPLICATION OF THE
DEBTORS SEEKING AN ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF REEVEMARK, LLC AS CORPORATE
COMMUNICATIONS AND PUBLIC RELATIONS CONSULTANTS TO
THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

I, Hugh Burns, hereby declare under penalty of perjury:

1.      I am a Managing Member of the public relations firm Reevemark, LLC ("Reevemark"), which has its principal office at 261 Madison Avenue, 6th Floor, New York, New York 10016.  I am authorized to execute this affidavit on behalf of Reevemark.  Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.

2.      This declaration is being submitted in connection with the proposed retention of Reevemark as corporate communications consultant to the above captioned debtors and debtors-in-possession (the "Debtors") to perform services as set forth in the application seeking to retain Reevemark (the "Application").

3.      Reevemark has provided the Debtors with consulting services comparable to those for which Reevemark's retention is sought hereunder since January 17, 2019, during which time Reevemark has acquired considerable knowledge of the Debtors' business operations and

financial affairs and has already developed strategies for communicating to the Debtors' key constituencies about the case.

4.     In providing prepetition services to the Debtors, Reevemark's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' business and operations, and related matters.   Accordingly, I believe that Reevemark has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in this chapter 11 case.

5.     I believe that I and other professionals employed by Reevemark are well qualified to continue to act as the Debtors' corporate communications consultants.   Reevemark specializes in addressing sensitive business situations that require communications strategies targeted to a variety of constituencies, including customers, employees, vendors, shareholders, bondholders, and the media.   Reevemark Partners (as defined below) have substantial experience providing corporate communications services to large corporations in connection with both in- and out-of-court restructurings.

6.     Reevemark was founded in September 2018 by Brandy Bergman, Hugh Burns, Paul Caminiti, Delia Cannan and Renée Soto (collectively, the "Reevemark Partners").   The Debtors are familiar with the professional standing and reputation of the Reevemark Partners. The Reevemark Partners have extensive experience in providing corporate communications and public relations advice and enjoy an excellent reputation for services they have rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.   A non-exclusive list of such cases includes: *In re The Great Atlantic & Pacific Tea Company, Inc.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y. July 20, 2015); *In re Southeastern Grocers, LLC*, No. 18-10700 (MFW) (Bankr. D. Del. March 27, 2018); *In re Lehman Brothers Holdings Inc.*, No.

3

08-13555 (SCC) (Bankr. S.D.N.Y. September 15, 2008); *In re New Century Holdings, Inc.*, No. 07-51598 (BLS) (Bankr. D. Del. June 20, 2007); *In re Adelphia Communications Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. June 10, 2002); *In re Velo Holdings Inc.*, No. 12-11384 (MG) (Bankr. S.D.N.Y. April 3, 2012); *In re General Growth Properties, Inc.*, No. 09-11977 (ALG) (Bankr. S.D.N.Y. April 16, 2009); and *In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. October 8, 2005).

## SERVICES TO BE RENDERED

7.     Pursuant to the terms of the engagement letter between the Debtors and Reevemark, dated January 17, 2019 (the "Engagement Letter"), the Debtors seek to continue to retain Reevemark to render corporate communications consulting and related services to the Debtors as needed throughout the course of the case.

## PROFESSIONAL COMPENSATION

8.     Reevemark's allowance of compensation and reimbursement of expenses will remain subject to review and approval of this Court, and Reevemark will apply to this Court for allowance of compensation and reimbursement for out-of-pocket disbursements incurred during the pendency of the chapter 11 cases.

9.     As set forth in further detail in the Engagement Letter, Reevemark intends to:  (a) charge for the agreed-upon services in accordance with an agreed-upon discount to its standard hourly billing rates, which range from $240 to $720; and (b) seek reimbursement of reasonable and necessary expenses incurred in connection with rendering corporate communications consulting services to the Debtors.

10.    Reevemark's rates are comparable to what is generally charged by other firms of similar stature to Reevemark for comparable engagements, both in and out of bankruptcy, and

represent a discount to Reevemark's standard fee amounts.  Reevemark and the Debtors believe that the foregoing compensation arrangement is both reasonable and market-based and consistent with Reevemark's normal and customary billing levels for comparably sized and complex cases, both in and out-of-court, involving the services to be provided in the chapter 11 cases.

11.     In addition, the Debtors have agreed to reimburse Reevemark for all reasonable, documented out of pocket expenses actually incurred by Reevemark.  Reevemark will follow its customary expense reimbursement guidelines and practices in seeking expense reimbursement from the Debtors.

12.     Reevemark intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable orders of this Court.  Such applications will include time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. Time is billed by Reevemark in increments of one-tenth of an hour.  Reevemark will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above.

13.     The Debtors paid Reevemark $100,000.00 as an initial retainer (the "Retainer"), and replenished that amount from time to time prior to the Petition Date.  In total, prepetition, the Debtor paid Reevemark $300,000 (the "Retainer Amount").  As of the Petition Date, Reevemark believes it did not have any outstanding and unpaid fees and expenses owed to it by the Debtors.    Subject to this Court approval, Reevemark's fees incurred postpetition will be

5

determined in accordance with Reevemark's discounted hourly billing rates, and such amounts will be paid by the Debtors subject to the Bankruptcy Code, Bankruptcy Rules, Local Rules and any applicable order of the Court.

14.     The Debtors propose to pay Reevemark at the rates and on the terms set forth in the Engagement Letter.  The rates set forth in the Engagement Letter are Reevemark's discounted rates for work of this nature and are set at a level designed to compensate Reevemark fairly for the work of its professionals and to cover fixed and routine overhead expenses while also being responsive to the Debtors' current financial condition.

