**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re: | )  Case No. 19-40883-659 |
| | )  Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) |
| | )  (Joint Administration Requested) |
| Debtors.[1] | ) |
| | )  Hearing Date:  February 19, 2019 |
| | )  Hearing Time: 1:30 p.m. (Central Time) |
| | )  Hearing Location: Courtroom 7 North |

**DEBTORS' APPLICATION FOR APPOINTMENT OF
PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT AND
ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file

this application (the "<u>Application</u>") for entry of an order (the "<u>Retention Order</u>"),[2] pursuant to

section 156(c) of title 28 of the United States Code and sections 105(a), 327 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"), appointing Prime Clerk LLC ("<u>Prime Clerk</u>") as (i)

claims and noticing agent (the "<u>Claims and Noting Agent</u>"); and (ii) administrative advisor (the

"<u>Administrative Advisor</u>") in the Debtors' chapter 11 cases effective *nunc pro tunc* to the

Petition Date (as defined below).   In support of this Application, the Debtors submit the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179].  With respect to certain taxing authorities, the Debtors' address is 2001 Bryan Street, Suite 800, Dallas, Texas 75201.  However, the location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource Inc., 3231 S.E. 6th Avenue, Topeka, Kansas 66607.

[2]  A copy of the Retention Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://cases.primeclerk.com/pss.

Declaration of Benjamin J. Steele, Vice President of Prime Clerk (the "Steele Declaration"), attached hereto as Exhibit A, and respectfully represent as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and procedural bases for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 105(a), and 327 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(a) of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Eastern District of Missouri (the "Local Bankruptcy Rules").

## BACKGROUND

4.     The Debtors and their non-debtor affiliates (together, the "Company") are the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices.  The Company operates approximately 3,400 stores in more than 40 countries.  The Debtors are headquartered in Topeka, Kansas, with extensive operations that span across the United States, Canada, Latin America, Asia, the Middle East, and Europe.

5.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their

businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors have requested that their cases be consolidated for procedural purposes and administered jointly.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.     The Debtors commenced these chapter 11 cases approximately 18 months after completing a restructuring and emerging from chapter 11 protection with a reduced debt burden.[3] The Debtors, however, have been unable to sustain profitable operations in the current retail environment as a result of various factors more fully described in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "First Day Declaration").[4]  Accordingly, the Debtors have determined that the best way to maximize value for all of their stakeholders is to liquidate all North America brick and mortar locations through the immediate commencement of going out of business sales.  The Debtors believe, in the exercise of their business judgment, that such measures are in the best interests of the Debtors' estates.

7.     A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

---

[3] On April 4, 2017, the Debtors' predecessors-in-interest commenced chapter 11 cases (the "Prior Cases") before the United States Bankruptcy Court for the Eastern District of Missouri, which were jointly administered under the caption *In re Payless Holdings LLC*, No. 17-42267.  A plan of reorganization was confirmed in the Prior Cases on July 26, 2017, and such plan went effective on August 10, 2017.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## RELIEF REQUESTED

8.      Pursuant to 28 U.S.C. § 156(c), the Debtors request entry of an order appointing Prime Clerk as the Claims and Noticing Agent for the Debtors and their chapter 11 cases. Moreover, the Debtors also seek to retain Prime Clerk as Administrative Advisor pursuant to section 327(a) of the Bankruptcy Code.

### BASIS FOR RELIEF REQUESTED

9.      Section 156(c) of title 28 of the United States Code provides the following:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28. U.S.C. § 156(c).

10.     Moreover, section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

11.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

12.     The Debtors' selection of Prime Clerk to act as the Claims and Noticing Agent and Administrative Advisor is appropriate under the circumstances and in the best interest of the Debtors' estates.  Specifically, the Debtors utilized Prime Clerk as Claims and Noticing Agent and Administrative Advisor in the Prior Cases.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed from other claims and noticing agents, that Prime Clerk's rates are competitive and reasonable given Prime Clerk's quality of services and expertise.  The terms of Prime Clerk's retention are set forth in the Engagement Agreement attached hereto as Exhibit B (the "Engagement Agreement").

