## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*,[1] | ) | |
| | ) | (Joint Administration Requested) |
| | ) | |
| Debtors. | ) | |
| | ) | Hearing Date: February 19, 2019 |
| | ) | Hearing Time: 1:30 p.m. (Central Time) |
| | ) | Hearing Location: Courtroom 7 North |

### DEBTORS' MOTION FOR ENTRY OF
### INTERIM AND FINAL ORDERS PURSUANT TO
### 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, AND 552 AND BANKRUPTCY
### RULES 2002, 4001 AND 9014 (I) AUTHORIZING USE OF CASH COLLATERAL,
### (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC
### STAY AND (IV) SCHEDULING A FINAL HEARING

Payless Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state the following in support of this motion (the "Motion"):

### RELIEF REQUESTED

1.    The Debtors seek entry of interim and final orders (respectively, the "Interim Order" and the "Final Order" and, together, the "Cash Collateral Orders"):[2] (a) authorizing the

---

[1] The Debtors (as defined herein) in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179].  With respect to certain taxing authorities, the Debtors' address is 2001 Bryan Street, Suite 800, Dallas, TX 75201.  However, the location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is:  c/o Payless ShoeSource Inc., 3231 S.E. 6th Avenue, Topeka, Kansas 66607.

Debtors to use Cash Collateral[3] subject to the terms and conditions set forth in the Interim Order, (b) granting certain adequate protection to the Prepetition Credit Parties, and (c) scheduling a final hearing (the "Final Hearing") within approximately 30 days of the Petition Date to consider approval of this Motion on a final basis.

### JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and procedural bases for the relief requested herein are sections 105, 361, 362, 363, 364 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules", and Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Missouri (the "Local Bankruptcy Rules").

### BACKGROUND

5.      The Debtors and their non-debtor affiliates (together, the "Company") are the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices.  The Company operates approximately 3,400 stores in more than 40 countries.  The Debtors are headquartered in Topeka, Kansas, with

---

[2]A copy of the proposed Interim Order and the proposed Final Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://cases.primeclerk.com/pss.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Interim Order.

extensive operations that span across the United States, Canada, Latin America, Asia, the Middle East, and Europe.

6.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have filed a motion seeking joint administration of their chapter 11 cases under Bankruptcy Rule 1015(b). The Debtors are operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

7.      The Debtors commenced these chapter 11 cases approximately 18 months after completing a restructuring and emerging from chapter 11 protection with a reduced debt burden.[4] The Debtors, however, have been unable to sustain profitable operations in the current retail environment as a result of various factors more fully described in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* ("the First Day Declaration").[5]  Accordingly, the Debtors have determined that the best way to maximize value for all of their stakeholders is to liquidate all North America brick and mortar locations through the immediate commencement of going out of business sales.  The Debtors believe, in the exercise of their business judgment, that such measures are in the best interests of the Debtors' estates.

---

[4] On April 4, 2017, the Debtors' predecessors-in-interest commenced chapter 11 cases (the "Prior Cases") before the United States Bankruptcy Court for the Eastern District of Missouri, which were jointly administered under the caption *In re Payless Holdings LLC*, No. 17-42267.  A plan of reorganization was confirmed in the Prior Cases on July 26, 2017, and such plan went effective on August 10, 2017.

[5] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

8.    A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

### THE DEBTORS HAVE AN IMMEDIATE NEED TO USE CASH COLLATERAL

9.    The Debtors' access to Cash Collateral is absolutely necessary to preserving and maximizing value for the Debtors' stakeholders.  The Debtors use Cash Collateral in the ordinary course of business to procure goods and services from vendors, pay their employees, and satisfy other working capital needs.  Absent approval of the Interim Order, the Debtors will be effectively unable to operate their businesses, conduct the Store Closing Sales[6], or pay the many individuals who report to work each day.  These chapter 11 estates would be immediately and irreparably harmed if this were to occur.  Importantly, the Debtors are not seeking at this time to operate their businesses or finance the administration of these chapter 11 cases with debtor-in-possession financing, and instead are relying on Cash Collateral to fund operations and these chapter 11 cases.[7]  Without access to Cash Collateral, the Debtors would be forced to seek postpetition financing to fund operational and administrative costs, which would impose increased costs and delays on these chapter 11 estates, potentially jeopardizing the Debtors' ability to generate recoveries in connection with the liquidation of the North American business. Thus, the Debtors respectfully request authority to use Cash Collateral solely on an interim basis subject to the terms and conditions set forth in the Interim Order.

10.    As further set forth herein, the Cash Collateral Orders generally provide adequate protection in the form of new liens, superpriority claims, and replacement liens, among other things, to protect against any diminution in value arising from the Debtors' use of

---

[6] The Debtors commenced the Store Closing Sales prior to the Petition Date on February 17, 2019.
[7] The Debtors are currently pursuing potential debtor-in-possession financing for the limited purpose of purchasing additional inventory to be liquidated in connection with the Store Closing Sales.

Cash Collateral, subject to the Carve Out, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. The Debtors further propose to use said Cash Collateral pursuant to a budget annexed to the Interim Order as **Exhibit A** (as amended from time to time, the "Budget"), subject to permitted variances, thereby providing assurance to vendors, lessors, and other parties in interest that the Debtors will have access to Cash Collateral to fund these chapter 11 cases, as well as clarity around the Debtors' proposed uses of Cash Collateral during the pendency of these chapter 11 cases.

11.    Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to fund these chapter 11 cases. Without such access to liquidity, the Debtors' ability to navigate through the chapter 11 process will be compromised. As a result, the Debtors have an immediate need to secure access to the Cash Collateral to ensure sufficient liquidity throughout the pendency of these chapter 11 cases.

