**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40833-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) | |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Related Docket No.: 11 |

**INTERIM ORDER GRANTING MOTION OF THE
DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
EXISTING BUSINESS FORMS AND (D) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (i) authorizing the Debtors to (a) continue to operate the Cash Management System, (b) honor certain prepetition obligations related thereto, (c) maintain existing business forms and (d) continue to perform Intercompany Transactions consistent with historical practice and granting administrative expense status to Intercompany Claims, (ii) granting related relief and (iii) setting a Final Hearing, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing under the circumstances; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on **March 14, 2019 at 10:00 a.m., prevailing Central Time, in Courtroom 7-North**. Any objections or responses to entry of a final order on the Motion (the "Final Order") shall be filed **on or before 4:00 p.m., prevailing Central Time, on March 7, 2019** and shall be served on: (a) the Debtors, 3231 SE 6th Avenue, Topeka, KS 66607; (b) proposed counsel to the Debtors (i) Akin Gump Strauss Hauer & Feld LLP (Attn: Meredith A. Lahaie, Kevin Zuzolo and Julie Thompson), (ii) Armstrong Teasdale LLP (Attn: Richard W. Engel, Jr., Erin M. Edelman and John G. Willard) and (iii) Cassels Brock & Blackwell LLP (Attn: Ryan Jacobs, Jane Dietrich, Natalie Levine and Monique Sassi); (c) the Office of the United States Trustee for the Eastern District of Missouri; (d) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (e) counsel to the Prepetition ABL Administrative Agent (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (f) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn:

2

Jeffrey M. Wolf); (g) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard), (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (h) counsel to the Prepetition Term Loan Agent, Norton Rose Fulbright US LLP (Attn: Stephen Castro and David Rosenzweig); (i) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (j) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (k) counsel to any statutory committee appointed in the chapter 11 cases; (l) the United States Attorney's Office for the Eastern District of Missouri; (m) the Internal Revenue Service; (n) the United States Securities and Exchange Commission; (o) the state attorneys general for all states in which the Debtors conduct business; (p) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (q) the Banks.  If no objection or response is timely filed and served, the Court may enter the Final Order without need for the Final Hearing.

3. The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System, as described in the Motion; (b) honor their prepetition obligations related thereto; (c) maintain existing business forms; and (d) continue to perform Intercompany Transactions consistent with historical practice, subject to the limitations described in the Motion and this Interim Order.

4. The Debtors are further authorized, in their sole discretion, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit B** attached to the Motion; (b) use, in their present form, all Business Forms (including, without limitation, printed and/or electronic checks,

3

letterhead, correspondence forms, invoices and purchase orders), as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date and thereafter, without reference to the Debtors' status as debtors in possession; *provided, however*, that once the Debtors' existing check stock has been used, the Debtors (other than the Canadian Debtors (as defined below)) shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; (c) treat the Debtors' existing Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers and other debits; and (e) pay any ordinary course Bank Fees incurred in connection with the Debtors' existing Bank Accounts, and to otherwise perform their obligations under the documents governing the Debtors' existing Bank Accounts.

5. Except as otherwise provided in this Interim Order, all Banks at which the Bank Accounts are maintained are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, consistent with prepetition practices and to receive, process, honor and pay any and all checks, drafts, wire transfers and ACH and other transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that the Debtors will instruct the Banks as to which checks, drafts, wire transfers (excluding any wire transfers or ACH Transactions that the Banks are obligated to settle), or other items presented, issued or drawn, shall not be honored. Each of the Debtors' existing depository and disbursement Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Debtors' Bank Accounts which are

4

cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors' Bank Accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

6. All existing deposit agreements and arrangements between the Debtors and their existing depository and disbursement Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect subject to the terms of this Interim Order. The Debtors and the Banks are authorized, and without further order of this Court, to implement such changes to the Cash Management System and procedures in the ordinary course of business and in accordance with the terms of the existing deposit and disbursement agreements and arrangements, including the opening and closing of Bank Accounts.