15.     There are no arrangements between Reevemark and any other entity to share compensation received or to be received in connection with the case.

## DISINTERESTEDNESS

16.     Reevemark is aware that the Debtors have numerous creditors, stakeholders, and other parties with whom it maintains business relationships.  Prior to the filing of this Declaration, Reevemark obtained from the Debtors the names of the individuals and entities that may be parties in interest in the chapter 11 cases.  Reevemark maintains a database containing the names of current, former, and potential clients and other principal parties related to such clients.  I caused Reevemark to review and analyze the conflict database to determine whether Reevemark has any connection with the Potential Parties in Interest attached hereto as Schedule 1.

17.     Following this review, Reevemark identified two parties in interest.  Specifically, Reevemark identified two current clients, Anthem, Inc. and MNG Enterprises (an affiliate of Alden Global Capital).  Reevemark represents Anthem, Inc. and MNG Enterprises on matters unrelated to these chapter 11 cases.

6

18.     To the best of my knowledge, and in view of the foregoing, Reevemark and the professionals employed by it are disinterested persons who do not hold or represent an interest adverse to the estate and except as set forth above do not have any connection either with the Debtors, their creditors, or any other party in interest in the cases or with their respective professionals or accountants, with the judges of this Court, or with the United States Trustee or any person employed in the Office of the United States Trustee.

19.     Although Reevemark is unaware of any other connections at the present time, it is possible that Reevemark may have provided services for certain other creditors or other parties of interest in this case in matters unrelated to the Debtors or the instant bankruptcy case. I understand that if any information as stated herein changes or if I learn of any additional connections at a later date, I have a duty to supplement this declaration to disclose those facts.

*[Remainder of page intentionally left blank.]*

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated:  February 19, 2019

/s/  *Hugh Burns*
Hugh Burns
261 Madison Avenue, 6th Floor, New York, New York 10016
Email: hugh.byrnes@reevemark.com
Phone:  (212) 433-4600

8

## Exhibit B

**Engagement Letter**



January 17, 2019

Mr. Mario Zarazua
Chief Financial Officer
Payless Holdings LLC.
3231 SE Sixth Ave.
Topeka, KS
66607-2207

Dear Mario:

The following constitutes our mutual understanding with respect to your retention of Reevemark, LLC ("Reevemark") as communications consultant to Payless Holdings LLC. ("Payless").

A. **Services to be performed**.

   1) Reevemark will provide public relations services and communications counsel and support in connection with Payless' upcoming bankruptcy filing.

B. **Terms of Service**. Reevemark shall perform the above services under the following terms:

   1) Reevemark shall act as an independent contractor, not as Payless' employee or agent.

   2) Reevemark's minimum compensation, excluding expenses, shall be a $100,000 retainer, payable in advance, against which Reevemark will accumulate time charges at our then-current hourly billing rates (attached as Schedule A). When accrued time charges are equal to 85% of any advanced amount paid to Reevemark, Reevemark will notify Payless promptly and issue an invoice for an additional non-refundable fee as mutually agreed. Reevemark's invoices shall be payable upon receipt.

   3) Reevemark will not incur expenses on behalf of Payless unless mutually agreed and payment is made in advance by Payless.

   4) If Reevemark is asked to develop written materials or make statements regarding Payless and/or its business, it shall be entitled to rely on Payless and/or its agents to provide it with information that is truthful, accurate and not misleading. In the event of any claim, action, investigation or regulatory proceeding relating to materials prepared or statements made by Reevemark based on information provided by Payless and/or its agents, Payless shall hold Reevemark harmless and pay any costs (including attorneys' fees), damage awards or other liability incurred by Reevemark (collectively, "Losses"); *provided, however,* Payless shall not be liable for Losses arising out of Reevemark's fraud, gross negligence, or willful misconduct. Payless' obligations under this paragraph shall survive the termination of this agreement and supersede any contrary provisions of any confidentiality or non-disclosure agreement entered into by the parties, regardless of its

1

date.

5) If Reevemark receives a third-party subpoena or other information request relating to Reevemark's work for Payless, Reevemark shall promptly provide Payless and/or its counsel with notice. Payless shall compensate Reevemark at Reevemark's then-current hourly rates for time expended and out-of-pocket costs (including attorneys' fees), incurred by Reevemark responding to any such subpoena or information request. The obligations under this paragraph shall survive the termination of this agreement.

6) This agreement shall be effective as of January 17, 2019 and shall continue through the completion of the assignment, provided that either party may terminate this agreement at any time with 30 days written (or e-mail) notice to the other.

7) Unless otherwise directed, Reevemark will keep confidential all non-public information provided to Reevemark by Payless and/or its agents in connection with this assignment. The obligations under this paragraph shall survive the termination of this agreement.

8) This agreement shall be governed by the laws of the State of New York, without regard to conflict of laws principles. Any and all disputes relating to this agreement shall be brought before the state or federal courts located in New York County, New York.

We appreciate the confidence you have placed in Reevemark and look forward to working with you.

Very truly yours,

**REEVEMARK, LLC**

By: _____

Paul Caminiti
Founding Partner

ACCEPTED AND AGREED UPON

**PAYLESS HOLDINGS LLC**

By: _____

Mario Zarazua
Chief Financial Officer

2

## Schedule A

### Reevemark Billing Rates as of January 1, 2019

| Title | Hourly Rate |
|-------|-------------|
| Founding Partner | $720 |
| Partner/MD | $620 |
| Senior Vice President | $540 |
| Vice President | $440 |
| Senior Associate | $360 |
| Associate | $240 |

3