13.     Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of persons and entities to be noticed and that many of these parties will file claims.  Due to the nature of these chapter 11 cases, the Debtors anticipate a greater volume of claims being filed in these cases than in the Prior Cases.  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent and administrative advisor will provide the most effective and efficient means of, and relieve the Debtors and/or the Bankruptcy Clerk's Office of the administrative burden of, noticing, administering claims, and soliciting and tabulating votes, and is in the best interests of both the Debtors' estates and their creditors.

### PRIME CLERK'S QUALIFICATIONS

14.     Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel or official

claims and noticing agent and/or administrative advisor in many large bankruptcy cases in various districts nationwide. Prime Clerk's active cases include: *In re Sears Holding Corporation*, No. 18-23538 (RDD) (Bankr. S.D.N.Y.); *In re FirstEnergy Solutions Corp.*, No. 18-50747 (AMK) (Bankr. N.D. Ohio); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *In re Vanguard Natural Resources, LLC,* No. 17-30560 (MI) (Bankr. S.D. Tex.); *Rentech WP U.S., Inc.,* No. 17-12958 (CSS) (Bankr. D. Del.); *Appvion, Inc.,* No. 17-12082 (KJC) (Bankr. D. Del.); *Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation,* No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.); *TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.); *Lily Robotics, Inc.,* No. 17-10426 (KJC) (Bankr. D. Del.); *Bonanza Creek Energy, Inc.,* No. 17-10015 (KJC) (Bankr. D. Del.); *Violin Memory, Inc.,* No. 16-12782 (LSS) (Bankr. D. Del.); *Gracious Home LLC,* No. 16-13500 (MKV) (Bankr. S.D.N.Y.); *DirectBuy Holdings, Inc.,* No. 16-12435 (CSS) (Bankr. D. Del.); *American Apparel, LLC,* No. 16-12551 (BLS) (Bankr. D. Del.); *DACCO Transmission Parts (NY), Inc.,* No. 16-13245 (MKV) (Bankr. S.D.N.Y.); *Shoreline Energy LLC,* No. 16-35571 (DRJ) (Bankr. S.D. Tex.); *Golfsmith International Holdings, Inc.,* No. 16-12033 (LSS) (Bankr. D. Del.); *International Shipholding Corp.,* No. 16-12220 (SMB) (Bankr. S.D.N.Y.); *Global Geophysical Services, LLC,* No. 16-20306 (DRJ) (Bankr. S.D. Tex.); *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-

32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); and *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.).

15.     Prime Clerk has also served as Claims and Noticing Agent and/or Administrative Advisor on multiple occasions in this district.  *See, e.g., In re Abengoa Bioenergy US Holding, LLC,* No. 16-41161-659 (Bankr. E.D. Mo); *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (Bankr. E.D. Mo.); *In re Arch Coal, Inc.*, No. 16-40120 (Bankr. E.D. Mo.).  Significantly, Prime Clerk served as the Claims and Noticing Agent and Administrative Advisor in the Prior Cases, *In re Payless Holdings LLC*, No. 17-42267 [Docket No. 237] (E.D. Mo. April 14, 2017).  Prime Clerk is thus familiar with the Debtors' businesses and the procedures and practices currently being implemented in the Prior Cases.  Accordingly, the Debtors submit that appointing Prime Clerk as the Claims and Noticing Agent and Administrative Advisor is appropriate here.

### SERVICES TO BE PROVIDED

16.     This Application pertains to the work to be performed by Prime Clerk under 11 U.S.C. § 327(a) and under the Office of the Clerk of the Bankruptcy Court's (the "Clerk") delegation of duties permitted by 28 U.S.C. § 156(c).  Under the Engagement Agreement, Prime Clerk will perform the following services, as the Claims and Noticing Agent pursuant to 28 U.S.C. § 156(c):