### THE DEBTORS' PREPETITION CAPITAL STRUCTURE

12.    Payless, Inc., Payless Finance, Inc., Payless ShoeSource, Inc. and Payless ShoeSource Distribution, Inc., as borrowers, the other Debtors party thereto as guarantors, Wells Fargo Bank, National Association ("Wells Fargo"), in its capacity as collateral agent and administrative agent (the "Prepetition ABL Administrative Agent"), Wells Fargo, in its capacity as FILO agent (the "Prepetition FILO Agent"), and the lenders party thereto from time to time (the "Prepetition ABL Lenders") are parties to that certain Credit Agreement, dated as of August 10, 2017 (as amended, restated, modified, and/or supplemented and as in effect immediately prior to the Petition Date, the "Prepetition ABL Facility"). The Prepetition ABL Facility provides for (x) a senior secured revolving credit facility, with a maximum availability of $250 million, subject to borrowing base limitations, (y) a $35 million FILO loan and (z) other

financial accommodations and letters of credit. The Prepetition ABL Facility is secured by a first priority lien over certain of the Debtors' assets including, among other things and subject to certain limitations, accounts, cash, inventory, and real property (such collateral package, the "Prepetition ABL Priority Collateral"). The Prepetition ABL Facility is also secured by a junior lien on the remaining assets of the Debtors including, among other things and subject to certain limitations, equipment and intellectual property (such collateral package, the "Prepetition Term Priority Collateral"). As of the Petition Date, an aggregate balance of approximately $159,274,110.50 million remains outstanding under the Prepetition ABL Facility as well as $35,820,933.13 million in Standby Letters of Credit.

13. Due to the Debtors' diminishing liquidity, the Debtors were required to enter into "cash dominion" with the Prepetition ABL Agent, pursuant to which the Debtors agreed to cause all funds held in certain of their deposit accounts, subject to any nominal minimum balances required, to be swept daily into an account under the dominion and control of Wells Fargo (the "Concentration Account"), and cause the proceeds of all collections and balances of all other deposit accounts, subject to any nominal minimum balances required, to also be swept daily into the Concentration Account.

14. Payless, Inc., Payless Finance, Inc., Payless ShoeSource, Inc., and Payless ShoeSource Distribution, Inc. as borrowers, the other Debtors party thereto as guarantors, Cortland Products Corp., as administrative and collateral agent (the "Prepetition Term Loan Agent," and together with the Prepetition ABL Administrative Agent and Prepetition FILO Agent, the "Prepetition Agents"), and the lenders party thereto from time to time (the "Prepetition Term Lenders") are also parties to that certain Term Loan and Guarantee Agreement, dated as of August 10, 2017 (as amended, restated, modified, and/or supplemented

and as in effect immediately prior to the Petition Date, the "Prepetition Term Loan Agreement").
The Prepetition Term Loan Agreement originally provided for $280 million of term loans secured by a first priority lien on the Prepetition Term Priority Collateral and a second priority lien on the Prepetition ABL Priority Collateral. An aggregate principal amount of $277.2 million is outstanding as of the Petition Date under the Prepetition Term Loan Facility.

15.      The Debtors' prepetition indebtedness under the Prepetition ABL Facility and the Prepetition Term Loan Facility is also subject to that certain Intercreditor Agreement dated as of August 10, 2017 (as amended, restated, supplemented, or otherwise modified in accordance with its terms (the "Existing Intercreditor Agreement"). The Existing Intercreditor Agreement governs the relative contractual rights of lenders under the Prepetition ABL Facility and the Prepetition Term Loan Facility.

## CONCISE STATEMENT OF THE MATERIAL TERMS OF THE INTERIM ORDER

16.      The following summarizes the material terms of the Interim Order[8] in accordance with Bankruptcy Rule 4001(b):

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br>Fed. R. Bankr. P. 4001(b)(1)(B)(i) | (a) Wells Fargo Bank, National Association, in its capacities as (x) administrative agent and collateral agent for the Lenders (the "**Prepetition ABL Administrative Agent**") and (y) FILO Agent for the FILO Lenders (collectively, together with the Prepetition ABL Administrative Agent, the "**Prepetition ABL Agents**"), (b) the lenders party to the Prepetition ABL Credit Agreement from time to time (the "**Prepetition ABL Lenders**" and, together with the Prepetition ABL Agents and other "Credit Parties" (as defined in the Prepetition ABL Credit Agreement), the "**Prepetition ABL Credit Parties**"), (c) Cortland Products Corp., as Administrative Agent and Collateral Agent (in such capacities, the "**Prepetition Term Loan Agent**"), and (d) the lenders party to the Prepetition Term Loan Agreement from time to time (collectively, the "**Prepetition Term Loan Lenders**" and, together with the Prepetition Term Loan Agent, the "**Prepetition Term Loan Credit Parties**," and, together with the Prepetition ABL | ¶ G(i), (iii) |

---

[8] The summary of the Interim Order is qualified in all respects by reference to the Interim Order, and to the extent of any inconsistency between this Motion and the Interim Order, the Interim Order shall govern.