7. All Banks provided with notice of this Interim Order maintaining any of the Debtors' existing Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

8. Except for those checks, drafts, wires or other ACH transfers that are authorized or required to be honored under an order of the Court, no Debtor shall instruct nor request any

5

Bank to pay or honor any check, draft or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date.

9. Except as otherwise provided in this Interim Order, the Banks are authorized to charge, and the Debtors are authorized, but not directed, to pay, honor or allow, prepetition and postpetition fees, costs, charges and expenses, including the Bank Fees, and charge back returned items, whether such items were deposited prepetition or postpetition, to the Bank Accounts in the ordinary course of business and consistent with prepetition practices. Any such postpetition fees, costs, charges and expenses, including the Bank Fees, or charge-backs that are not so paid shall be entitled to priority as administrative expenses pursuant to Bankruptcy Code section 503(b)(1).

10. The Debtors' credit card processors are authorized to process payments in the ordinary course of business, including the netting out of any fees and/or chargebacks whether arising before or after the Petition Date.

11. Any payment that is authorized by the Debtors and paid from a Bank Account by a Bank before the Petition Date (including any ACH payment such Bank is or becomes obligated to settle), any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, or any reimbursement or charge back for any coin and currency orders provided by the Banks prior to the Petition Date shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

12. Subject to the terms set forth herein, any of the Debtors' Banks may rely on the representations of the Debtors with respect to whether any check, item or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

6

13. Any Banks are further authorized to (a) honor the Debtors' directions with respect to the opening and closing of any Bank Account, including any Bank Accounts necessary to comply with any order authorizing any debtor in possession financing or use of cash collateral, and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided, however*, that the Debtors' Banks shall not have any liability to any party for relying on such representations to the extent such reliance was made in good faith.

14. If any of the Banks honor a prepetition check or other item drawn on any Bank Account that is the subject of this Interim Order (a) at the direction of any Debtor to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, such Bank shall not be deemed to be, nor shall be liable to, the Debtors or their estates or otherwise in violation of this Interim Order.

15. The Debtors are authorized, in their sole discretion, to open any new Bank Accounts or close any existing Bank Accounts as they may deem necessary and appropriate, and any relevant Bank is instructed to honor the Debtors' requests to close such Bank Accounts; *provided, however*, that in the event that the Debtors open or close any Bank Accounts, such opening or closing shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee within 15 days; *provided, further*, that the Debtors shall open such new Bank Account(s) at banks that have executed a uniform depository agreement with the U.S. Trustee's Office or at such banks that are willing to immediately execute such an agreement; *provided, further* that any such new Bank Account(s) opened by the Debtors shall be subject to the terms of this Interim Order.

16. For any Bank maintaining any of the Debtors' existing Bank Accounts that is party to a Uniform Depository Agreement with the U.S. Trustee's Office, within 15 days of entry of this Interim Order, the Debtors shall (a) contact such bank, (b) provide the applicable Debtor's employer identification number and (c) identify each of its accounts held at such bank as being held by a debtor in possession in a bankruptcy case.

17. For Banks at which the Debtors hold Bank Accounts other than Bank Accounts held by the Canadian Debtors (as defined below) that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith effort to cause such Banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within 30 days of the Petition Date. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

18. The Debtors are authorized to deposit their cash in the Bank Accounts consistent with their prepetition practices and the Cash Management System. The Debtors are relieved from the obligations under Bankruptcy Code section 345(b) and the requirements of the U.S. Trustee Guidelines to obtain a bond from any entity with which money is deposited or maintained in the Bank Accounts.