> (a)     assist the Debtors with the preparation and distribution of all required notices and documents in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including: (i) notice of the § 341 meeting of creditors; (ii) notice of any claims bar date, (iii) notice of any proposed sale of the Debtor's assets, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of any plan or plans of reorganization,

including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors, the Court, or the Clerk may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)     serve the notice of the commencement of these cases and the initial § 341 meeting of the creditors using the current Official Form 309F notice as modified by the Court. Prime Clerk shall obtain this form notice from the Clerk and shall not modify the form notice it receives from the Clerk without the Clerk's consent. Any claims bar date notice must be approved by the Court and the Clerk prior to being issued by Prime Clerk;

(c)     maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(d)     maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(e)     furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Clerk and the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(f)     maintain a post office box or address for receiving claims and returned mail, and process all mail received;

(g)     for all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk a certificate of service within one (1) business day of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(h)     process all proofs of claim received, including those received by the Clerk, within five (5) business days of receipt (or within ten (10) business days of receipt during the two (2) weeks preceding and following any bar set by the Court); if the time deadline cannot be met due to volume or unforeseen circumstances, Prime Clerk shall promptly notify the Clerk;

(i)     maintain a duplicate claims register on behalf of each Debtor (collectively, the "Claims Register"); and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the address for payment, if different from the notice address, (v) the amount asserted, (vi) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vii) any disposition of the claim;

(j)     upon receipt of proofs of claim not otherwise filed with the Clerk, file claims in the Court's Claim Register by the end of the week following the week of receipt (or by the end of the second week following the week of receipt during the two (2) weeks preceding and following any bar set by the Court), noting the claim number assigned by the Court; upon completion of the docketing of claims processed with the Court, reconcile its records with the Court for all claims received to date for each case; if the time deadline cannot be met due to volume or unforeseen circumstances, Prime Clerk shall promptly notify the Clerk;

(k)     implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(l)     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Prime Clerk, not less than weekly;

(n)     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)     identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(p)     assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website at https://cases.primeclerk.com/PSS and/or call center;

(q)     if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office immediately upon notice to Prime Clerk of entry of the order converting the cases;

(r)     thirty (30) days prior to the close of these chapter 11 cases, to the extent

practicable, request that the Debtors submit to the Court a proposed order dismissing Prime Clerk as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(s)    within seven (7) days of notice to Prime Clerk of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of the cases;

(t)    with prior approval of the Clerk, at the close of these chapter 11 cases, address the destruction of proofs of claim as instructed by the Clerk; and

(u)    comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements.

17.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Prime Clerk.

18.    Moreover, the Debtors seek to retain Prime Clerk, pursuant to 11 U.S.C. § 327(a), to perform the following as Administrative Advisor:

(a)    assist the Debtors with plan-solicitation services including: (i) balloting, (ii) distribution of applicable solicitation materials, (iii) tabulation and calculation of votes, (iv) determining with respect to each ballot cast, its timeliness and its compliance with the Bankruptcy Code, Bankruptcy Rules, and procedures ordered by this Court; (v) preparing an official ballot certification and testifying, if necessary, in support of the ballot tabulation results; and (vi) in connection with the foregoing services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

(b)    assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

(c)    provide a confidential data room, if requested;

(d)    manage and coordinate any distributions pursuant to a chapter 11 plan; and

(e)    provide such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement, but not included pursuant to § 156(c), that may be requested from time to time by the Debtors, the Court, or the Clerk's Office.

## PROFESSIONAL COMPENSATION

19.    The Debtors respectfully request that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above-referenced services provided pursuant to 28

U.S.C. § 156(c) be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business pursuant to the Engagement Agreement without further application to or order of the Court.  Prime Clerk agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

20.     For the above-referenced services provided pursuant to section 327(a) of the Bankruptcy Code, Prime Clerk will seek compensation in accordance with and will file interim and final fee applications for allowance of its compensation and expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the applicable Guidelines.

21.     Prior to the Petition Date, the Debtors provided Prime Clerk an advance in the amount of $50,000.  Prime Clerk seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

22.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Prime Clerk and its members, officers,

employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Retention Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent and administrative advisor in these chapter 11 cases.