| | | |
|---|---|---|
| | Agents, Prepetition ABL Lenders and Prepetition Term Loan Agent, the "**Prepetition Credit Parties**") | |
| **Purpose for Use of Cash Collateral**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(ii) | Post-petition operating expenses and other working capital needs, payment of costs of administration of the Cases, including professional fees, and the Adequate Protection Payments. | ¶ H(ii) |
| **Budget**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(ii) | As a condition to the authorization to use Cash Collateral, the Prepetition Credit Parties require, and the Debtors have agreed, that Cash Collateral shall be used solely (a) in accordance with the budget (a summary of which is attached as <u>Exhibit A</u> to the Interim Order), as the same may be amended, supplemented, or otherwise modified from time to time with the prior written consent of the Prepetition Agents; <u>provided</u>, <u>however</u>, prior to the payment in full, in cash, of the ABL Obligations, only the consent of the Prepetition ABL Agents shall be required to approve any amendments, supplements or modifications of the Budget which pertain to the Store Closing Sales, including the line item "Liquidator Expenses"; <u>provided</u>, <u>further</u>, that the Prepetition ABL Agents shall consult with the Prepetition Term Loan Agent and AlixPartners, LLP on not less than one (1) Business Day's notice prior to consenting to such amendments, supplements or modifications (as so amended, supplemented or otherwise modified from time to time, the "**Budget**"), and, (b) solely with respect to the Payless Canada Entities, in accordance with the budget (a summary of which is attached as <u>Exhibit B</u> to the Interim Order), as the same may be amended, supplemented, or otherwise modified from time to time with the prior written consent of the Prepetition Agents; <u>provided</u>, <u>however</u>, prior to the payment in full, in cash, of the ABL Obligations, only the consent of the Prepetition ABL Agents shall be required to approve any amendments, supplements or modifications of the Canadian Budget which pertain to the Store Closing Sales, including the line item "Liquidator Expenses", and <u>provided</u>, <u>further</u>, that the Prepetition ABL Agents shall consult with the Prepetition Term Loan Agent and AlixPartners, LLP on not less than one (1) Business Day's notice prior to consenting to such amendments, supplements or modifications (as so amended, supplemented or otherwise modified from time to time, the "**Canadian Budget**"), and, in each instance, subject to such variances as may be permitted thereby, by the Interim Order and by any Final Order, solely for (i) post-petition operating expenses and other working capital needs and all other amounts authorized by any "first day" orders, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Cases, including professional fees, (iv) the Adequate Protection Payments (as defined in paragraph 4(a) of the Interim Order), (v) the payment in full in cash of the ABL Obligations, subject to the rights preserved in paragraph 22 of the Interim Order; and (vi) payment of the Carve Out which shall be in accordance with paragraph 18 of the Interim Order. | ¶ H(iii) |

| | | |
|---|---|---|
| **Termination Date / Termination Events**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | Upon written notice from the applicable Prepetition Agent, the occurrence of any of the following (unless waived by the applicable Prepetition Agent) shall constitute a "**Termination Event**" under the Interim Order:<br><br>    (i) Upon written notice by the Prepetition ABL Agents (or after the ABL Obligations have been paid in full in cash, the Prepetition Term Loan Agent) the following shall constitute a Termination Event (unless waived by the Prepetition ABL Agents, or after the ABL Obligations have been paid in full in cash, in which case unless waived by the Prepetition Term Loan Agent):<br><br>    (a) the Debtors shall, without the Prepetition Agents' prior written consent, file a motion with the Court or the Canadian Court seeking the authority to liquidate any of the Debtors' assets or capital stock except for the closure of the North American stores through Store Closing Sales as described in the Liquidation Consulting Agreement (as defined in the Interim Order);<br><br>    (b) other than in connection with the payment in full in cash of the ABL Obligations, the bringing of a motion, taking of any action or the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtors in the Cases or the Canadian Case: (A) to obtain financing other than any Permitted DIP Financing as set forth in paragraph 10 of the Interim Order; (B) except as provided in the Initial Canadian Order to grant any lien other than (i) Prepetition Permitted Priority Liens upon or affecting any Prepetition Collateral or Post-Petition Collateral or (ii) in connection with a Permitted DIP Financing; (C) except as provided in the Interim Order or in the Final Order, as the case may be, to use Cash Collateral under Section 363(c) of the Bankruptcy Code without the prior written consent of the Prepetition Agents; or (D) that seeks to prohibit the Prepetition ABL Credit Parties from credit bidding on any or all of the Debtors' assets during the pendency of the Cases;<br><br>    (c) other than in connection with the payment in full in cash of the ABL Obligations, the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure statement, by the Debtors or any other person to which the Prepetition ABL Credit Parties do not consent or otherwise agree to the treatment of their claims;<br><br>    (d) the entry of an order in the Cases or the Canadian Case confirming a plan of reorganization or liquidation that (A) is not acceptable to the Prepetition ABL Agents in their sole discretion or (B) does not contain a provision for repayment in full in cash of all of the ABL Obligations on or before the effective date of such plan or plans;<br><br>    (e) the entry of an order amending, supplementing, staying, vacating, or otherwise modifying the Prepetition ABL Credit Documents or the Interim Order, the Final Order, the Debtors' "first-day" cash management order or the initial order of the Canadian Court in the Canadian Case (the "**Initial Canadian Order**") without the written consent of the Prepetition ABL Agents or the filing of a motion for reconsideration with respect to the Interim Order or the Final Order, or the Interim Order, the Final Order, such cash management order or the Initial Canadian Order shall otherwise not be in full force and effect;<br><br>    (f) the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against the Prepetition ABL Credit Parties or any of the Prepetition Collateral or Post-Petition | ¶ 16 |

Collateral, in each case constituting ABL Priority Collateral;

(g) the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code, or an order of the Canadian Court granting relief or modifying the stay of proceedings in the Initial Canadian Order, (x) to allow any creditor to execute upon or enforce a lien on any Prepetition Collateral or Post-Petition Collateral, in each case constituting ABL Priority Collateral, having a fair market value of $250,000, or (y) with respect to any lien of or the granting of any lien on any Prepetition Collateral or Post-Petition Collateral, in each case constituting ABL Priority Collateral, to any state or local environmental or regulatory agency or authority;