19. The U.S. Trustee Guidelines' requirement to establish separate accounts for tax payments is hereby waived.

20. Notwithstanding anything to the contrary set forth herein, the Debtors are authorized to continue Intercompany Transactions arising from or related to the operation of their business in the ordinary course during these chapter 11 cases (including with respect to netting or setoffs of Intercompany Claims arising from Postpetition Intercompany Transactions); *provided*

8

that each Debtor making an intercompany advance or transfer to any non-Debtor affiliate shall have claims for contribution, reimbursement or otherwise for the full value of the transfer or advance (including cash) against such non-Debtor affiliate to which such intercompany transfers or advances are to be made. In connection with the Intercompany Transactions, the Debtors shall continue to maintain current records with respect to all transfers of cash (including all such advances and transfers from a Debtor to a non-Debtor affiliate) so that all Postpetition Intercompany Transactions may be readily ascertained, traced and properly recorded on intercompany accounts; *provided* that such records shall distinguish between prepetition and postpetition transactions; *provided, further,* that without prior Court approval, the Debtors may not: (i) enter into any intercompany loan agreements, (ii) set off pre-petition intercompany balances against post-petition intercompany balances; or (iii) engage in intercompany capital transactions (dividends or capital contributions); *provided, further,* that with respect to the Canadian Debtors, no pre-petition setoff shall be permitted unless also permitted by the Canadian Court (as defined below).

21. Pursuant to Bankruptcy Code sections 503(b)(1) and 364(b), all Intercompany Claims arising from valid postpetition payments on account of Postpetition Intercompany Transactions made in the ordinary course by (i) Debtors to other Debtors or (ii) non-Debtor affiliates to Debtors shall be accorded administrative expense status, in each case except to the extent that such Postpetition Intercompany Transactions are on account of antecedent debts.

22. Unless prohibited by applicable law, (i) transfers made by Debtors to non-Debtor affiliates and (ii) payments to third parties made by Debtors on behalf of non-Debtor affiliates, each pursuant to Postpetition Intercompany Transactions, shall be deemed claims against, and

9

loans to, such non-Debtor affiliates (and not contributions of capital), in each case except to the extent that such Postpetition Intercompany Transactions are on account of antecedent debts.

23. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract or lease pursuant to Bankruptcy Code section 365; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

24. Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

25. Nothing in this Interim Order shall alter or limit any authorization or relief contained in, or prevent Payless ShoeSource Canada Inc., Payless ShoeSource Canada GP Inc. or Payless ShoeSource Canada LP (the "Canadian Debtors") from taking any action authorized pursuant to an order issued by the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") in proceedings in respect of the Canadian Debtors pursuant to the *Companies' Creditors Arrangement Act* (Canada), and the Canadian Debtors shall be subject to a budget or similar restrictions only as established by the Canadian Court.  To the extent of any inconsistency between this Interim Order and the terms of any order of the Canadian Court, the order of the Canadian Court shall govern with respect to the Canadian Debtors; *provided* that the

relief granted herein does apply to Intercompany Transactions and Intercompany Claims with respect to the Canadian Debtors.

26. Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Interim Order, any authorization contained in this Interim Order, or any claim for which payment is authorized hereunder, shall be subject to any orders of this Court approving any debtor in possession financing for, or any use of cash collateral by, the Debtors and the budget governing such debtor in possession financing and use of cash collateral.

27. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

28. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

29. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

30. All time periods set forth in this Interim Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31. No later than two (2) business days after the date of this Interim Order, the Debtors shall serve a copy of the Interim Order on the Notice Parties and shall file certificate of service no later than 24 hours after service.

*/s/ Kathy A. Surratt-States*
KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED: February 19, 2019
St. Louis, Missouri
jjh

11

**Order Prepared By:**

Richard W. Engel, Jr., MO 34641
Erin M. Edelman, MO 67374
John G. Willard, MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070
Facsimile:  (314) 621-2239
Email:  rengel@armstrongteasdale.com
Email:  eedelman@armstrongteasdale.com
Email:  jwillard@armstrongteasdale.com

Ira Dizengoff (*pro hac vice* admission pending)
Meredith A. Lahaie (*pro hac vice* admission pending)
Kevin Zuzolo (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

Julie Thompson (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Proposed Counsel to the Debtors and Debtors in Possession*