### DISINTERESTEDNESS

23.    Prime Clerk has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration, Prime Clerk has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

24.    To the best of the Debtors' knowledge, Prime Clerk is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), as Prime Clerk represents in the Steele Declaration, among other things, that:

(a)    Prime Clerk is not a creditor of the Debtors;[5]

(b)    Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(c)    By accepting employment in these chapter 11 cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

---

[5] Although Prime Clerk served as claims and noticing agent and administrative advisor in the Prior Cases, as of the Petition Date, Prime Clerk is not a creditor of the Debtors.

(d)     In its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e)     Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(f)     Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h)     Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Prime Clerk as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases shall be at the expense of the Clerk's office.

Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

25.     To the extent that there is any inconsistency between this Application, the Retention Order, and the Engagement Agreement, the Retention Order shall govern.

## NOTICE

26.     Notice of this Application has been served on the following parties and/or their counsel, if known, via facsimile, overnight delivery, e-mail, and/or hand delivery: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition

ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (e) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard), (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (f) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (g) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (h) counsel to any statutory committee appointed in the chapter 11 cases; (i) the United States Attorney's Office for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for all states in which the Debtors conduct business; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of the Retention Order, authorizing Prime Clerk to act as Claims and Noticing Agent and Administrative Advisor for the Debtors and granting such other relief as may be appropriate.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request entry of the Proposed Order, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated: February 19, 2019

/s/ Stephen Marotta
Stephen Marotta
Chief Restructuring Officer, Payless Holdings LLC

Filed by:

/s/  *Richard W. Engel, Jr.*
Richard W. Engel, Jr. MO 34641
Erin M. Edelman MO 67374
John G. Willard MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
rengel@armstrongteasdale.com
eedelman@armstrongteasdale.com
jwillard@armstrongteasdale.com

-and-
Ira Dizengoff (*pro hac vice* admission pending)
Meredith A. Lahaie (*pro hac vice* admission pending)
Kevin Zuzolo (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

- and -

Julie Thompson (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Proposed Counsel to the Debtors and Debtors in Possession*

16

## **Exhibit A**

**Steele Declaration**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) | |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

**DECLARATION OF BENJAMIN J. STEELE IN SUPPORT
OF DEBTORS' APPLICATION FOR APPOINTMENT OF
PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT AND
ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.      I am a Vice President of Prime Clerk LLC ("Prime Clerk"), a chapter 11 administrative services firm whose headquarters are located at 830 3rd Avenue, 9th Floor, New York, New York 10022.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the above-captioned debtors' (collectively, the "Debtors") *Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent and Administrative Advisor Nunc Pro Tunc to the Petition Date*, which was filed contemporaneously herewith (the "Application").[1]

3.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel or official claims

and noticing agent and/or administrative advisor in many large bankruptcy cases in various districts nationwide. Prime Clerk's active cases include: *In re Sears Holding Corporation*, No. 18-23538 (RDD) (Bankr. S.D.N.Y.); *In re FirstEnergy Solutions Corp.*, No. 18-50747 (AMK) (Bankr. N.D. Ohio); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *In re Vanguard Natural Resources, LLC,* No. 17-30560 (MI) (Bankr. S.D. Tex.); *Rentech WP U.S., Inc.,* No. 17-12958 (CSS) (Bankr. D. Del.); *Appvion, Inc.,* No. 17-12082 (KJC) (Bankr. D. Del.); *Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation,* No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.); *TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.); *Lily Robotics, Inc.,* No. 17-10426 (KJC) (Bankr. D. Del.); *Bonanza Creek Energy, Inc.,* No. 17-10015 (KJC) (Bankr. D. Del.); *Violin Memory, Inc.,* No. 16-12782 (LSS) (Bankr. D. Del.); *Gracious Home LLC,* No. 16-13500 (MKV) (Bankr. S.D.N.Y.); *DirectBuy Holdings, Inc.,* No. 16-12435 (CSS) (Bankr. D. Del.); *American Apparel, LLC,* No. 16-12551 (BLS) (Bankr. D. Del.); *DACCO Transmission Parts (NY), Inc.,* No. 16-13245 (MKV) (Bankr. S.D.N.Y.); *Shoreline Energy LLC,* No. 16-35571 (DRJ) (Bankr. S.D. Tex.); *Golfsmith International Holdings, Inc.,* No. 16-12033 (LSS) (Bankr. D. Del.); *International Shipholding Corp.,* No. 16-12220 (SMB) (Bankr. S.D.N.Y.); *Global Geophysical Services, LLC,* No. 16-20306 (DRJ) (Bankr. S.D. Tex.); *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); and *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.).