(h) the commencement of a suit or action against the Prepetition ABL Credit Parties by or on behalf of the Debtors or their estates (other than with respect to claims or causes of action described in paragraph 22 hereof);

(i) the entry of an order in the Cases avoiding or permitting recovery of any payments made on account of the ABL Obligations;

(j) any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) shall be deemed or treated in the Cases, any Successor Case or the Canadian Case as a Prepetition Permitted Priority Lien with a fair market value in excess of $250,000

(k) the failure of the Canadian Debtors to pay the Canadian Excess Proceeds as and when due, or, without the prior written approval of the Prepetition ABL Agents and prior to the payment in full in cash of the ABL Obligations, or the failure to obtain, on or before the date that is seven (7) days after the Petition Date, an order from the Canadian Court approving the payment of Canadian Excess Cash Proceeds as set forth in paragraph 7(a);

(l) without limiting the requirements set forth in paragraph 16 of the Interim Order, the failure of the Canadian Debtors to perform any of their obligations under the Interim Order or any order issued by the Canadian Court (including, without limitation, to comply with Canadian Budget or the occurrence of any material interruption or cessation of the Store Closing Sales that are being conducted in Canada pursuant to the Liquidation Consulting Agreement), or the entry of an order converting the Canadian Case;

(m) the entry of an order in the Cases or the Canadian Case granting any other superpriority administrative claim or lien equal or superior to that granted to the Prepetition ABL Credit Parties without the prior written consent of the Prepetition ABL Agents other than with respect to (i) the Term Loan Priority Collateral in connection with the Permitted DIP Financing; or (ii) with respect to assets owned by any Payless Canada Entity an Administration Charge and the Directors' Charge as defined in the Initial Canadian Order;

(n) on or before the date that is forty-five (45) days after the Petition Date, the Debtors shall have failed to file a motion seeking an order (the "**Lease Extension Order**") of the Court extending the time period of the Debtors to assume or reject leases to not less than two hundred and ten (210) days after the Petition Date;

(o) on or before the date that is seventy-five (75) days after the Petition Date, the Debtors shall have failed to obtain the entry of the Lease Extension Order;

(p) on the Petition Date, the Debtors shall have failed to file a motion seeking to assume the "**Liquidation Consulting Agreement**";

10

(q) on or before the date that is (i) three (3) days after the Petition Date, the Debtors shall have failed to obtain an interim Order approving assumption of the Liquidation Consulting Agreement (the "**Interim Liquidation Consulting Agreement Order**"), which Order must be in form and substance acceptable to the Prepetition ABL Agents and (ii) thirty (30) days after the Petition Date, the Debtors shall have failed to obtain the entry of a final Order approving assumption of the Liquidation Consulting Agreement (the "**Final Liquidation Consulting Agreement Order**"), which Order must be in form and substance acceptable to the Prepetition ABL Agents; or

(r) any modification, stay, vacatur or amendment to the Interim Liquidation Consulting Agreement Order, Final Liquidation Consulting Agreement Order or the Liquidation Consulting Agreement or any material breach of the Liquidation Consulting Agreement, in each case, unless otherwise approved in writing by the Prepetition ABL Agents.

(ii) Upon written notice by the Prepetition Term Loan Agent the following shall constitute a Termination Event (unless waived by the Prepetition Term Loan Agent):

 (a) the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against the Prepetition Term Loan Credit Parties or any of the Prepetition Collateral or Post-Petition Collateral, in each case constituting Term Loan Priority Collateral;

(b) the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code, or an order of the Canadian Court granting relief or modifying the stay of proceedings in the Initial Canadian Order, (x) to allow any creditor to execute upon or enforce a lien on any Prepetition Collateral or Post-Petition Collateral, in each case constituting Term Loan Priority Collateral, having a fair market value of $250,000, or (y) with respect to any lien of or the granting of any lien on any Prepetition Collateral or Post-Petition Collateral, in each case constituting Term Loan Priority Collateral, to any state or local environmental or regulatory agency or authority;

(c) the commencement of a suit or action against the Prepetition Term Loan Credit Parties by or on behalf of the Debtors or their estates (other than with respect to claims or causes of action described in paragraph 22 hereof);

(d) the entry of an order in the Cases or the Canadian Case granting any other superpriority administrative claim or lien equal or superior to that granted to the Prepetition Term Loan Credit Parties without the prior written consent of the Prepetition Term Loan Agent, other than with respect to (i) the Term Loan Priority Collateral in connection with the Permitted DIP Financing; or (ii) assets owned by any Payless Canada Entity an Administration Charge and the Directors' Charge as defined in the Initial Canadian Order; and

(e) the entry of an order in the Cases avoiding or permitting recovery of any payments made on account of the Prepetition Term Loan Obligations;

(iii) Upon the written notice by any of the Prepetition Agents, the following shall constitute a Termination Event (unless waived by the Prepetition Agent that provided such notice):

(a) the Final Order is not entered prior to the expiration of the Interim Order, and in any event within forty-five (45) days after the Petition Date;