4.    Prime Clerk has also served as Claims and Noticing Agent and/or Administrative Advisor on multiple occasions in this district.  *See, e.g., In re Abengoa Bioenergy US Holding, LLC,* No. 16-41161-659 (Bankr. E.D. Mo); *In re Noranda Aluminum, Inc*., No. 16-10083-399 (Bankr. E.D. Mo.); *In re Arch Coal, Inc*., No. 16-40120 (Bankr. E.D. Mo.).  Additionally, Prime Clerk served as the Claims and Noticing Agent and Administrative Advisor in the Prior Cases, *In re Payless Holdings LLC*, No. 17-42267 [Docket No. 237] (E.D. Mo. April 14, 2017).

5.    As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Prime Clerk will perform, at the request of the Clerk the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement.  Moreover, Prime Clerk will perform such services pursuant to 11 U.S.C. § 327(a) as specified in the Application and Engagement Agreement. In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit B to the Application.

6.    Prime Clerk represents, among other things, the following:

(a)    Prime Clerk is not a creditor of the Debtors;[2]

(b)    Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States

---

[2] Although Prime Clerk served as claims and noticing agent in the Prior Cases, as of the Petition Date, Prime Clerk is not a creditor of the Debtors.

government in its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(c)   By accepting employment in these chapter 11 cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)   In its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e)   Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(f)   Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)   In its capacity as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h)   Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)   Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)   None of the services provided by Prime Clerk as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases shall be at the expense of the Clerk's office.

7.   In accordance with 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014, I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "Potential Parties in Interest") in these chapter 11 cases.  The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' 50 largest unsecured creditors on a consolidated basis, contract counterparties, landlords, vendors, insurers, utilities, governmental

authorities, the United States Trustee and persons employed in the office of the United States Trustee, and other parties. The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision. At this time, and as set forth in further detail herein, Prime Clerk is not aware of any connection that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to promptly file a supplemental declaration.

8. To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Prime Clerk serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

9. On December 7, 2017, Prime Clerk received an investment from an investment vehicle formed by Carlyle Strategic Partners IV, L.P. ("CSP IV"), an investment fund managed by Carlyle Global Credit Investment Management L.L.C., each affiliates of The Carlyle Group (together with its subsidiaries, "Carlyle"). As a result of the transaction, Prime Clerk and CSP IV are affiliates under applicable law. The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules. However, CSP IV is not on the Potential Parties in Interest list in these cases as of the date hereof.

10. Carlyle is a global alternative asset manager with over 1,625 professionals operating in 31 offices over six continents that manages over $200 billion in over 330 investment vehicles spanning Corporate Private Equity, Real Assets, Global Credit, and Investment Solutions.

Carlyle's Corporate Private Equity funds, Real Assets funds, Global Credit funds, and Investment Solutions funds (collectively, the "Funds") are managed independently from each other. CSP IV, Carlyle Strategic Partners II, L.P. and Carlyle Strategic Partners III, L.P. (collectively, "CSP") are Global Credit funds that each are owned by a diverse group of limited partners, which exert no control over CSP's investment decisions, and a general partner affiliated with Carlyle. All CSP investment professionals involved with Prime Clerk are dedicated solely to CSP and are not involved in the Corporate Private Equity, Real Assets, or Investment Solutions businesses, although, from time to time, one or more CSP investment professionals may sit on the investment committee of another Global Credit fund.