11

|  |  |  |
|---|---|---|
|  | (b) except as set forth in the "first day" orders, the payment of, or application for authority to pay, any prepetition indebtedness or prepetition claim without the Prepetition Agents' prior written consent; <br><br>(c) (1) the appointment of an interim or permanent chapter 11 trustee in the Cases, the appointment of a receiver or an examiner in the Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors, or the appointment of a receiver, receiver and manager or trustee of the Payless Canada Entities; or (2) the sale without the Prepetition Agents' consent of any of the Debtors' assets outside of the ordinary course of business or the Store Closing Sales, either through a sale under section 363 of the Bankruptcy Code or otherwise, including through a confirmed plan of reorganization in the Cases or the Canadian Case, (other than, with respect to the consent of the Prepetition ABL Credit Parties, to the extent such sale provides for the payment in full in cash of the ABL Obligations immediately upon the closing of such sale); <br><br>(d) the dismissal of the Cases or the Canadian Case, or the conversion of the Cases from chapter 11 to chapter 7 of the Bankruptcy Code, or the Debtors shall file a motion or other pleading seeking the dismissal of the Cases under section 1112 of the Bankruptcy Code or otherwise, or the termination of the stay of proceedings in the Canadian Case; and <br><br>(e) the failure of the Debtors to perform any of their obligations under the Interim Order (including, without limitation, the failure to comply with (i) the Budget or the Budget Covenants as set forth in, and in accordance with, paragraph 3 hereof, (ii) the Debtors' Reporting Requirements, including, without limitation delivery of borrowing base certificates (unless waived by the Prepetition ABL Agents) or (iii) their obligation to remit the Adequate Protection Payments when due, the Final Order or the "first-day" cash management order, or any of their material financial obligations under any other order of the Court; <br><br>provided that notwithstanding, the issuance of a Termination Notice by the Prepetition Term Loan Agent, nothing in the Interim Order shall limit or otherwise modify the rights of the Prepetition ABL Agents to consent to use of Cash Collateral as to which the Prepetition Term Loan Credit Parties may not object as provided in the Existing Intercreditor Agreement. |  |
| **Proposed Adequate Protection** <br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iv) | The Prepetition ABL Agents, for the benefit of themselves and the other Prepetition ABL Credit Parties, and the Prepetition Term Loan Agent, for the benefit of the Prepetition Term Loan Credit Parties, are each entitled to receive adequate protection pursuant to sections 361, 363, 364 and 507(b) of the Bankruptcy Code, as set forth in paragraphs 4, 5, 8, 9 and 23 of the Interim Order for any diminution in value of each of their respective interests in the Prepetition Collateral (including Cash Collateral), including as a result of the imposition of the automatic stay, the Debtors' use, sale or lease of the Prepetition Collateral, including Cash Collateral, and the subordination of the Prepetition Liens to the Carve Out ("**Diminution in Value**").  Pursuant to Sections 361, 363, 364 and 507(b) of the Bankruptcy Code, as adequate protection: (i) the Prepetition ABL Lenders will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraph 4 of the Interim Order, (b) current payment of interest on the Prepetition ABL Obligations at the "Default Rate" (as defined in and set forth under the Prepetition ABL Credit Agreement), fees (including, without limitation, all fees set forth in any fee letter), | ¶ I |

12

| | | |
|---|---|---|
| | and expenses (including, without limitation, legal and other professionals' fees and expenses of the Prepetition ABL Agents and other Prepetition ABL Lenders, whether arising before or after the Petition Date), in each case, to the extent set forth under the Prepetition ABL Credit Agreement and (c) principal payments on account of the Prepetition ABL Obligations in accordance with paragraph 7 of the Interim Order; and (ii) the Prepetition Term Loan Lenders will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraph 4 of the Interim Order and, (b) payment of certain legal and other professional fees and expenses subject to and as set forth in paragraph 23 of the Interim Order. | |
| **Carve Out**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The "**Carve Out**" shall consist of the following fees and expenses:  (i) all statutory fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a) plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) all unreimbursed Consultant Fees and all Consultant Controlled Expenses (each as defined in the Consulting Agreement) for which the Consultant has not been reimbursed]; (iv) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all paid and unpaid fees and expenses ("**Allowed Professional Fees**") of the Debtors' and any Statutory Committee's professionals (the "**Case Professionals**"), in each case retained under sections 327, 328, 363 or 1103 of the Bankruptcy Code, as applicable, and the reimbursement of out-of-pocket expenses allowed by the Court and incurred by the members of any Statutory Committee in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) (the "**Committee Expenses**"), incurred at any time prior to the delivery of a Carve Out Trigger Notice (as defined below); provided, however, the Allowed Professional Fees for any Statutory Committee's professionals and Committee Expenses shall be limited to the amount set forth in the Budget; and (v) Allowed Professional Fees of Case Professionals and Committee Expenses in an aggregate amount not to exceed $2,000,000 incurred after the delivery of a Carve Out Trigger Notice to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (v) being the "**Post-Carve Out Trigger Notice Cap**"); provided, however, that the obligations of the Prepetition ABL Credit Parties with respect to the Carve Out set forth in paragraph 18(a) of the Interim Order and in any Final Order shall be and hereby are limited in all respects to the aggregate amount required to be funded into the Professional Fee Escrow Account (as defined in the Interim Order) as set forth in more detail in the Interim Order prior to the earlier of (i) the date of payment in full, in cash, of the ABL Obligations; and (ii) the date of the delivery of a Carve Out Trigger Notice (such amounts, the "**ABL Carve Out Amount**").  No portion of the Carve Out or any Cash Collateral may be used in violation of the Interim Order, including paragraph 18 hereof.  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by either of the Prepetition ABL Administrative Agent or the Prepetition Term Loan Agent to the Debtors, the other Prepetition Agent(s), any Statutory Committee and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of a Termination Event, stating that the Post-Carve Out Trigger Notice | ¶ 18(a) |