11.     Designees of CSP IV are members of the Board of Managers of Prime Clerk's ultimate parent company ("Parent Board Designees"), Prime Clerk Holdings LLC ("HoldCo"). HoldCo wholly owns Prime Clerk MidCo Holding LLC ("MidCo"), which wholly owns Prime Clerk. No Carlyle designees are Board members of MidCo or Prime Clerk. Further, Prime Clerk and CSP IV have the following restrictions in place (collectively, the "Barrier"): (i) prior to the Debtors commencing these cases, Prime Clerk did not share the names or any other information identifying the Debtors with the Parent Board Designees; (ii) Prime Clerk has not and will not furnish any material nonpublic information about the Debtors to CSP, the Parent Board Designees or any Carlyle entity; (iii) no CSP personnel nor any other Carlyle personnel work on Prime Clerk client matters or have access to Prime Clerk client information, client files or client personnel; (iv) no CSP personnel nor any other Carlyle personnel work in Prime Clerk's offices; (v) other than the Parent Board Designees, Prime Clerk operates independently from Carlyle, including that it does not share any employees, officers or other management with Carlyle, has separate offices in

separate buildings, and has separate IT systems; and (vi) no Prime Clerk executive or employee is a director, officer or employee of Carlyle (or vice versa other than the Parent Board Designees).

12.     Prime Clerk has searched the names of the Debtors and the names of the potential parties in interest provided by the Debtors against:  (i) the names of the CSP funds and their respective investments; (ii) the names of Carlyle's other Global Credit funds; and (iii) the names of the Corporate Private Equity funds.  Prime Clerk also has searched the names of the Debtors against the publicly-known investments of the Corporate Private Equity funds as set forth in the list most recently provided to Prime Clerk by Carlyle's internal compliance department ("Carlyle Compliance").  CSP operates autonomously from and makes independent investment decisions from the other Global Credit funds, the Corporate Private Equity funds, the Real Assets funds, and the Investment Solutions funds.  Further, Carlyle maintains an internal information barrier between its Global Credit funds and the rest of the Carlyle funds.  Accordingly, the conflicts search does not include the names of the Real Assets funds, the Investment Solutions funds or any of their or the other Global Credit funds' investments, nor does it include any portfolio companies of any of the Funds (other than those of CSP and the Corporate Private Equity funds as described above).  Based solely on the foregoing search, Prime Clerk has determined, to the best of its knowledge, that there are no material connections (other than as set forth herein).  To the extent Prime Clerk learns of any material connections between the funds or investments included in the above described conflicts search and the Debtors, Prime Clerk will promptly file a supplemental disclosure.

13.     After the Petition Date, Prime Clerk will promptly request Carlyle Compliance to search the names of the Debtors against CSP's respective investments.  To the extent Prime Clerk

learns of any material connections involving the Debtors and such investments after Carlyle Compliance has searched such names, Prime Clerk will promptly file a supplemental disclosure.

14.     Other than as specifically noted herein as to CSP, one or more of the other Funds may, in the ordinary course and from time to time, hold, control and/or manage loans to, or investments in, the Debtors and/or potential parties in interest and/or may trade debt and/or equity securities in the Debtors and/or potential parties in interest.  In addition, other than as specifically noted herein as to CSP, the Funds also may have had, currently have, or may in the future have business relationships or other connections with the Debtors or other potential parties in interest. Other than as specifically noted herein as to CSP, Prime Clerk has not undertaken to determine the existence, nature and/or full scope of any business relationships or other connections that any Carlyle entity may have with the Debtors and their affiliates or the potential parties in interest in these chapter 11 cases.

15.     In addition, Prime Clerk may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Carlyle entities including, among others, portfolio companies of Carlyle.

16.     Based on, among other things, the business separation between Prime Clerk and Carlyle, the Barrier, and in light of the administrative nature of the services proposed to be performed by Prime Clerk for the Debtors, Prime Clerk believes that it does not hold or represent an interest adverse to the Debtors.

17.     Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP;

Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Hughes Hubbard & Reed LLP; Gibson, Dunn & Crutcher LLP; Centerview Partners LLC; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman Carson Consultants LLC.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

18.    Prime Clerk has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, Prime Clerk and its personnel have and will continue to have relationships personally or in the ordinary course of its business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases.  Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

19.    Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors.  Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest.  All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these chapter 11 cases.