| | | |
|---|---|---|
| | Cap has been invoked. On Friday of each week, in accordance with the Budget, so long as no Termination Event has occurred, unless otherwise agreed to by the Prepetition ABL Agents, the Debtors shall cause to be transferred into an escrow account (the "**Professional Fee Escrow Account**") with an escrow agent selected by the Debtors an amount equal to the budgeted fees and expenses of the Case Professionals set forth on the Professional Fee Schedule (x) for the current week and the subsequent week for the first week following the Petition Date and (y) for each week following the first week after the Petition Date, for the subsequent week, in each case as set forth in the then current Budget. The Prepetition ABL Lenders' obligations to fund the ABL Carve Out Amount in accordance with paragraph 18(a) of the Interim Order shall terminate upon the earlier of (x) payment in full, in cash, of the ABL Obligations and (b) delivery by the Prepetition ABL Agents of a Carve Out Trigger Notice. | |
| **Stipulations of the Debtors**<br>Fed. R. Bankr. P. 4001(c)(1)(B)(iii) | The Interim Order contains certain stipulations by the Debtors, among other things, to:<br><br>• the amount of the claims of the Prepetition Credit Parties as of the Petition Date;<br><br>• the collateral, validity and priority of the liens and security interests securing the Prepetition Credit Facilities;<br><br>• the default of the Prepetition ABL Credit Parties and Prepetition Term Loan Parties of their obligations under Prepetition ABL Credit Documents and Prepetition Term Loan Credit Documents, respectively;<br><br>• the fact that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Credit Parties;<br><br>• and the fact that subject only to paragraph 22 of the Interim Order, the Debtors, on their own behalf and on behalf of their respective successors and assigns, waive, release and discharge the Prepetition Credit Parties, and all of their respective affiliates, and all of the directors, officers, employees, attorneys, representatives, agents, predecessors, successors and assigns of the Prepetition Credit Parties and such affiliates, from any and all claims, demands, actions or causes of action (known and unknown) arising out of or in any way relating to any of the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral, to the extent arising on or prior to the date hereof, including but not limited to, claims or challenges under Bankruptcy Code Section 105 or Chapter 5 of the Bankruptcy Code. | ¶ G |
| **Binding Effect of the Debtors' Stipulations on Third Parties**<br>Fed. R. Bankr. P. 4001(b)(1)(B)(iii); | To the extent no Challenge is timely and properly commenced by the Challenge Deadline, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to the Interim Order and any Final Order, become binding, conclusive, and final on any person, entity, or | ¶ 22(b) |

|  | party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary in the Interim Order, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment. To the extent any such Challenge proceeding is timely and properly commenced, the applicable Prepetition Credit Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection. For the avoidance of doubt, nothing in the Interim Order vests or confers on any Statutory Committee or any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved. |  |
|---|---|---|
| **Committee Challenge Deadline**<br><br>Fed. R. Bankr. P. 4001(b)(l)(B) | The admissions, stipulations, agreements, releases, and waivers set forth in the Interim Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, any Statutory Committee that may be appointed in these Cases, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in the Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") by no later than the earliest of: (a) 60 calendar days from the date of entry of the appointment of a Statutory Committee and (b) 75 calendar days from the Petition Date (the "**Challenge Deadline**"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agents (with respect to the Prepetition ABL Credit Documents) and the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Credit Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. | ¶ 22(a) |
| **506(c) Waiver** | Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be | ¶ 25 |

| Fed. R. Bank. P. 4001(c)(1)(B)(x) | charged against the Prepetition Credit Parties, the Prepetition Collateral, or the Post-Petition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Agents, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders. | |
| **Section 552(b) Waiver** Fed. R. Bank. P. 4001(c)(1)(B) | Subject to the entry of the Final Order, the "equities of the case" exception under Bankruptcy Code §552(b) shall not apply to the Prepetition Credit Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral. | ¶ 27 |

## BASIS FOR RELIEF

**I.      The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection Is Appropriate.**

17.      Section 363 of the Bankruptcy Code governs the Debtors' use of property of their estates, including Cash Collateral.[9]  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

18.      Section 363(e) provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a

---

[9] The Bankruptcy Code defines "cash collateral" as follows:

> Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

case-by-case basis. *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985) ("[S]uch matters 'are [to be] left to case-by-case interpretation and development.'"); *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01[1] at 361–66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

19.    The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180–81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

### A.    The Proposed Adequate Protection for the Prepetition Credit Parties Is Sufficient.

20.    As set forth above, the Debtors propose to provide the Prepetition Credit Parties with four primary forms of adequate protection (collectively, the "Adequate Protection"):

> 1.    **Adequate Protection Liens.**    The Debtors will provide adequate protection liens to the Prepetition ABL Administrative Agent, for the benefit of themselves and the other Prepetition ABL Credit Parties, and the Prepetition Term Loan Agent, for the benefit of the other Prepetition Term Loan Credit Parties, to the extent of any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral, subject to the Carve Out and in accordance with the Interim Order.

2.    **Adequate Protection Superpriority Claims.**  The Debtors will grant allowed superpriority administrative claims against the Debtors now existing or hereafter arising in the Cases (subject only to the Carve Out) pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, which administrative claim shall have recourse to and be payable from all postpetition property of the Debtors including, without limitation, subject to entry of the Final Order, the proceeds of any avoidance actions.