20.    From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their

affiliates, often without Prime Clerk's or its personnel's knowledge. Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the particular Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

21.    From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company which may be one of the Debtors or their affiliates. Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to paragraph 20, all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is retained. Subject to paragraph 20, upon information and belief, and upon reasonable inquiry, Prime Clerk does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

22.    Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Moreover, to the best of my knowledge and belief, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on February 19, 2019

/s/ *Benjamin J. Steele*
Benjamin J. Steele
Vice President
Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, New York 10022

## <u>Exhibit B</u>

**Engagement Agreement**



**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of January 16, 2019 between Prime Clerk LLC ("***Prime Clerk***") and Payless Holdings LLC, on behalf of itself and its direct and indirect wholly-owned subsidiaries (collectively, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

   (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder.  The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Prime Clerk will provide a discount of 10% off the attached hourly rates.  The Company agrees to pay for reasonable and documented out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c) Prime Clerk will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000, Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder, and Prime Clerk shall not be required to perform such Services prior to receipt of such advance payment.  If any amount is unpaid as

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $50,000.  Prime Clerk may use such advance against unpaid fees and expenses hereunder.  Prime Clerk may use the advance against all prepetition fees and expenses incurred on account of services provided under this Agreement, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice

to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

**5.** **Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

**6.** **Bank Accounts**

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

**7.** **Term and Termination**

    (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

    (b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

    (c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

    (d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance reasonably required for such an orderly transfer. The Company agrees to pay for such reasonable Services pursuant to the Rate Structure.



8.   **No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

9.   **Indemnification**

(a)   To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)   Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)   The Company's indemnification of Prime Clerk and any other Indemnified Party hereunder shall exclude Losses resulting from, arising out of or related to such Indemnified Party's gross negligence or willful misconduct.

(d)   The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.   **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.   **Company Data**

(a)   The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b)   The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to

4

**Prime Clerk**

Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

(c)  Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d)  If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

16. **Integration; Severability; Modifications; Assignment**

  (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof; *provided, however*, that any existing agreement previously entered into between Prime Clerk and the Company or its predecessors in the Company's chapter 11 cases jointly administered under the caption *In re Payless Holdings, LLC*, et al., Case No. 17-44267-659 (Bankr. E.D. Mo. 2017) shall remain in effect solely with respect to such cases.

  (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

  (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

  (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

17. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

18. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC<br>830 3rd Avenue, 9th Floor<br>New York, NY 10022<br>Attn: Shai Waisman<br>Tel: (212) 257-5450<br>Email: swaisman@primeclerk.com |
| If to the Company: | Payless Holdings LLC<br>3231 SE 6th Street<br>Topeka, KS 66607<br>Attn: Mario Zarazua, Chief Financial Officer<br>Tel: (785) 233-5171<br>Email: mario.zarazua@payless.com |
| With a copy to: | Akin Gump Strauss Hauer & Feld LLP |

Prime Clerk

One Bryant Park
New York, NY 10036-645
Attn: Meredith A. Lahaie
Tel: (212) 872-8032
Email: mlahaie@akingump.com

*[Signature page follows]*

Prime Clerk

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

_____

By: Benjamin J. Steele
Title: Vice President

**Payless Holdings LLC**

_____

By:
Title:

8

**Prime Clerk**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By:
Title:

**Payless Holdings LLC**

By:     Mario Zarazua
Title:  CFO

8

# Rates

### Claim and Noticing Rates[1]

| Title | Hourly Rate |
|---|---|
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $55 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $95 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports.  Prime Clerk's Senior Consultants average over five years of experience. | $65 - $170 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $195 |
| **Chief Operating Officer and Executive Vice President**<br>Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | No charge |

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours.  Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.



### Solicitation, Balloting and Tabulation Rates[2]

| | |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $195 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $210 |

### Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page[3] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | No charge |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

### Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

---

[2] Certain fees may be applicable to noticing, solicitation and corporate action events involving holders of public securities.

[3] Volume discounts will be applied to large mailings.



### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

### On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

### Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

### Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