3.    **Additional Adequate Protection.**

a.    **Fees and Expenses**.  The Debtors will pay the reasonable and documented fees and expenses incurred by the Prepetition ABL Agents, Prepetition Term Loan Agent and certain Prepetition Term Lender(s) to the extent provided in the Prepetition Documents including without limitation the reasonable and documented fees and expenses of Choate, Hall & Stewart, LLP, Norton Rose Fulbright Canada LLP, Greenberg Traurig LLP and Thompson Coburn LLP, and Mackinac Partners, (the "ABL Professional Fees"), subject to the Budget, Norton Rose Fulbright US LLP and McCarthy Tetrault LLP (the "Term Agent Professional Fees") and, subject to the Budget, Kramer Levin Naftalis & Frankel LLP, Fasken Martineau DuMoulin LLP, Stroock & Stroock & Lavan LLP, AlixPartners, LLP, and Houlihan Lokey (the "Prepetition Term Lender Professional Fees").

b.    **Reporting**.  As additional adequate protection to the Prepetition Credit Parties, the Debtors shall provide the following reporting to the Prepetition Agents, as applicable:

(i)    A weekly Budget Variance Report;

(ii)   A weekly Expense Report, a report listing any accrued but unpaid amounts permitted under and included in prior weeks' Expense Reports, and a report setting forth all sales for the such week;

(iii)  A weekly rolling updated cash flow forecast and budget through May 31, 2019;

(iv)   Financial information and pleadings filed with the Court simultaneously with such filing;

(v)    A weekly report showing the most recent weekly reconciliation completed in

18

accordance with the Liquidation Consulting Agreement;

(vi)     A weekly preparation of all other financial information and reports prepared by the Debtors in the ordinary course of their business and specifically requested by the Prepetition Agents, including any financial information required by the Court or by any applicable operating guidelines and/or reporting requirements of the U.S. Trustee; subject, however, to any applicable attorney-client and/or work-product privileges;

(vii)    Within one Business Day after receipt, any and all reports or notices received by the Debtors from the Liquidation Consultant in accordance with the Liquidation Consulting Agreement, as well as a status report and such other updated information from the Liquidation Consultant as may be reasonably requested by the Prepetition Agents, in form and substance reasonably acceptable to the Prepetition Agents; and

(viii)   All other reports and financial information required to be provided to the Prepetition Agents by the Prepetition Documents or historically provided to the Prepetition Agents, including, without limitation, borrowing base certificates, at such times and in the form customarily provided, inventory mix reports, store count reports, and any additional reports as may be reasonably requested by the Prepetition Agents from time to time.

4.      **Application of Proceeds**. The Prepetition ABL Administrative Agent is hereby authorized and directed, until the occurrence of a Termination Event, (i) to transfer from the Concentration Account to the Debtors' operating account at the Prepetition ABL Administrative Agent (the "Operating Account") an amount equal to the sum of (A) the amount set forth in the Expense Report or otherwise approved by the Prepetition ABL Agents in their sole discretion ("Weekly Budget Payments"), plus (B) an amount necessary to maintain up to $2,500,000 after giving effect to any checks issued in accordance with the Budget for prior weeks which

have yet to clear plus any accrued but unpaid amounts permitted under and included in prior weeks' Expense Reports as determined by the reports delivered pursuant to paragraph 12(b) of the Interim Order ("Weekly Transfers") and (ii) to transfer on a weekly basis all amounts remaining, if any, in the Concentration Account in excess of the sum of the applicable Weekly Budget Payments and Weekly Transfers (the "U.S. Excess Proceeds") to the Prepetition ABL Administrative Agent to be applied in accordance with the terms of the Prepetition ABL Credit Documents until the ABL Obligations have been indefeasibly paid in full in cash.

21.     The Debtors respectfully submit that the proposed Adequate Protection is sufficient to protect the Prepetition Credit Parties from any diminution in value to the Prepetition Collateral during the interim period.  *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).  In light of the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Prepetition Credit Parties is appropriate.  The Debtors' proposed Adequate Protection is not only necessary to protect the Prepetition Credit Parties against any diminution in value, but is also fair and appropriate on an interim basis under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral in the near term for the benefit of all parties in interest and these chapter 11 estates.

## II.     Failure To Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.

22.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  However, the Court is authorized to conduct a preliminary

20

expedited hearing on this motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(b)(2).

23.     The Debtors have an immediate postpetition need to use Cash Collateral. The Debtors cannot operate their businesses and conduct the Store Closing Sales without access to cash.  The Debtors will use cash to, among other things, continue to operate their business to conduct the Store Closing Sales, procure goods and services from vendors of their businesses, pay their employees, pay professionals, and satisfy other working capital needs during these chapter 11 cases.  The Debtors believe that substantially all of their available cash constitutes the Prepetition Credit Parties' cash collateral, as that term is used in section 363(c) of the Bankruptcy Code.  The Debtors will therefore be unable to proceed with these chapter 11 cases without access to Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.  In short, the Debtors' ability to access liquidity through the use of Cash Collateral is vital to preserve and maximize the value of the Debtors' estates.

24.     The Debtors, therefore, seek immediate authority to use the Cash Collateral on an interim basis and as set forth in this motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b). Accordingly, to the extent that the Debtors require the use of Cash Collateral, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

III.    **The Highlighted Provisions Are Appropriate and Justified Under the Circumstances of These Chapter 11 Cases.**

25.    The Debtors believe that each of the Highlighted Provisions is justified and necessary in the context and circumstances of these chapter 11 cases.

A.    **The Scope of the Carve Out Is Appropriate.**

26.    The proposed Adequate Protection is subject to the Carve Out.  Without the Carve Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in these chapter 11 cases would be restricted.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  The Carve Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve Out protects against administrative insolvency during the course of these chapter 11 cases by ensuring that assets remain for the payment of the Clerk of the Court or U.S. Trustee fees and professional fees of the Debtors.

**B.      The Findings of Validity, Perfection, or Amount of Prepetition Liens and Challenge Period Are Appropriate.**

27.      Bankruptcy Rule 4001(b)(1)(B) requires explicit disclosure of each party with an interest in the Prepetition Collateral, the purposes for and duration of the use of the Cash Collateral, and any provisions that bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien.  Here, the concise statement provided in the Interim Order provides adequate disclosure of each of the foregoing, including references to the applicable section of the relevant source documents.

28.      As part of the Interim Order, the Debtors agree and stipulate that the Prepetition ABL Obligations are subject to valid, binding, perfected, enforceable, first priority liens and security interests against the Prepetition ABL Priority Collateral and second priority liens and security interests in the Prepetition Term Priority Collateral.  Further, pursuant to the Interim Order, the Debtors agree and stipulate that the Prepetition Term Loan Obligations are subject to valid, binding, perfected, enforceable, first priority liens and security interests against the Prepetition Term Priority Collateral and second priority liens and security interests in the Prepetition ABL Priority Collateral.  Nonetheless, the Interim Order further provides that, subject to certain limitations, the committee (if any) or any other party in interest, in each case, with requisite standing, may file the appropriate pleadings or commence appropriate proceedings challenging the admissions, stipulations, agreements, releases, and waivers set forth in the Interim Order by no later than the date that is the earlier of: (a) 60 calendar days from the date of entry of the appointment of a Statutory Committee and (b) 75 calendar days from the Petition Date.

**IV.     The Automatic Stay Should Be Modified on a Limited Basis.**

29.     The relief requested herein contemplates a modification of the automatic stay to permit the Debtors to grant the security interests and liens described above to the Prepetition Credit Parties, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens.  Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

30.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, authorizing the Debtors' use of Cash Collateral, subject to the terms and conditions set forth in the Interim Order, granting certain adequate protection to the Prepetition Credit Parties, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses and conduct the Store Closing Sales to maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## REQUEST FOR FINAL HEARING

31.     Pursuant to Bankruptcy Rule 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this motion.

## WAIVER OF BANKRUPTCY RULES 6004(A), 6004(H), AND 4001(A)(3)

32.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  Furthermore, the Debtors request a waiver of the stay of the effectiveness of the order approving this motion under Bankruptcy Rule 4001(a)(3).  Bankruptcy Rule 4001(a)(3) provides that "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." As set forth herein, the use of Cash Collateral is necessary to allow the Debtors to operate their business and transition smoothly into these chapter 11 cases.  Furthermore, allowing the Debtors' use of Cash Collateral will prevent irreparable harm to the Debtors' estates.  Accordingly, the Debtors submit that ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3).

## RESERVATION OF RIGHTS

33.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order or Final Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to Bankruptcy Code section 365; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant

to this motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

**N<small>OTICE</small>**

34.     The Debtors will provide notice of this motion to: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (e) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard) and (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman); (f) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (g) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (h) counsel to any statutory committee appointed in the chapter 11 cases; (i) the United States Attorney's Office for the Eastern District of Missouri; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for all states in which the Debtors conduct business; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**N<small>O</small> P<small>RIOR</small> R<small>EQUEST</small>**

35.     No prior request for the relief sought in this motion has been made to this or any other court.

26

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Cash Collateral

Orders, granting the relief requested herein and such other relief as the Court deems appropriate

under the circumstances.


[*Remainder of page intentionally left blank*]

Dated: February 19, 2019
　　　St. Louis, Missouri

　　　　　　　　　　　　　/s/ *Richard W. Engel, Jr.*
　　　　　　　　　　　　　Richard W. Engel, Jr. MO 34641
　　　　　　　　　　　　　Erin M. Edelman MO 67374
　　　　　　　　　　　　　John G. Willard MO 67049
　　　　　　　　　　　　　**ARMSTRONG TEASDALE LLP**
　　　　　　　　　　　　　7700 Forsyth Boulevard, Suite 1800
　　　　　　　　　　　　　St. Louis, MO 63105
　　　　　　　　　　　　　Telephone: (314) 621-5070
　　　　　　　　　　　　　Facsimile: (314) 612-2239
　　　　　　　　　　　　　rengel@armstrongteasdale.com
　　　　　　　　　　　　　eedelman@armstrongteasdale.com
　　　　　　　　　　　　　jwillard@armstrongteasdale.com

　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　Ira Dizengoff (*pro hac vice* admission pending)
　　　　　　　　　　　　　Meredith A. Lahaie (*pro hac vice* admission pending)
　　　　　　　　　　　　　Kevin Zuzolo (*pro hac vice* admission pending)
　　　　　　　　　　　　　**AKIN GUMP STRAUSS HAUER & FELD LLP**
　　　　　　　　　　　　　One Bryant Park
　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　Telephone: (212) 872-1000
　　　　　　　　　　　　　Facsimile: (212) 872-1002
　　　　　　　　　　　　　idizengoff@akingump.com
　　　　　　　　　　　　　mlahaie@akingump.com
　　　　　　　　　　　　　kzuzolo@akingump.com

　　　　　　　　　　　　　- and -

　　　　　　　　　　　　　Julie Thompson (*pro hac vice* admission pending)
　　　　　　　　　　　　　**AKIN GUMP STRAUSS HAUER & FELD LLP**
　　　　　　　　　　　　　1333 New Hampshire Avenue, N.W.
　　　　　　　　　　　　　Washington, D.C. 20036
　　　　　　　　　　　　　Telephone: (202) 887-4000
　　　　　　　　　　　　　Facsimile: (202) 887-4288
　　　　　　　　　　　　　julie.thompson@akingump.com

　　　　　　　　　　　　　*Proposed Counsel to the Debtors and Debtors in
　　　　　　　　　　　　　Possession*