# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) | |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Related Docket No.: 61 |

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363,364, 507 AND 552 (1) AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING AUTOMATIC STAY, AND (4) SCHEDULING A FINAL HEARING

THIS MATTER having come before the Court upon the motion (the "**Motion**") of Payless Inc. (the "**Lead Borrower**") on behalf of itself and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Cases**"), seeking entry of an interim order (the "**Interim Order**"), and a Final Order (as defined herein) pursuant to Sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), 507, and 552 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), *inter alia*:

(i)        authorizing the Debtors' use of the Cash Collateral (as defined in Section 363(a) of the Bankruptcy Code) of the Prepetition Credit Parties (as defined herein);

(ii)        providing adequate protection to the Prepetition Credit Parties (as defined below) for any Diminution in Value (as defined below) to the extent set forth herein;

(iii)        vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

(iv)     scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the Declaration of Stephen Marotta, the Debtors' Chief Restructuring Officer, in support of the chapter 11 petitions and "first day" motions, including the Motion, the exhibits attached thereto, and the arguments of counsel made at the interim hearing held on the Motion (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d); and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     *Petition Date*.  On February 18, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri (the "**Court**") commencing the Cases.

B.      *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee Formation*.  As of the date hereof, the Office of the United States Trustee (the "**U.S. Trustee**") has not yet appointed any official committee in the Cases pursuant to Section 1102 of the Bankruptcy Code (each, a "**Statutory Committee**").

E.      *Canadian Proceeding*.  On February 19, 2019, Payless ShoeSource Canada Inc., a Canadian federal corporation ("**Payless Canada**"), and Payless ShoeSource Canada GP Inc., a Canadian federal corporation ("**Payless Canada GP**") and Payless ShoeSource Canada LP, an Ontario limited partnership, (together with Payless Canada and Payless Canada GP, collectively, the "**Payless Canada Entities**" and, in their capacity as Debtors under the Cases, the "**Canadian Debtors**") commenced proceedings in Canada under the *Companies' Creditors Arrangement Act* (Canada), R.S.C. 1985, c C-36, as amended (the "**Canadian Case**") in the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**").

F.      The Debtors have commenced store closures and related dispositions of inventory and other assets at all store locations in North America (the "**Store Closing Sales**") and, in connection therewith, have engaged a joint venture of Great American Group, LLC, a California limited liability company, and Tiger Capital Group, LLC, a Massachusetts limited liability company (the "**Liquidation Consultant**") as a consultant to conduct the Store Closing Sales

pursuant to that certain Store Closing Program–Consulting Agreement, dated as of February 12, 2019, by and among, *inter alios*, Payless Holdings, LLC, Payless Canada GP, and the Liquidation Consultant (together with (x) all material documents relating thereto and (y) all exhibits, annexes and schedules thereto, in each case, as may be amended, restated, supplemented or otherwise modified from time to time with the consent of the Prepetition Agents (as defined herein) (which consent shall not unreasonably be withheld, delayed or conditioned), the "**Liquidation Consulting Agreement**").

G.    *Debtors' Stipulations*.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 22 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge and agree as follows (paragraphs G(i) through G(xi) below are referred to herein, collectively, as the "**Debtors' Stipulations**"):

(i)    Prepetition ABL Credit Facility.    Pursuant to that certain Credit Agreement, dated as of August 10, 2017 (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the "**Prepetition ABL Credit Agreement**" and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified in accordance with the terms thereof, the "**Prepetition ABL Credit Documents**"),[1] among (a) the Lead Borrower, (b) the other Borrowers, (c) the Guarantors (collectively with the Lead Borrower and the other Borrowers, the "**Prepetition ABL Loan Parties**"), (d) Wells Fargo Bank, National Association, in its capacities as (x) administrative agent and collateral agent for the Lenders (the "**Prepetition ABL Administrative Agent**") and (y) FILO Agent for the FILO Lenders (collectively, together

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the applicable Prepetition Documents (as defined herein) or the Motion, as applicable.

with the Prepetition ABL Administrative Agent, the "**Prepetition ABL Agents**"), and (e) the lenders party thereto from time to time (the "**Prepetition ABL Lenders**" and, together with the Prepetition ABL Agents and other "Credit Parties" (as defined in the Prepetition ABL Credit Agreement), the "**Prepetition ABL Credit Parties**"), the Prepetition ABL Lenders provided revolving credit facility, a FILO loan and other financial accommodations to, and issued letters of credit for the account of, the Borrowers pursuant to the Prepetition ABL Credit Documents (the "**Prepetition ABL Facility**").

(ii)    <u>Prepetition ABL Obligations</u>.  The Prepetition ABL Lenders provided the Borrowers with, among other things, (y) $250,000,000 in aggregate maximum principal amount of revolving loan commitments, including letter of credit and swingline loan commitments, with a sublimit for letters of credit of $50,000,000, and (z) $35,000,000 in aggregate maximum principal amount of FILO loan commitments.  As of the Petition Date, the aggregate principal amount of "Revolving Loans" and "FILO Loans" outstanding under the Prepetition ABL Facility was not less than $159,274,110.50, and the aggregate undrawn amount of all outstanding "Letters of Credit" under the Prepetition ABL Facility was not less than $35,820,933.13 (each as defined in the Prepetition ABL Credit Agreement) (collectively, together with accrued and unpaid interest thereon, and outstanding letters of credit fees, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of

the Borrower's and the Guarantors' obligations pursuant to the Prepetition ABL Credit Documents, including all "Obligations" (as defined in the Prepetition ABL Credit Agreement), the "**Prepetition ABL Obligations**").[2]

   (iii) <u>Prepetition ABL Liens and Prepetition ABL Priority Collateral</u>.  As more fully set forth in the Prepetition ABL Credit Documents, prior to the Petition Date, the Borrowers and certain of the Guarantors granted to the Prepetition ABL Administrative Agent, for the benefit of itself and the Prepetition ABL Lenders, a security interest in and continuing lien on (the "**Prepetition ABL Liens**") substantially all of their assets and property, including, without limitation, (a) a first priority security interest in and continuing lien on the "ABL Priority Collateral" (as defined in the Existing Intercreditor Agreement)  (as defined herein) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition ABL Priority Collateral**"), and (b) a second priority security interest in and continuing lien on the "Term Priority Collateral" (as defined in the Existing Intercreditor Agreement) and proceeds and products thereof (collectively, the "**Prepetition Term Priority Collateral**," and together with the Prepetition ABL Priority Collateral, the "**Prepetition Collateral**").

   (iv) <u>Prepetition Term Loan Agreement</u>.  Pursuant to that certain Term Loan and Guarantee Agreement, dated as of August 10, 2017 (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the "**Prepetition Term Loan Agreement**" and, together with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented or otherwise modified prior to the

---

[2]  Together with any Obligations (as defined in the Prepetition ABL Credit Agreement) arising, accrued, accruing, due, owing or chargeable on or after the Petition Date in accordance with the Prepetition ABL Credit Documents, this Interim Order and any Final Order (such Obligations, the "**Post-Petition ABL Obligations**," and, together with the Prepetition ABL Obligations, the "**ABL Obligations**").

Petition Date, the "**Prepetition Term Loan Credit Documents**," and, together with the Prepetition ABL Credit Documents and the Existing Intercreditor Agreement referred to below, the "**Prepetition Documents**")), by and among (a) WBG – PSS Holdings LLC ("**Holdings**"), (b) the Borrowers party thereto (the "**Prepetition Term Borrowers**"), (c) the Subsidiary Guarantors from time to time party thereto (together with Holdings and the Prepetition Term Borrowers, collectively, the "**Prepetition Term Loan Parties**", and, together with the Prepetition ABL Loan Parties, the "**Prepetition Loan Parties**"), (d) Cortland Products Corp., as Administrative Agent and Collateral Agent (in such capacities, the "**Prepetition Term Loan Agent**" and, together with the Prepetition ABL Agents, the "**Prepetition Agents**"), and (e) the lenders party thereto from time to time (collectively, the "**Prepetition Term Loan Lenders**" and, together with the Prepetition Term Loan Agent, the "**Prepetition Term Loan Credit Parties**", and, together with the Prepetition Agents and Prepetition ABL Lenders collectively referred to herein as the "**Prepetition Credit Parties**"), the Prepetition Term Loan Lenders provided term loans to the Borrowers (the "**Prepetition Term Loan Facility**," and, together with the Prepetition ABL Facility, the "**Prepetition Credit Facilities**").

(v)     Prepetition Term Loan Obligations. The Prepetition Term Loan Facility provided the Borrowers with term loans in the aggregate principal amount of $280,000,000.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility was not less than $277,200,000 (together with accrued and unpaid interest thereon, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in

respect of any of the Borrowers' and the Guarantors' obligations pursuant to the Prepetition Term Loan Credit Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, the "**Prepetition Term Loan Obligations**" and, together with the Prepetition ABL Obligations, the "**Prepetition Obligations**").

(vi)    Prepetition Term Loan Liens and Prepetition Term Priority Collateral.  As more fully set forth in the Prepetition Term Loan Credit Documents, prior to the Petition Date, the Prepetition Term Loan Parties granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, security interests in and continuing liens on (the "**Prepetition Term Loan Liens**," and together with the Prepetition ABL Liens, the "**Prepetition Liens**") substantially all of their assets and property, including, without limitation, (a) first priority security interests in and continuing liens on the Term Priority Collateral, and (b) second priority security interests in and continuing liens on the Prepetition ABL Priority Collateral.

(vii)    Priority of Prepetition Liens; Intercreditor Agreement.  The Prepetition ABL Administrative Agent and the Prepetition Term Loan Agent entered into that certain Intercreditor Agreement dated as of August 10, 2017 (as amended, restated, supplemented, or otherwise modified in accordance with its terms, the "**Existing Intercreditor Agreement**") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition ABL Lenders and the Prepetition Term Loan Lenders with respect to the assets and properties of the Debtors and other applicable obligors.  Each of the Borrowers and Guarantors under the Prepetition Documents acknowledged and agreed to the Existing Intercreditor Agreement.

(viii)    Validity, Perfection and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.  As of the Petition Date(a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were

granted to, or for the benefit of, the Prepetition ABL Administrative Agent for the benefit of itself and the Prepetition ABL Lenders for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Loan Liens on the Prepetition Term Priority Collateral, and (2) certain liens otherwise permitted by the Prepetition ABL Credit Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "**Prepetition Permitted Priority ABL Liens**"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL Loan Parties enforceable in accordance with the terms of the applicable Prepetition ABL Credit Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the

Prepetition ABL Obligations; and (g) the Prepetition ABL Obligations constitute allowed, secured claims within the meaning of Sections 502 and 506 of the Bankruptcy Code.

(ix)    Validity, Perfection and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations. As of the Petition Date: (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Agent for the benefit of Prepetition Term Loan Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral and (2) certain liens otherwise permitted by the Prepetition Term Loan Credit Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "**Prepetition Permitted Priority Term Loan Liens**," and together with the Prepetition Permitted Priority ABL Liens, the "**Prepetition Permitted Priority Liens**");[3] (c) the Prepetition Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Term Loan Parties enforceable in accordance with the terms of the applicable Prepetition Term Loan Credit Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition

---

[3]    Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Priority Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Agents, the Prepetition ABL Lenders, the Prepetition Term Loan Lenders, or any Statutory Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Prepetition Permitted Priority Lien and/or security interests. The right of a seller of goods to reclaim such goods under Section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Priority Lien and is expressly subject to the Prepetition Liens.

Term Loan Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Lenders, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of Sections 502 and 506 of the Bankruptcy Code.

(x)     <u>Default by the Debtors</u>.  The Debtors acknowledge and stipulate that (a) prior to the Petition Date the Prepetition Loan Parties were in default of their obligations under the Prepetition ABL Credit Documents, all Commitments of the ABL Loan Parties were properly terminated and the Prepetition ABL Obligations were properly accelerated and (b) the Prepetition Term Loan Parties are in default of their obligations under the Prepetition Term Loan Credit Documents.

(xi)     <u>Cash Collateral</u>.  All of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Credit Parties.

(xii)   <u>Release by the Debtors</u>.   Subject only to paragraph 22 of this Interim Order, the Debtors, on their own behalf and on behalf of their respective successors and assigns, hereby waive, release and discharge the Prepetition Credit Parties, and all of their respective affiliates, and all of the directors, officers, employees, attorneys, representatives, agents, predecessors, successors and assigns of the Prepetition Credit Parties and such affiliates, from any and all claims, demands, actions or causes of action (known and unknown) arising out of or in any way relating to any of the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral, to the extent arising on or prior to the date hereof, including but not limited to, claims or challenges under Bankruptcy Code Section 105 or Chapter 5 of the Bankruptcy Code.

H.   *<u>Findings Regarding the Use of Cash Collateral</u>.*

(i)   <u>Request for Use of Cash Collateral</u>.   The Debtors seek authority to use Cash Collateral on the terms described herein to administer the Cases and fund their operations in accordance with the Budget (as defined herein), this Interim Order and any Final Order.   At the Final Hearing, the Debtors will seek final approval of the proposed use of Cash Collateral pursuant to a proposed final order which shall be on terms and conditions acceptable to the Prepetition Agents (the "**Final Order**").   Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)   <u>Need for Use of Cash Collateral</u>.   The Debtors' need to use Cash Collateral is immediate and critical to enable the Debtors to continue operations and to administer and preserve the value of their estates.   The ability of the Debtors to maintain business relationships, pay their employees, protect the value of their assets, and otherwise finance their operations requires the availability of funds from the use of Cash Collateral, the

-12-

absence of which would immediately and irreparably harm the Debtors, their estates, their creditors, and equity holders.  The Debtors do not have sufficient available sources of funds and financing to operate their businesses or to maintain their properties in the ordinary course of business without the authorized use of Cash Collateral.

(iii)    Use of Proceeds of Cash Collateral.  As a condition to the authorization to use Cash Collateral, the Prepetition Credit Parties require, and the Debtors have agreed, that Cash Collateral shall be used solely (a) in accordance with the budget (a summary of which is attached as Exhibit A hereto), as the same may be amended, supplemented, or otherwise modified from time to time with the prior written consent of the Prepetition Agents; provided, however, prior to the payment in full, in cash, of the ABL Obligations, only the consent of the Prepetition ABL Agents shall be required to approve any amendments, supplements or modifications of the Budget which pertain to the Store Closing Sales, including the line item "Liquidator Expenses"; provided, further, that the Prepetition ABL Agents shall consult with the Prepetition Term Loan Agent and AlixPartners, LLP on not less than one (1) Business Day's notice prior to consenting to such amendments, supplements or modifications (as so amended, supplemented or otherwise modified from time to time, the "**Budget**"), and, (b) solely with respect to the Payless Canada Entities, in accordance with the budget (a summary of which is attached as Exhibit B hereto), as the same may be amended, supplemented, or otherwise modified from time to time with the prior written consent of the Prepetition Agents; provided, however, prior to the payment in full, in cash, of the ABL Obligations, only the consent of the Prepetition ABL Agents shall be required to approve any amendments, supplements or modifications of the Canadian Budget which pertain to the Store Closing Sales, including the line item "Liquidator Expenses", and provided, further, that the Prepetition ABL Agents shall

-13-

consult with the Prepetition Term Loan Agent and AlixPartners, LLP on not less than one (1)

Business Day's notice prior to consenting to such amendments, supplements or modifications (as

so amended, supplemented or otherwise modified from time to time, the "**Canadian Budget**"),

and, in each instance, subject to such variances as may be permitted thereby, by this Interim

Order and by any Final Order, solely for (i) post-petition operating expenses and other working

capital needs and all other amounts authorized by any "first day" orders, (ii) certain transaction

fees and expenses, (iii) permitted payment of costs of administration of the Cases, including

professional fees, (iv) the Adequate Protection Payments (as defined in paragraph 4(a) herein),

(v) the payment in full in cash of the ABL Obligations, subject to the rights preserved in

paragraph 22 of this Interim Order; and (vi) payment of the Carve Out (as defined herein), which

shall be in accordance with paragraph 18 of this Interim Order.

I.     *Adequate Protection*.  The Prepetition ABL Agents, for the benefit of themselves

and the other Prepetition ABL Credit Parties, and the Prepetition Term Loan Agent, for the

benefit of the Prepetition Term Loan Credit Parties, are each entitled to receive adequate

protection pursuant to sections 361, 363, 364 and 507(b) of the Bankruptcy Code, as set forth in

paragraphs 4, 5, 8, 9 and 23 below for any diminution in value of each of their respective

interests in the Prepetition Collateral (including Cash Collateral), including as a result of the

imposition of the automatic stay, the Debtors' use, sale or lease of the Prepetition Collateral,

including Cash Collateral, and the subordination of the Prepetition Liens to the Carve Out

("**Diminution in Value**").  Pursuant to Sections 361, 363, 364 and 507(b) of the Bankruptcy

Code, as adequate protection: (i) the Prepetition ABL Lenders will receive (a) adequate

protection liens and superiority claims, as more fully set forth in paragraph 4 herein, (b)

current payment of interest on the Prepetition ABL Obligations at the "Default Rate" (as defined

in and set forth under the Prepetition ABL Credit Agreement), fees (including, without limitation, all fees set forth in any fee letter), and expenses (including, without limitation, legal and other professionals' fees and expenses of the Prepetition ABL Agents and other Prepetition ABL Lenders, whether arising before or after the Petition Date), in each case, to the extent set forth under the Prepetition ABL Credit Agreement and (c) principal payments on account of the Prepetition ABL Obligations in accordance with paragraph 7 herein; and (ii) the Prepetition Term Loan Lenders will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraph 4 herein and, (b) payment of certain legal and other professional fees and expenses subject to and as set forth in paragraph 23 herein.

J.      *Sections 506(c) and 552(b)*.  In light of the Prepetition Credit Parties' agreement to consent to the use of Cash Collateral in accordance with the Budget, to subordinate the Prepetition Liens, Adequate Protection Superpriority Claims and the Adequate Protection Liens to the Carve Out, and to fund the Professional Fee Escrow Account (as defined herein), upon entry of the Final Order, the Debtors hereby waive and the Prepetition Credit Parties are deemed to have received a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

K.      *Good Faith*.  The terms of the Cash Collateral arrangement described herein are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Entry of this Interim Order is in the best interests of the Debtors, their estates, and their creditors and equity holders.  The terms concerning the Debtors' use of Cash Collateral, as provided in this Interim Order, were negotiated in good faith and at arms' length between the Debtors and the Prepetition Credit Parties, and the Prepetition Credit Parties' claims, superpriority claims,

-15-

replacement liens and other protections granted pursuant to this Interim Order will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

L.    *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, including:  (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn:  Jeffrey M. Wolf);  (e) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard) and (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman); (f) counsel to the Prepetition Term Loan Agent, Norton Rose Fulbright US LLP (Attn: Stephen Castro and David Rosenzweig) (g) the proposed Monitor, FTI Consulting Canada, Inc.; (h) counsel to the proposed Monitor, Bennett Jones LLP; (i) counsel to any statutory committee appointed in the chapter 11 cases; (j) the United States Attorney's Office for the Eastern District of Missouri; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the state attorneys general for all states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to

permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

M.    <u>Immediate Entry</u>.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry of this Interim Order, the Debtors' businesses, properties and estates would be immediately and irreparably harmed.  This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and stakeholders.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    <u>Use of Cash Collateral Approved</u>.  The use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.    <u>Objections Overruled</u>.  All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

**<u>Authorization to Use Cash Collateral</u>**

3.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use Cash Collateral, on an interim basis and in accordance with the Budget and Canadian Budget, until the earliest of (x) May 10, 2019 unless the ABL Obligations have been paid in, full in cash, on or prior to such date, then July 15, 2019, (y) forty five (45) days after the Petition Date unless a Final Order has been entered and (z) subject to the provisions of paragraph 17, the fifth (5th) Business Day following written notice from the applicable Prepetition Agent of the occurrence of a Termination Event (as defined in paragraph 16 herein) (the "**<u>Termination Date</u>**"); <u>provided</u>, <u>however</u>, that during the Remedies

-17-

Notice Period (as defined herein) the Debtors' use of Cash Collateral shall be limited solely to pay current payroll (other than severance) and to pay accrued expenses critical to the preservation of the value of the Debtors and their estates prior to payment in full, in cash, of the ABL Obligations as agreed to by the Prepetition ABL Agents (or, after the ABL Obligations have been paid in full in cash, the Prepetition Term Loan Agent), each in their sole discretion, as applicable.  In no event shall the Debtors' actual disbursements of the type included in the line items "Total Operating Disbursements" and "Total Restructuring Disbursements" (without giving effect to the line item "Restructuring Professionals" or amounts paid to Restructuring Professionals) in any Test Period (as defined herein) exceed 110% of the aggregate amounts set forth in the Total Operating Disbursements or Total Restructuring Disbursements (without giving effect to the line items "Restructuring Professionals" or "Critical Vendors") as applicable in the then current Budget for such Test Period (the "**Expense Covenant**").  In no event shall the Debtors' actual receipts of the type included in the line item "Total Receipts" in the then current Budget in any Test Period fail to be equal to or greater than 80% of the amount set forth under the line item "Total Receipts" in the then current Budget for such Test Period, commencing with the first full Test Period following the Petition Date (the "**Total Receipts Covenant**" and, together with the Expense Covenant, collectively, the "**Budget Covenant**"). The Budget Covenant shall be tested as of Friday of each week (commencing with the Friday for the second (2nd) full week following the Petition Date) on a cumulative basis from the Petition Date through the third (3rd) full week after the Petition Date, and for each week thereafter on a rolling four (4) week basis (each, a "**Test Period**"), pursuant to the Budget Variance Report (as defined herein) delivered by the Debtors to the Prepetition Agents in accordance with paragraph 12.  Nothing in this Interim Order shall authorize the disposition of

-18-

any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court), or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted by this Interim Order and in accordance with the Budget and the variances set forth above.  Upon the payment in full, in cash, of the ABL Obligations, the then-current Budget shall expire and the Debtors shall deliver a new Budget that, subject to the approval by the Prepetition Term Loan Agent, shall become the new Budget.

        4.      <u>Adequate Protection Payments and Adequate Protection Liens</u>.

        (a)      *Adequate Protection Payments*.  The Prepetition ABL Lenders shall receive adequate protection in the form of (1) payments of interest and Letter of Credit Fees (as defined in the Prepetition ABL Credit Agreement, each of which shall be payable at the applicable Default Rate (as defined in and set forth under the Prepetition ABL Credit Agreement)), fees (including, without limitation, all fees set forth in any fee letter), costs, expenses (including Credit Party Expenses (as defined in the Prepetition ABL Credit Agreement) in accordance with paragraph 23 herein), indemnities and other amounts with respect to the Prepetition ABL Obligations in accordance with the Prepetition ABL Credit Documents, (2) payment of the U.S. Excess Proceeds and Canadian Excess Proceeds as set forth in paragraph 7(a) below (the preceding clauses (1) and (2), collectively, the "**Adequate Protection Payments**").  Such payments shall be applied in accordance with the Prepetition ABL Credit Agreement. The Prepetition Term Loan Lenders shall receive adequate protection in the form of the payment of Prepetition Term Loan Agent Fees (as defined herein) and Prepetition Term Loan Lenders Fees (as defined herein) strictly in accordance with the Budget and paragraph 23.

        (b)      *Adequate Protection Liens*.  Pursuant to sections 361, 363 and 364(d) of the Bankruptcy Code upon entry of this Interim Order and effective as of the Petition

-19-

Date, the Prepetition ABL Administrative Agent, for the benefit of the Prepetition ABL Lenders, and the Prepetition Term Loan Agent, for the benefit of the Prepetition Term Loan Lenders, are each hereby granted continuing, valid, binding, enforceable and automatically perfected replacement liens on and additional security interests in (the "**ABL Adequate Protection Liens**" and the "**Prepetition Term Loan Adequate Protection Liens**," respectively, and, collectively, the "**Adequate Protection Liens**") any and all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, the following (the "**Post-Petition Collateral**"): (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment, goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles, rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action and all substitutions, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, (b) all owned real property interests and all proceeds of leased real property, (c) the proceeds of any avoidance actions brought pursuant to Section 549 of the Bankruptcy Code to recover any post-petition transfer of Prepetition Collateral and, upon entry of a Final Order, proceeds of any other avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code and (d) subject to entry of a Final Order, the Debtors' rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof and including all Prepetition Collateral that was not

-20-

otherwise subject to valid, perfected, enforceable and unavoidable liens on the Petition Date. Notwithstanding the foregoing, the Post-Petition Collateral shall not include the Debtors' real property leases but shall include all proceeds of such leases.

(c)     *Priority of Adequate Protection Liens.*

(i)     Notwithstanding anything to the contrary in the Existing Intercreditor Agreement or otherwise, the priority of the Prepetition Liens, the Adequate Protection Liens, the Prepetition Permitted Priority Liens and the Carve Out shall be as follows: (a) with respect to the Prepetition ABL Priority Collateral: (1) the ABL Carve Out Amount (as defined herein), (2) the Prepetition Permitted Priority Liens, (3) the ABL Adequate Protection Liens, (4) the Prepetition ABL Liens, (5) the Carve Out less the ABL Carve Out Amount, (6) the Prepetition Term Loan Adequate Protection Liens and (7) the Term Loan Prepetition Liens; and (b) with respect to the Term Loan Priority Collateral: (1) the Carve Out, (2) the Prepetition Permitted Priority Liens, (3) the ABL Adequate Protection Liens with respect to Diminution in Value resulting from the use of Cash Collateral not in connection with the disposition of the ABL Priority Collateral, but in any event including the amount of any payments by the Debtors of all Prepetition Term Loan Lenders' and Prepetition Term Loan Agent's legal and other professional fees and expenses paid as set forth herein, (4) the Term Loan Adequate Protection Liens, (5) the Term Loan Prepetition Liens, (6) the ABL Adequate Protection Liens to the extent not satisfied in accordance with clause (3) above, and (7) the Prepetition ABL Liens

(ii)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Cases (a "**Successor Case**"), and shall be valid and enforceable against any trustee appointed

-21-

in any of the Cases or any Successor Case, or upon the dismissal of any of the Cases or any Successor Cases; provided that the ABL Adequate Protections Liens (solely with respect to Term Loan Priority Collateral) and the Term Loan Adequate Protection Liens shall be subject to any liens granted pursuant to a Permitted DIP Financing (as defined herein)   The Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code.   No lien or interest avoided and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

(d)     *Prepetition Indemnity Account*.   Upon entry of the Final Order, the Debtors shall establish a segregated non-interest bearing account at Wells Fargo and in the control of the Prepetition ABL Administrative Agent (the "**Prepetition Indemnity Account**"), into which the sum of $500,000 of Cash Collateral shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition ABL Agents and the other Prepetition ABL Lenders under the Prepetition ABL Credit Documents (the "**Prepetition Indemnity Obligations**").

(i)      The funds in the Prepetition Indemnity Account shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition ABL Agents and the other Prepetition ABL Lenders, in connection with or responding to (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 22 hereof, or (2) any Challenge (as defined herein) against any Prepetition ABL Agent or the other Prepetition ABL Credit Parties related to the Prepetition ABL Credit Documents, the Prepetition ABL Liens, or the Prepetition ABL Obligations, whether in the Cases, any Successor

Case or independently in any other forum, court, or venue, including, without limitation, in the Canadian Case.

(ii)     The Prepetition Indemnity Obligations shall be secured by a first priority lien on the Prepetition Indemnity Account and the funds therein.

(iii)    To the extent the Debtors have not paid the Prepetition Indemnity Obligations in accordance with paragraphs 4(a) and 23 herein, the Prepetition ABL Agents and the other Prepetition ABL Lenders may apply amounts in the Prepetition Indemnity Account against the Prepetition Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, any Statutory Committee, or any other parties in interest and without further order of this Court; provided, however, after such application, the Prepetition ABL Agents shall endeavor to give notice of such application to counsel to the Debtors and counsel to the Prepetition Term Loan Agent.

(iv)    In addition to the establishment and maintenance of the Prepetition Indemnity Account, until the Challenge Deadline (as defined herein) the Prepetition ABL Agents (for themselves and on behalf of the other Prepetition ABL Lenders), shall retain and maintain the Prepetition ABL Liens and the ABL Adequate Protection Liens as security for any Prepetition Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition Indemnity Account.  After the Challenge Deadline has passed, if no Challenge has been brought against the Prepetition ABL Credit Parties and all Prepetition Indemnity Obligations have been paid in full, in cash, all funds in the Prepetition Indemnity Account shall be promptly released to the Debtors.

5.    <u>Adequate Protection Superpriority Claims</u>.

(a)    *Superpriority Claims of Prepetition Credit Parties*.  As further adequate protection of the interests of the Prepetition Credit Parties, upon entry of this Interim Order and effective as of the Petition Date, the Prepetition Credit Parties are hereby granted allowed administrative claims against the Debtors' estates under section 503(b) of the Bankruptcy Code with superpriority pursuant to section 507(b) of the Bankruptcy Code (the **"ABL Adequate Protection Superpriority Claim**" and the "**Prepetition Term Loan Adequate Protection Superpriority Claims**," respectively, and, collectively, the "**Adequate Protection Superpriority Claims**") to the extent of any Diminution in Value of such Prepetition Credit Parties' respective interests in the Prepetition Collateral.

(b)    *Priority of Adequate Protection Superpriority Claims*.

(i)    Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code.  The Adequate Protection Superpriority Claims shall be junior only to the Carve Out.  Notwithstanding anything to the contrary in the Existing Intercreditor Agreement, the ABL Adequate Protection Superpriority Claims shall be senior in priority to the Prepetition Term Loan Adequate Protection Superpriority Claims. Any superpriority claims granted pursuant to the Permitted DIP Financing shall be (i) pari passu with the ABL Adequate Protection

-24-

Superpriority Claims and (ii) senior to the Prepetition Term Loan Adequate Protection Superpriority Claims.

(ii)    Except as provided herein, the Adequate Protection Superpriority Claims shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted in the Cases or in any Successor Case, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Case, or upon the dismissal of any of the Cases or any Successor Cases.  The Adequate Protection Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all Post-Petition Collateral (including, upon entry of the Final Order, the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code).

6.    <u>Budget Maintenance</u>.    The Debtors and the Prepetition Agents are hereby authorized to modify, amend or update the Budget from time to time in their sole discretion without further notice or order of the Court; <u>provided</u>, <u>however</u>, that, prior to the payment in full, in cash, of the ABL Obligations, only the consent of the Prepetition ABL Agents shall be required to approve any modification, amendments, or update of the Budget which pertains to the Store Closing Sales, including the line item "Liquidator Expenses"; <u>provided</u>, <u>further</u>, that the Prepetition ABL Agents shall consult with the Prepetition Term Loan Agent and AlixPartners, LLP prior to consenting to such modifications, amendments, or update <u>provided</u> that the Debtors, shall notify counsel for any Statutory Committee, the U.S. Trustee and FTI Consulting Canada Inc. in its capacity as Monitor of the Payless Canada Entities in the Canadian Case, of any such modifications, amendments or update.

7.    <u>Cash Management; Application of Proceeds of Collateral</u>.

(a)    The Debtors shall maintain their cash management system as in effect as of the Petition Date.  The "DIP Deposit Account" (as defined herein) shall not be subject to the Debtors' cash management system and such deposit account thereof shall not constitute Prepetition Collateral or Post-Petition Collateral. All proceeds from any disposition, sale or casualty of any Prepetition ABL Priority Collateral or Post-Petition Collateral (including any Store Closing Sale) or any Prepetition Term Priority Collateral sold in connection with any Store Closing Sale shall continue to be deposited into deposit accounts subject to the Debtors' existing cash management system and transferred to the Concentration Account.  Notwithstanding the foregoing, prior to indefeasible payment in full, in cash, of the ABL Obligations, on Tuesday of each week (or on a different day of any week mutually agreeable to the Prepetition ABL Administrative Agent and the Debtors), the Debtors shall deliver to the Prepetition ABL Administrative Agent a report, in a form agreed to by the Debtors and Prepetition Agents, showing the Debtors' proposed payments for the following week, which payments shall not exceed the sum of (i) 110% in the aggregate of the amounts set forth in the then current Budget for the following week; (ii)  proposed "Critical Vendor Payments" (as defined in the Budget); provided that the aggregate weekly "Critical Vendor Payments" together with the proposed "Critical Vendor Payments" shall not exceed the total aggregate amount of all "Critical Vendor Payments" set forth in the Budget, and provided further that no "Critical Vendor Payments" shall be used to purchase inventory; (iii) all amounts due to the Liquidation Consultant pursuant to the Liquidation Consulting Agreement (as defined herein) for the week then ended; and (iv) an amount equal to 6.50% of the aggregate inventory sales at the Debtors' U.S. brick and mortar and ecommerce locations for the week then ended (such report, the "**Expense Report**"). Additionally the Expense Report delivered on February 19, 2019 "**Week One Expenses**

**Report**") shall include an estimated amount of all sales taxes incurred but not paid prior to the Petition Date with respect to inventory sales at the Debtors' U.S. brick and mortar and ecommerce locations. To the extent that on February 19, 2019 there are insufficient funds on deposit in the Concentration Account and Operating Account to satisfy the funding request set forth in the Week One Expenses Report, the Prepetition ABL Administrative Agent may transfer to the Operating Account additional funds received in the Concentration Account during the first week of the Cases in order to satisfy such funding request. Notwithstanding any line item in the Budget, the Debtors are not authorized to and shall not use any Cash Collateral to purchase any inventory or pay any cost or expenses in connection with the purchase, importation or handling of such inventory ("**Inventory Related Expenses**"), and such cost and expenses shall not be included in the Expense Report. All such Inventory Related Expenses shall be paid solely with the proceeds of Permitted DIP Financing (as defined herein.) The Debtors shall not incur any Inventory Related Expenses until such time as the Debtors have caused to be deposited into the Operating Account (as defined herein) from amounts on deposit in the DIP Deposit Account amounts at least equal to the projected Inventory Related Expenses. The Prepetition ABL Administrative Agent is hereby authorized and directed, until the occurrence of a Termination Event, (i) to transfer from the Concentration Account to the Debtors' operating account at the Prepetition ABL Administrative Agent ending in -5863 (the "**Operating Account**") an amount equal to the sum of (A) the amount set forth in the Expense Report or otherwise approved by the Prepetition ABL Agents in their sole discretion ("**Weekly Budget Payments**"), plus (B) an amount necessary to maintain up to $2,500,000 after giving effect to any checks issued in accordance with the Budget for prior weeks which have yet to clear plus any accrued but unpaid amounts permitted under and included in prior weeks' Expense Reports as determined by the

reports delivered pursuant to paragraph 12(b) herein ("**Weekly Transfers**") and (ii) to transfer on a weekly basis all amounts remaining, if any, in the Concentration Account in excess of the sum of the applicable Weekly Budget Payments and Weekly Transfers (the "**U.S. Excess Proceeds**") to the Prepetition ABL Administrative Agent to be applied in accordance with the terms of the Prepetition ABL Credit Documents until the ABL Obligations have been indefeasibly paid in full in cash.  For the for the avoidance of doubt, once funds are transferred in to the Operating Account, such funds and all other amounts therein shall not be subject to the cash sweep referred to in the immediately preceding sentence.  The Expense Report shall also include the Debtors' proposed payments for the following week in the amounts set forth in the then current Canadian Budget, subject to the variances set forth in this paragraph 7(a).  On Tuesday of each week (or on a different day of the week mutually agreeable to the Prepetition ABL Administrative Agent and the Debtors), the Prepetition ABL Administrative Agent is hereby authorized and directed, until the occurrence of a Termination Event, to transfer from any accounts maintained in the Debtors' existing cash management system in Canada, the "Canadian Excess Proceeds" as such term is defined in the Interim Canadian Order to be applied in accordance with the terms of the Prepetition ABL Credit Documents until the ABL Obligations have been paid in full in cash.

(b)     Upon expiration of the Remedies Notice Period, all amounts in the Concentration Account shall be applied by the Prepetition ABL Administrative Agent in accordance with the terms of the Prepetition ABL Credit Documents.

(c)     The Prepetition ABL Administrative Agent may, at any time, send notice to the Debtors' depository banks to authorize and direct such banks to direct all available funds to any Blocked Account or the Concentration Account at such times as the Prepetition ABL

-28-

Administrative Agent may direct in writing to such banks.  Each of the Debtors' depository banks is hereby authorized and directed to comply with any and all orders, notices, requests and other instructions originated by the Prepetition ABL Administrative Agent directing disposition of funds in accordance with the Budget, the Prepetition ABL Credit Documents and this Interim Order. For the avoidance of doubt, the DIP Deposit Account shall not be subject to the provisions of this paragraph.

8.      Modification of Automatic Stay.  The automatic stay imposed under Bankruptcy Code Section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims, make the Adequate Protection Payments, and apply proceeds in accordance with paragraph 7.

9.      Automatic Perfection of Adequate Protection Liens.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, filing of Uniform Commercial Code financing statements, mortgages, assignments, notices of lien and similar documents, and entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Credit Parties to the priorities granted herein.

10.      Permitted DIP Financing.  Until the payment in full, in cash, of the ABL Obligations, if the Debtors, any trustee, any examiner with enlarged powers, any responsible

officer, or any other estate representative subsequently appointed in the Cases, any Successor Case or the Canadian Case shall seek to obtain credit or incur debt secured by any Prepetition Collateral or Post-Petition Collateral ("**DIP Financing**"), (a) such DIP Financing shall be on terms and conditions customary for financings of its type and reasonably acceptable to the Prepetition ABL Agents; (b) unless the Prepetition ABL Agents otherwise agree in their respective sole discretion, any security interest granted in connection therewith shall be junior in priority to the ABL Adequate Protection Liens and the Prepetition ABL Liens with respect to the Prepetition ABL Priority Collateral; and (c) unless the Prepetition Term Agent otherwise agrees, any security interest granted in connection therewith shall be junior in priority to the Term Adequate Protection Liens and the Prepetition Term Liens with respect to the Prepetition Term Priority Collateral (such financing a "**Permitted DIP Financing**").  Proceeds derived from any Permitted DIP Financing shall be deposited by the Debtors in a segregated deposit account (the "**DIP Deposit Account**") and shall be used solely for the purpose of funding Inventory Related Expenses and other purposes permitted by such Permitted DIP Financing.

11.     Compliance With Prepetition Documents and Prepetition Credit Facilities.  As further adequate protection of the Prepetition Credit Parties' respective security interests in the Cash Collateral, the Debtors shall comply with all of the terms and provisions of the applicable Prepetition Documents (as modified herein), including the maintenance of adequate insurance, the maintenance of the Debtors' existing cash management system and the payment of taxes as required by the Prepetition Documents, and, subject to the prior consent of the Prepetition Agents in their respective sole discretion, the payment of all allowed claims that could result in a lien on the Prepetition Collateral or the Post-Petition Collateral having priority over the liens of the Prepetition Credit Parties.  The requirements of this Interim Order shall be in addition to, and

not in substitution for, the terms and provisions of the Prepetition Documents; provided, however, in the event of any inconsistency between the Prepetition Documents and this Interim Order, the terms of this Interim Order shall control; and provided further, nothing contained herein shall require the Debtors to take certain actions under the Prepetition Documents that would be prohibited by the provisions of the Bankruptcy Code, unless permitted by this Interim Order.

12.     Financial Information and Reporting Requests.  As additional adequate protection of the Prepetition Credit Parties' respective security interests in the Cash Collateral, the Debtors shall allow the Prepetition Agents and their representatives reasonable access during business hours to the premises, officers, employees, auditors, appraisers, financial advisors, and the books and records of the Debtors, upon reasonable advance written notice in order to conduct appraisals (including, without limitation, the performance of weekly desktop appraisals in form and substance acceptable to the Prepetition Agents), analyses, and audits of the Prepetition Collateral, the Post-Petition Collateral, and the Debtors' financial affairs, and shall otherwise cooperate in providing any other financial information reasonably requested by the Prepetition Agents, all at the cost and expense of the Debtors (other than information that is subject to attorney-client or similar privilege or constitutes attorney work product).  The Debtors shall furnish to the Prepetition Agents such financial and other information as the Prepetition Agents shall reasonably request.  The Debtors as and when required shall furnish to the Prepetition Agents each of the following financial reports (collectively, the "**Debtors' Reporting Requirements**"):

(a)     On or before noon Central Time on each Wednesday, a report showing the Debtors' cash receipts and disbursements for the immediately preceding weekly period, and

cumulatively for all preceding weeks after the Petition Date, covered by the Budget and Canadian Budget, as well as a report showing any and all variances (on a line item basis and whether a positive or negative variance) (the "**Budget Variance Report**");

(b)    On or before noon Central Time on each Wednesday, the Expense Report, a report listing any checks issued in accordance with the Budget and Canadian Budget for prior weeks which have yet to clear, a report listing any accrued but unpaid amounts permitted under and included in prior weeks' Expense Reports; and a report setting forth all sales for the such week;

(c)    On or before noon Central Time on each Wednesday, a rolling updated cash flow forecast through May 31, 2019;

(d)    Any financial information and pleadings filed with the Court shall be served upon each of the Prepetition Agents and their respective counsel simultaneously with the filing of such information or pleading with the Court;

(e)    On or before noon Central Time on each Wednesday, a report showing the most recent weekly reconciliation completed in accordance with the Liquidation Consulting Agreement;

(f)    On or before noon Central Time on each Wednesday, all other financial information and reports prepared by the Debtors in the ordinary course of their business and specifically requested by the Prepetition Agents, including any financial information required by the Court or by any applicable operating guidelines and/or reporting requirements of the U.S. Trustee; subject, however, to any applicable attorney-client and/or work-product privileges;

(g)    Within one Business Day after receipt, any and all reports or notices received by the Debtors from the Liquidation Consultant in accordance with the Liquidation

Consulting Agreement, as well as a status report and such other updated information from the Liquidation Consultant as may be reasonably requested by the Prepetition Agents, in form and substance reasonably acceptable to the Prepetition Agents; and

(h)    All other reports and financial information required to be provided to the Prepetition Agents by the Prepetition Documents or historically provided to the Prepetition Agents, including, without limitation, borrowing base certificates, at such times and in the form customarily provided, inventory mix reports, store count reports, and any additional reports as may be reasonably requested by the Prepetition Agents from time to time.

13.    <u>Retention of Consultants; Communication with Financial Advisors.</u>

(a)    The Prepetition Agents shall have received evidence by no later than two (2) Business Days following the Petition Date, that the Debtors have filed motions seeking to retain PJ Solomon, Ankura Consulting Group, LLC and Malfitano Partners (collectively, the "**<u>Financial Advisors</u>**").  Subject to Court approval, to be obtained by no later than thirty (30) days after the Petition Date, the Debtors shall continue to retain such Financial Advisors each of which shall continue to perform their duties and roles substantially as contemplated by such Financial Advisor's engagement letter. The Debtors shall not terminate the engagement of such Financial Advisors without the consent of the Prepetition Agents, which consent shall not unreasonably be withheld, delayed or conditioned.  The Debtors shall continue to retain such Financial Advisors to assist the Debtors with the preparation of the Budget and the other financial and collateral reporting required to be delivered to the Prepetition Agents pursuant to the Prepetition Documents, the Liquidation Consulting Agreement, this Interim Order and any Final Order, and approval of all requests for use of Cash Collateral and disbursements by the Debtors.

(b)      The Debtors authorize the Prepetition Agents and their respective Lender Group Consultants (as defined herein)  to communicate directly with and make information request of the Financial Advisors and authorize and shall instruct the Financial Advisors to communicate to the Prepetition Agents and their respective Lender Group Consultants and provided requested information relating to the Debtors with respect to their business, results of operations, prospects and financial condition.  The Debtors acknowledge and agree that the Debtors and their representatives will reasonably cooperate with the Financial Advisors and any Lender Group Consultant.  The Financial Advisors shall participate in weekly telephonic calls with the Prepetition Agents (and/or their advisors and counsel) to discuss various matters, including, without limitation, the Budget, budget variance, Store Closing Sales and bankruptcy milestones upon the reasonable request of any Prepetition Agents.

(c)      The Debtors acknowledge that the Prepetition Agents shall be permitted to engage AlixPartners, LLP, Houlihan Lokey and Mackinac Partners (each, a "**Lender Group Consultant**"), for the sole benefit of the applicable Prepetition Agent, as the applicable Prepetition Agent may determine to be necessary or appropriate, in its sole discretion.  The Debtors covenant and agree that (i) the Debtors shall cooperate with any Lender Group Consultant (including, without limitation, providing access to the Debtors' books and records), (ii) all reasonable and documented out-of-pocket costs and expenses of any such Lender Group Consultant shall be deemed expenses payable pursuant to paragraphs 4(a) and 23 and required to be paid by the Debtors under the Prepetition Documents, this Interim Order and any Final Order; and (iii) all reports, determinations and other written and verbal information provided by any Lender Group Consultant shall be confidential and the Debtors shall not be entitled to have access to same.

14.    <u>Disposition of Collateral; Rights of Prepetition Credit Parties</u>.  Unless otherwise authorized by the Court, and, where applicable, the Canadian Court, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or the Post-Petition Collateral other than sales of inventory and collection of accounts receivables in accordance with the Liquidation Consulting Agreement (as defined herein).  Nothing provided herein shall limit the rights of the Prepetition Credit Parties to object to any proposed disposition of the Prepetition Collateral or the Post-Petition Collateral.

15.    <u>Termination Date</u>.  On the Termination Date, all authority to use Cash Collateral shall cease and, subject to the Existing Intercreditor Agreement, the Prepetition Credit Parties may exercise any rights and remedies provided to the Prepetition Credit Parties under the Prepetition Documents or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Interim Order and the Final Order; <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 3 herein.

16.    <u>Termination Event</u>.  Upon written notice from the applicable Prepetition Agent, the occurrence of any of the following (unless waived by the applicable Prepetition Agent) shall constitute a "**<u>Termination Event</u>**" under this Interim Order:

(i) Upon written notice by the Prepetition ABL Agents (or after the ABL Obligations have been paid in full in cash, the Prepetition Term Loan Agent) the following shall constitute a Termination Event (unless waived by the Prepetition ABL Agents, or after the ABL Obligations have been paid in full in cash, in which case unless waived by the Prepetition Term Loan Agent):

(a)    the Debtors shall, without the Prepetition Agents' prior written consent, file a motion with the Court or the Canadian Court seeking the authority to liquidate any of the

Debtors' assets or capital stock except for the closure of the North American stores through Store Closing Sales as described in the Liquidation Consulting Agreement (as defined herein);

(b)    other than in connection with the payment in full in cash of the ABL Obligations, the bringing of a motion, taking of any action or the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtors in the Cases or the Canadian Case: (A) to obtain financing other than any Permitted DIP Financing as set forth in paragraph 10 herein; (B) except as provided in the Initial Canadian Order (as defined herein) to grant any lien other than (i) Prepetition Permitted Priority Liens upon or affecting any Prepetition Collateral or Post-Petition Collateral or (ii) in connection with a Permitted DIP Financing; (C) except as provided in this Interim Order or in the Final Order, as the case may be, to use Cash Collateral under Section 363(c) of the Bankruptcy Code without the prior written consent of the Prepetition Agents; or (D) that seeks to prohibit the Prepetition ABL Credit Parties from credit bidding on any or all of the Debtors' assets during the pendency of the Cases;

(c)    other than in connection with the payment in full in cash of the ABL Obligations, the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure statement, by the Debtors or any other person to which the Prepetition ABL Credit Parties do not consent or otherwise agree to the treatment of their claims;

(d)    the entry of an order in the Cases or the Canadian Case confirming a plan of reorganization or liquidation that (A) is not acceptable to the Prepetition ABL Agents in their sole discretion or (B) does not contain a provision for repayment in full in cash of all of the ABL Obligations on or before the effective date of such plan or plans;

(e)      the entry of an order amending, supplementing, staying, vacating, or otherwise modifying the Prepetition ABL Credit Documents or this Interim Order, the Final Order, the Debtors' "first-day" cash management order or the initial order of the Canadian Court in the Canadian Case (the "**Initial Canadian Order**") without the written consent of the Prepetition ABL Agents or the filing of a motion for reconsideration with respect to this Interim Order or the Final Order, or this Interim Order, the Final Order, such cash management order or the Initial Canadian Order shall otherwise not be in full force and effect;

(f)      the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against the Prepetition ABL Credit Parties or any of the Prepetition Collateral or Post-Petition Collateral, in each case constituting ABL Priority Collateral;

(g)      the entry of an order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code, or an order of the Canadian Court granting relief or modifying the stay of proceedings in the Initial Canadian Order, (x) to allow any creditor to execute upon or enforce a lien on any Prepetition Collateral or Post-Petition Collateral, in each case constituting ABL Priority Collateral, having a fair market value of $250,000, or (y) with respect to any lien of or the granting of any lien on any Prepetition Collateral or Post-Petition Collateral, in each case constituting ABL Priority Collateral, to any state or local environmental or regulatory agency or authority;

(h)      the commencement of a suit or action against the Prepetition ABL Credit Parties by or on behalf of the Debtors or their estates (other than with respect to claims or causes of action described in paragraph 22 hereof);

(i)    the entry of an order in the Cases avoiding or permitting recovery of any payments made on account of the ABL Obligations;

(j)    any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) shall be deemed or treated in the Cases, any Successor Case or the Canadian Case as a Prepetition Permitted Priority Lien with a fair market value in excess of $250,000

(k)    the failure of the Canadian Debtors to pay the Canadian Excess Proceeds as and when due, or, without the prior written approval of the Prepetition ABL Agents and prior to the payment in full in cash of the ABL Obligations, or the failure to obtain, on or before the date that is seven (7) days after the Petition Date, an order from the Canadian Court approving the payment of Canadian Excess Cash Proceeds as set forth in paragraph 7(a);

(l)    without limiting the requirements set forth in paragraph 16(i)(e), the failure of the Canadian Debtors to perform any of their obligations under this Interim Order or any order issued by the Canadian Court (including, without limitation, to comply with Canadian Budget or the occurrence of any material interruption or cessation of the Store Closing Sales that are being conducted in Canada pursuant to the Liquidation Consulting Agreement (as defined herein)), or the entry of an order converting the Canadian Case;

(m)    the entry of an order in the Cases or the Canadian Case granting any other superpriority administrative claim or lien equal or superior to that granted to the Prepetition ABL Credit Parties without the prior written consent of the Prepetition ABL Agents other than with respect to (i) the Term Loan Priority Collateral in connection with the Permitted DIP Financing; or (ii) with respect to assets owned by any Payless Canada Entity an Administration Charge and the Directors' Charge as defined in the Initial Canadian Order;

(n)       on or before the date that is forty-five (45) days after the Petition Date, the Debtors shall have failed to file a motion seeking an order (the "**Lease Extension Order**") of the Court extending the time period of the Debtors to assume or reject leases to not less than two hundred and ten (210) days after the Petition Date;

(o)       on or before the date that is seventy-five (75) days after the Petition Date, the Debtors shall have failed to obtain the entry of the Lease Extension Order;

(p)       on the Petition Date, the Debtors shall have failed to file a motion seeking to assume the "**Liquidation Consulting Agreement**";

(q)       on or before the date that is (i) three (3) days after the Petition Date, the Debtors shall have failed to obtain an interim Order approving assumption of the Liquidation Consulting Agreement (the "**Interim Liquidation Consulting Agreement Order**"), which Order must be in form and substance acceptable to the Prepetition ABL Agents and (ii) thirty (30) days after the Petition Date, the Debtors shall have failed to obtain the entry of a final Order approving assumption of the Liquidation Consulting Agreement (the "**Final Liquidation Consulting Agreement Order**"), which Order must be in form and substance acceptable to the Prepetition ABL Agents; or

(r)       any modification, stay, vacatur or amendment to the Interim Liquidation Consulting Agreement Order, Final Liquidation Consulting Agreement Order or the Liquidation Consulting Agreement or any material breach of the Liquidation Consulting Agreement, in each case, unless otherwise approved in writing by the Prepetition ABL Agents.

(ii)      Upon written notice by the Prepetition Term Loan Agent the following shall constitute a Termination Event (unless waived by the Prepetition Term Loan Agent):

(a)    the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against the Prepetition Term Loan Credit Parties or any of the Prepetition Collateral or Post-Petition Collateral, in each case constituting Term Loan Priority Collateral;

(b)    the entry of an order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code, or an order of the Canadian Court granting relief or modifying the stay of proceedings in the Initial Canadian Order, (x) to allow any creditor to execute upon or enforce a lien on any Prepetition Collateral or Post-Petition Collateral, in each case constituting Term Loan Priority Collateral, having a fair market value of $250,000, or (y) with respect to any lien of or the granting of any lien on any Prepetition Collateral or Post-Petition Collateral, in each case constituting Term Loan Priority Collateral, to any state or local environmental or regulatory agency or authority;

(c)    the commencement of a suit or action against the Prepetition Term Loan Credit Parties by or on behalf of the Debtors or their estates (other than with respect to claims or causes of action described in paragraph 22 hereof);

(d)    the entry of an order in the Cases or the Canadian Case granting any other superpriority administrative claim or lien equal or superior to that granted to the Prepetition Term Loan Credit Parties without the prior written consent of the Prepetition Term Loan Agent, other than with respect to (i) the Term Loan Priority Collateral in connection with the Permitted DIP Financing; or (ii) assets owned by any Payless Canada Entity an Administration Charge and the Directors' Charge as defined in the Initial Canadian Order; and

(e)    the entry of an order in the Cases avoiding or permitting recovery of any payments made on account of the Prepetition Term Loan Obligations;

(iii)    Upon the written notice by any of the Prepetition Agents, the following shall constitute a Termination Event (unless waived by the Prepetition Agent that provided such notice):

(a)    the Final Order is not entered prior to the expiration of this Interim Order, and in any event within forty-five (45) days after the Petition Date;

(b)    except as set forth in the "first day" orders, the payment of, or application for authority to pay, any prepetition indebtedness or prepetition claim without the Prepetition Agents' prior written consent;

(c)    (1) the appointment of an interim or permanent chapter 11 trustee in the Cases, the appointment of a receiver or an examiner in the Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors, or the appointment of a receiver, receiver and manager or trustee of the Payless Canada Entities; or (2) the sale without the Prepetition Agents' consent of any of the Debtors' assets outside of the ordinary course of business or the Store Closing Sales, either through a sale under Section 363 of the Bankruptcy Code or otherwise, including through a confirmed plan of reorganization in the Cases or the Canadian Case, (other than, with respect to the consent of the Prepetition ABL Credit Parties, to the extent such sale provides for the payment in full in cash of the ABL Obligations immediately upon the closing of such sale);

(d)    the dismissal of the Cases or the Canadian Case, or the conversion of the Cases from chapter 11 to chapter 7 of the Bankruptcy Code, or the Debtors shall file a motion or other pleading seeking the dismissal of the Cases under section 1112 of the Bankruptcy Code or otherwise, or the termination of the stay of proceedings in the Canadian Case; and

-41-

(e)    the failure of the Debtors to perform any of their obligations under this Interim Order (including, without limitation, the failure to comply with (i) the Budget or the Budget Covenants as set forth in, and in accordance with, paragraph 3 hereof, (ii) the Debtors' Reporting Requirements, including, without limitation delivery of borrowing base certificates (unless waived by the Prepetition ABL Agents) or (iii) their obligation to remit the Adequate Protection Payments when due), the Final Order or the "first-day" cash management order, or any of their material finanacial obligations under any other order of the Court;

provided that notwithstanding, the issuance of a Termination Notice by the Prepetition Term Loan Agent, nothing herein shall limit or otherwise modify the rights of the Prepetition ABL Agents to consent to use of Cash Collateral as to which the Prepetition Term Loan Credit Parties may not object as provided in the Existing Intercreditor Agreement.

17.    <u>Rights and Remedies Following Termination Event</u>.

(a)    *Termination.* Immediately upon the occurrence and during the continuance of a Termination Event, but subject to the immediately succeeding sentence, prior to the payment in full, in cash, of the ABL Obligations, the Prepetition ABL Agents may exercise their intent to terminate and, following the payment in full, in cash, of the ABL Obligations, the Prepetition Term Loan Agent may exercise their intent to terminate, the Debtors' authority to use Cash Collateral by providing written notice as set forth in paragraph 17(b) (such notice, a "**Termination Notice**"). Five (5) Business Days after the issuance of a Termination Notice to the Debtors, the Debtors' ability to use Cash Collateral shall be terminated, reduced or restricted on the terms set forth in the Termination Notice, and the application of the Carve Out shall occur through the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtors. Without limiting the foregoing, the applicable Prepetition Agent(s) may, upon the occurrence of a

Termination Event and subject to the terms and conditions of paragraph 31 herein, (i) enter onto the premises of the Debtors in connection with an orderly liquidation of such collateral; and (ii) exercise any rights and remedies provided to the Prepetition Agents under the Prepetition Documents, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Interim Order and any Final Order; provided, however, that upon the occurrence of a Canadian Termination Event and the delivery of a Termination Notice as set forth in this paragraph 17(a), any exercise by the Prepetition Agents of any rights and remedies under the Prepetition Documents, this Interim Order or any Final Order,  shall be subject to a further order of, the Canadian Court authorizing and permitting the enforcement of such rights and remedies with respect to any Prepetition Collateral or Post-Petition Collateral located in Canada.

(b)      *Notice of Termination*.   Any Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Term Loan Agent (if delivered by the Prepetition ABL Agents), counsel to any Statutory Committee (if appointed) and the U.S. Trustee (the earliest date any such Termination Notice is sent shall be referred to herein as the "**Termination Notice Date**").  The automatic stay in the Cases otherwise applicable to the Prepetition Credit Parties is hereby modified so that five (5) Business Days after the Termination Notice Date (the "**Remedies Notice Period**"): the applicable Prepetition Agent(s) shall be entitled to exercise their rights and remedies to satisfy the relevant Prepetition Obligations, Adequate Prepetition Superpriority Claims and Adequate Protection Liens, subject to and consistent with (i) the Carve Out, (ii) this Interim Order, (iii) any Final Order and (iv) the Existing Intercreditor Agreement.  Following the Termination Notice Date, the only basis on which the Debtors and/or any Statutory Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court shall be

to contest whether a Termination Event has occurred and/or is continuing or whether, after delivery of a Termination Notice by the Prepetition Term Loan Agent, the Debtors and the Prepetition ABL Agents may agree to the use of Cash Collateral upon terms and conditions as to which the Prepetition Term Loan Credit Parties may not object in accordance with the Existing Intercreditor Agreement, and the Prepetition Agents shall consent to such emergency hearing. Unless the Court orders otherwise, the automatic stay, as to all the Prepetition Credit Parties shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the applicable Prepetition Agent(s) shall be permitted to exercise all remedies set forth herein, in the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the Existing Intercreditor Agreement.

18. <u>Carve Out</u>.

(a) *Carve Out.* As used in this Interim Order, the "**Carve Out**" shall consist of the following fees and expenses: (i) all statutory fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a) plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) all Consulting Fees and Consultant Controlled Expenses (each as defined in the Consulting Agreement), in each case, for which the Consultant has not been reimbursed; (iv) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all paid and unpaid fees and expenses ("**Allowed Professional Fees**") of the Debtors' and any Statutory Committee's professionals (the "**Case Professionals**"), in each case retained under Sections 327, 328, 363 or 1103 of the Bankruptcy Code, as applicable, and the reimbursement of out-of-pocket expenses allowed by the Court and incurred

by the members of any Statutory Committee in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) (the "**Committee Expenses**"), incurred at any time prior to the delivery of a Carve Out Trigger Notice (as defined below); provided, however, the Allowed Professional Fees for any Statutory Committee's professionals and Committee Expenses shall be limited to the amount set forth in the Budget; and (v) Allowed Professional Fees of Case Professionals and Committee Expenses in an aggregate amount not to exceed $2,000,000 incurred after the delivery of a Carve Out Trigger Notice to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (v) being the "**Post-Carve Out Trigger Notice Cap**"); provided, however, that the obligations of the Prepetition ABL Credit Parties with respect to the Carve Out set forth in this paragraph 18(a) and in any Final Order shall be and hereby are limited in all respects to the aggregate amount required to be funded into the Professional Fee Escrow Account (as defined herein) as set forth below prior to the earlier of (i) the date of payment in full, in cash, of the ABL Obligations; and (ii) the date of the delivery of a Carve Out Trigger Notice (such amounts, the "**ABL Carve Out Amount**").  No portion of the Carve Out or any Cash Collateral may be used in violation of this Interim Order, including paragraph 18 hereof.  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by either of the Prepetition ABL Administrative Agent or the Prepetition Term Loan Agent to the Debtors, the other Prepetition Agent(s), any Statutory Committee and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of a Termination Event, stating that the Post-Carve Out Trigger Notice Cap has been invoked.  On Friday of each week, in accordance with the Budget, so long as no Termination Event has occurred, unless otherwise agreed to by

the Prepetition ABL Agents, the Debtors shall cause to be transferred into an escrow account (the "**Professional Fee Escrow Account**") with an escrow agent selected by the Debtors an amount equal to the budgeted fees and expenses of the Case Professionals set forth on the Professional Fee Schedule (x) for the current week and the subsequent week for the first week following the Petition Date and (y) for each week following the first week after the Petition Date, for the subsequent week, in each case as set forth in the then current Budget.  The Prepetition ABL Lenders' obligations to fund the ABL Carve Out Amount in accordance with this paragraph 18(a) shall terminate upon the earlier of (x) payment in full, in cash, of the ABL Obligations and (b) delivery by the Prepetition ABL Agents of a Carve Out Trigger Notice.

(b)    *No Direct Obligation to Pay Case Professional Fees or Committee Expenses*.  Except for funding the Professional Fee Escrow Account, none of the Prepetition Credit Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with the Cases or any Successor Case.  Nothing in this Interim Order or otherwise shall be construed to obligate any of the Prepetition Credit Parties in any way to pay compensation to or to reimburse expenses of any Case Professional (including any Committee Expenses), or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Upon receipt of the Carve-Out Trigger Notice, the Debtors shall provide notice by email to all Case Professionals, at the email addresses set forth in each Case Professional's notice of appearance filed with the Bankruptcy Court (or, if there is no such notice of appearance, at such Case Professional's last known email address) informing them that such Carve-Out Trigger Notice has been received and further advising them that the Debtors' ability to pay such Case Professionals is subject to and limited by the Carve-Out.  Until such time as the ABL Obligations

have been paid in full in cash, Allowed Professional Fees of any Case Professional and Committee Expenses shall be paid solely from the Professional Fee Escrow Account and any retainer, as applicable.

19.    Prohibited Use of Cash Collateral and Carve Out.  The Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the Prepetition Credit Parties' enforcement or realization upon any of the Prepetition Collateral other than during the Remedies Notice Period and otherwise subject to the provisions of this Interim Order; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of Prepetition Collateral or Post-Petition Collateral without the consent of the applicable Prepetition Agents and the applicable Required Lenders other than as set forth in this Interim Order; (c) using or seeking to use any insurance proceeds constituting Prepetition Collateral or Post-Petition Collateral without the consent of the applicable Prepetition Agents and the applicable Required Lenders; (d) incurring Indebtedness (as defined in the Prepetition ABL Credit Agreement or the Prepetition Term Loan Agreement) without the prior consent of the applicable Prepetition Agents and the applicable Required Lenders, except to the extent permitted under the applicable Prepetition Documents; other than a Permitted DIP Financing; (e) seeking to amend or modify any of the rights granted to the Prepetition Credit Parties under this Interim Order, any Final Order and the Prepetition Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or Prepetition Collateral or Post-Petition Collateral on a contested basis other than during the Remedies Notice Period; (f) objecting to or challenging in any way the Prepetition Liens, ABL Obligations, Prepetition Term Loan Obligations, Prepetition Collateral or Post-Petition Collateral (including Cash Collateral), or any other claims or liens, held by or on behalf of any of the Prepetition Credit Parties; (g) asserting,

commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the Prepetition Credit Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the ABL Obligations, the Prepetition Term Loan Obligations, the Prepetition Liens or any other rights or interests of any of the Prepetition Credit Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the ABL Obligations or the Prepetition Term Loan Obligations; provided, however, that the Carve Out and such collateral proceeds and loans under the Prepetition Documents may be used for allowed fees and expenses, in an amount not to exceed $75,000 in the aggregate, incurred solely by a Statutory Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens and Prepetition Obligations.

20. The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, prepay any principal of, premium, if any, interest, or other amount payable in respect of any indebtedness of the Debtors prior to its scheduled maturity, other than the ABL Obligations and obligations authorized under the Debtors' "first-day" orders. In addition, the Prepetition Collateral, the Post-Petition Collateral, the Cash Collateral, and the Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type (i) against the Prepetition Credit Parties (including any of their respective participants) or that could impair their rights and remedies under the Prepetition Documents or this Interim Order or the Final Order, including, without

limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration, or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Prepetition Liens or the Prepetition Obligations or ABL Obligations, (iii) for monetary, injunctive, or other affirmative relief against the Prepetition Credit Parties (including any of their respective participants), or their collateral, or (iv) preventing, hindering, or otherwise delaying the exercise by the Prepetition Credit Parties of any rights and remedies under this Interim Order or the Final Order, the Prepetition Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the Prepetition Credit Parties upon any of their collateral,; (b) to make any payment greater than $100,000 individually or $300,000 in the aggregate during the Cases in settlement of any claim, action, or proceeding, before any court, arbitrator, or other governmental body without the prior written consent of the Prepetition Agents unless otherwise ordered by this Court; (c) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtors without the prior written consent of the Prepetition Agents, (d) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type objecting to, contesting, or interfering with, in any way, the Prepetition Credit Parties' enforcement or realization upon any of the Prepetition Collateral or Post-Petition Collateral upon the occurrence of the Termination Date, except as provided for in this Interim Order or Final Order, or seeking to prevent the Prepetition Credit Parties from credit bidding in connection with any proposed plan of

reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code; (e) in connection with using or seeking to use Cash Collateral, without the consent of the Prepetition Agents, in a manner inconsistent with the Budget in accordance with paragraph 3 herein; (f) in connection with using or seeking to use any insurance proceeds constituting Prepetition Collateral or Post-Petition Collateral without the consent of the Prepetition Agents; (g) in connection with incurring Indebtedness outside the ordinary course of business without the prior consent of the Prepetition Agents, except in connection with a Permitted DIP Financing; (h) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the Prepetition Credit Parties (including any of their respective participants); (i) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Credit Parties (including any of their respective participants and their agents, employees, attorneys, or consultants); or (j) in connection with prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations or the Prepetition Liens or any other rights or interests of the Prepetition Credit Parties (including any of their respective participants).

21.     <u>Payment of Compensation</u>.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the Prepetition Agents to object to the allowance and payment of such fees and expenses.  So

long as no Termination Event has occurred and is continuing, and until the payment in full, in

cash, of the ABL Obligations, the Debtors shall be permitted to pay, solely from the Professional

Fee Escrow Account, fees and expenses allowed and payable by order (that has not been vacated

or stayed, unless the stay has been vacated) under Sections 328, 330 and 331 of the Bankruptcy

Code, as the same may be due and payable, and to the extent set forth in the Budget.

22.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    The admissions, stipulations, agreements, releases, and waivers set forth in

this Interim Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be

binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded

powers, any other estate representative, and all creditors and parties in interest and all of their

successors in interest and assigns, including, without limitation, any Statutory Committee that

may be appointed in these cases, unless, and solely to the extent that, a party in interest with

standing and requisite authority (other than the Debtors, as to which any Challenge (as defined

below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and

timely commenced the appropriate proceeding required under the Bankruptcy Code and

Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the

Bankruptcy Rules (in each case subject to the limitations set forth in paragraph of this Interim

Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate

pleading commencing a proceeding or other contested matter, a "**Challenge**") by no later than

the earliest of: (a) 60 calendar days from the date of entry of the appointment of a Statutory

Committee and (b) 75 calendar days from the Petition Date (the "**Challenge Deadline**"), as such

applicable date may be extended in writing from time to time in the sole discretion of the

Prepetition ABL Agents (with respect to the Prepetition ABL Credit Documents) and the

Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Credit Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

(b)    *Binding Effect*.    To the extent no Challenge is timely and properly commenced by the Challenge Deadline, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Interim Order and any Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment.    To the extent any such Challenge proceeding is timely and properly commenced, the applicable Prepetition Credit Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection. For the avoidance of doubt, nothing in this Interim Order vests or confers on any Statutory

Committee or any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

(c)    Notwithstanding anything herein to the contrary, nothing in this Interim Order will release, discharge or impair in any manner any claims or causes of action by the Debtors or by any Prepetition Credit Parties against (a) any entity whose employees, principals, officers or directors partners, members or equityholders currently serve or formerly served as board members for any of the Debtors, (a "**Board Participant Party**"), (b) any affiliates, agents or representatives of any Board Participant Party, or (c) any of the Debtors' professionals or current or former board members in connection with any claims or causes of action against any Board Participant Party or its affiliates, agents or representatives (the parties in foregoing sub-clauses (a) – (c) are referred to, collectively, as the "**Non-Released Parties**"); provided, however, that in the event the Debtors or the Prepetition Credit Parties do not commence claims or causes of action against the Non-Released Parties within 270 days of the date of entry of this Interim Order (the "**Claim Deadline**") that, but for this Paragraph 22(c), would otherwise be released, discharged, or impaired at the expiration of the Challenge Deadline pursuant to Paragraph 22(b) hereof if no Challenge were timely and properly commenced, such claims or causes of action shall be released at the expiration of the Claim Deadline and such release shall become binding, conclusive, and final on the Debtors, the Prepetition Credit Parties, and any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.

23.      <u>Costs, Fees and Expenses</u>.  As additional adequate protection of the Prepetition Credit Parties' security interests in the Prepetition Collateral, the Debtors are authorized and directed to pay all reasonable and documented out-of-pocket costs, fees and expenses of the Prepetition ABL Agents, Prepetition Term Loan Agent and certain Prepetition Term Lender(s) including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses, of other consultants, and indemnification and reimbursement of fees and expenses and any such other amounts as and to the extent provided in the Prepetition Documents (including without limitation the reasonable and documented fees and expenses of Choate, Hall & Stewart, LLP, Greenberg Traurig LLP, Thompson Coburn LLP, Norton Rose Fulbright Canada LLP and Mackinac Partners, (the "**ABL Professional Fees"),** Norton Rose Fulbright US LLP and McCarthy Tetrault LLP (the "**Term Agent Professional Fees**") and Kramer Levin Naftalis & Frankel LLP, Fasken Martineau DuMoulin LLP, Stroock & Stroock & Lavan LLP, AlixPartners, LLP, and Houlihan Lokey (the "**Prepetition Term Lender Professional Fees**").  Except as set forth below with respect to the Term Agent Professional Fees and Prepetition Term Lender Professional Fees payment of all such fees and expenses shall not be subject to the Budget or to allowance by the Court.  Professionals for the Prepetition Credit Parties shall not be required to comply with the U.S. Trustee fee guidelines.  Notwithstanding the foregoing, the professionals for the Prepetition Credit Parties shall deliver a summary of their respective invoices to counsel for the Debtors, any Statutory Committee and the U.S. Trustee (the "**Fee Notice Parties**"), redacted as necessary with respect to any privileged or confidential information contained therein.  If no objection is raised by any of the Fee Notice Parties with respect to such summaries within ten (10) days of the receipt thereof (the "**Professional Fee Objection Period**") then, without further order of, or application to, the Court or notice to any

other party, such fees and expenses shall be promptly paid by the Debtors.  If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Professional Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Notwithstanding the foregoing, until payment in full, in cash, of the ABL Obligations, the Debtors are only authorized and directed to pay the Term Agent Professional Fees and Prepetition Term Lender Professional Fees and other cost and expenses incurred by the Prepetition Term Agent and Prepetition Term Loan Lenders strictly in accordance with and subject to the Budget; for the avoidance of doubt no success, transaction or similar fees shall be paid to any professional retained or engaged by the Prepetition Term Loan Lenders.

24.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

25.     Section 506(c) Claims.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the Prepetition Credit Parties, the Prepetition Collateral, or the Post-Petition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Agents, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

26.     No Marshaling/Applications of Proceeds.  Upon entry of the Final Order, the Prepetition Credit Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Post-Petition Collateral.

27.     Section 552(b).  Subject to the entry of the Final Order, the "equities of the case" exception under Bankruptcy Code §552(b) shall not apply to the Prepetition Credit Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral.

28.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Prepetition Credit Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of the Prepetition Credit Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of the Cases, any Successor Case or the Canadian Case, conversion of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers or appointment of a receiver, receiver and manager or trustee of the Payless Canada Entities or any of them, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Credit Parties are preserved.

29.     No Waiver by Failure to Seek Relief.  The failure of the Prepetition Credit Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Credit Parties.

30.     Binding Effect of Interim Order.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the

Prepetition Credit Parties, all other creditors of the Debtors, any Statutory Committee or any other court appointed committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Cases, any Successor Case, or upon dismissal of the Cases or any Successor Case.

31.    <u>No Modification of Interim Order</u>.  The Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Prepetition Agents (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Cases or any Successor Case, equal or superior to the Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the Prepetition Agents, any order allowing use of Cash Collateral other than this Interim Order and the Final Order; and (c) without the prior written consent of the Prepetition Agents, any lien on any of the Post-Petition Collateral with priority equal or superior to the Adequate Protection Liens The Debtors irrevocably waive any right to seek any material amendment, modification, or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the Prepetition Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition Agents.

32.    <u>Access to Prepetition Collateral and Post-Petition Collateral</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies, subject to the Existing Intercreditor Agreement, of the Prepetition ABL Agents and the Prepetition Term Loan Agent, exercisable on behalf of the Prepetition ABL Lenders and

Prepetition Term Loan Lenders, respectively, contained in this Interim Order, the Prepetition ABL Credit Documents, the Prepetition Term Loan Credit Documents, or otherwise available at law or in equity, and subject to the terms of the Prepetition ABL Credit Documents and Prepetition Term Loan Credit Documents, upon written notice to the landlord of any leased premises that the Termination Date has occurred, the Prepetition ABL Agents or Prepetition Term Loan Agent, as applicable, may, subject to the applicable notice provisions, if any, in this Interim Order and any separate applicable agreement by and between such landlord and the Prepetition ABL Agents or Prepetition Term Loan Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to Prepetition Collateral and Post-Petition Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder; provided that the Prepetition ABL Agents and/or Prepetition Term Loan Agent, as applicable, shall be obligated only to pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the Prepetition ABL Agents and/or Prepetition Term Loan Agent, as applicable, calculated on a daily per diem basis. Nothing herein shall require the Prepetition ABL Agents or Prepetition Term Loan Agent to assume any lease as a condition to the rights afforded in this paragraph. For the avoidance of doubt, subject to (and without waiver of) the rights of the Prepetition Credit Parties under applicable non-bankruptcy law, the Prepetition Credit Parties can only enter upon a leased premises after the Termination Date in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or (ii) upon entry of an order of this Court obtained by motion of any of the Prepetition Credit Parties on such notice to the landlord as shall be required by this Court.

33.     <u>Waiver of Requirement to File Proofs of Claim</u>.  The Prepetition Credit Parties shall not be required to file proofs of claim in the Cases or any successor case to maintain their respective claims for payment of the Prepetition Obligations or for payment and performance of the Adequate Protection Liens, the Adequate Protection Payments, or the Adequate Protection Superpriority Claims.  The statements of claim in respect of the Prepetition Obligations, the Adequate Protection Liens, the Adequate Protection Payments, and the Adequate Protection Superpriority Claims set forth in this Interim Order are deemed sufficient to and do constitute proofs of claim in respect of such obligations and liens.

34.     <u>Credit Bidding</u>.  Subject to the terms of the Existing Intercreditor Agreement, the Prepetition Credit Parties shall have the right to credit bid up to the full amount of their Prepetition Obligations, as provided for in section 363(k) of the Bankruptcy Code without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

35.     <u>Limits on Lender Liability</u>.  Subject to entry of a Final Order, nothing in this Interim Order or in any of the Prepetition Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Credit Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases.  The Prepetition Credit Parties shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29

U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Credit Parties of any liability for any claims arising from the prepetition or post petition activities of any of the Debtors.

36.     <u>Insurance Proceeds and Policies</u>.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the Prepetition ABL Agents (on behalf of the Prepetition ABL Lenders) and the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the Prepetition Collateral and Post-Petition Collateral.

37.     <u>Continuing Effect of Intercreditor Agreement</u>.  The Debtors and Prepetition Credit Parties each shall be bound by, and in all respects of the Prepetition Credit Facilities shall be governed by, and be subject to all the terms, provisions and restrictions of the Existing Intercreditor Agreement, except as expressly modified by this Interim Order.

38.     <u>Treatment of Proceeds From Sale of Texas Assets</u>.  As adequate protection for personal property tax claims asserted by any taxing authority in which a store that is the subject of the Store Closing Sales is located (the "**Local Texas Tax Authorities**"), from the proceeds of the sale of any of the Debtors' assets located in the state of Texas, the amount of $100,000 shall be set aside by the Debtors in a segregated account (the "**Local Texas Tax Account**") as adequate protection for the secured claims of the Local Texas Tax Authorities prior to the distribution of any proceeds to any other creditor.  The liens of the Local Texas Tax Authorities shall attach to these proceeds in the Local Texas Tax Account to the same extent and with the same priority as the liens they now hold against the property of the Debtors.  These funds in the

Local Texas Tax Account shall be adequate protection and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a cap or floor on the amounts they may be entitled to receive.  All parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Local Texas Tax Authorities are fully preserved.  Funds in the Local Texas Tax Account may be distributed upon agreement between the Local Texas Tax Authorities and the Debtors, with the consent of the Prepetition ABL Agents, or, upon payment in full, in cash, of the ABL Obligations, the Prepetition Term Loan Agent, or by subsequent order of the Court, duly noticed to the Local Texas Tax Authorities and the Prepetition ABL Agents or the Prepetition Term Loan Agent, as applicable.

39.   _Payless Canada Entities._   Notwithstanding anything herein to the contrary, none of the Payless Canada Entities, nor their assets or estate shall be subject to any of the Adequate Protection Payments, Adequate Protection Liens, Adequate Protection Superpriority Claims, the Carve Out, or any other liens, claims, rights, obligations or interests created or confirmed pursuant this Interim Order, unless such liens, claims, rights, obligations or interests are created or recognized by Order of the Canadian Court in the Canadian Case.  The Payless Canada Entities are hereby, *nunc pro tunc*, authorized to seek relief in respect of the granting of claims, liens, or similar interests from the Canadian Court over each of their estates and any of their assets that constitute property that is subject to this Court's jurisdiction, and section 362 of the Bankruptcy Code is hereby modified solely to the extent necessary to permit such relief.  For the avoidance of doubt nothing herein shall obviate the need for any consent or approval that may be required from the Canadian Court with respect to any matter relating to any of the Payless Canada Entities or any of their assets.

40.   <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the Prepetition Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

41.   <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization or liquidation in the Cases; (b) converting the Cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing the Cases or any Successor Case or the Canadian Case; or (d) pursuant to which this Court abstains from hearing the Cases or any Successor Case; <u>provided</u>, <u>however</u>, that the various superpriority claims or other administrative expenses shall survive only to the extent permitted by applicable law.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition Credit Parties pursuant to this Interim Order or the Prepetition Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Case, or following dismissal of the Cases or any Successor Case, and shall maintain their priority as provided by this Interim Order until all Prepetition Obligations have been paid in full.

42.   <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order is scheduled for March 14, 2019 at 10:00 a.m., prevailing Central Time, before the Honorable Kathy A. Surrat-States, Chief United States Bankruptcy Judge for the Eastern District of Missouri, Courtroom 7 North, at the United States Bankruptcy Court for the Eastern District of Missouri located at the Thomas F. Eagleton U.S. Courthouse, 111 South 10th St., 4th Floor, St. Louis, MO 63102.

43.   <u>Notice of Final Hearing</u>.  On or before two (2) Business Days after entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, a copy

of the Motion and this Interim Order upon:  (a) the U.S. Trustee; (b) counsel to any Statutory Committee; (c) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (d) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn:  Jeffrey M. Wolf);  (e) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide) (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard) (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (f) counsel to the Prepetition Term Loan Agent, Norton Rose Fulbright US LLP (Attn: Stephen Castro and David Rosenzweig; (g) the proposed Monitor, FTI Consulting Canada, Inc.; (h) counsel to the proposed Monitor, Bennett Jones LLP; (i) counsel to any statutory committee appointed in the chapter 11 cases; (j) the United States Attorney's Office for the Eastern District of Missouri; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the state attorneys general for all states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.

44.      <u>Entry of this Interim Order; Waiver of Stay</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

45.      <u>Objection Deadline</u>.  Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Court, and personally served upon:  (a) the Debtors,

3231 SE 6th Avenue, Topeka, KS 66607; (b) proposed counsel to the Debtors (i) Akin Gump Strauss Hauer & Feld LLP (Attn: Meredith A. Lahaie, Kevin Zuzolo and Julie Thompson), (ii) Armstrong Teasdale LLP (Attn: Richard W. Engel, Jr., Erin M. Edelman and John G. Willard) and (iii) Cassels Brock & Blackwell LLP (Attn: Ryan Jacobs, Jane Dietrich, Natalie Levine and Monique Sassi); (c) the Office of the United States Trustee for the Eastern District of Missouri; (d) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (e) counsel to the Prepetition ABL Administrative Agent (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Douglas Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (f) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey M. Wolf); (g) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide) (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard) (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (h) counsel to the Prepetition Term Loan Agent, Norton Rose Fulbright US LLP (Attn: Stephen Castro and David Rosenzweig; (i) the proposed Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (j) counsel to the proposed Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (k) counsel to any statutory committee appointed in the chapter 11 cases; (l) the United States Attorney's Office for the Eastern District of Missouri; (m) the Internal Revenue Service; (n) the United States Securities and Exchange Commission; (o) the state attorneys general for all states in which the Debtors conduct business; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002, so that such objections are filed with the Court and received by said parties on or before 4:00 p.m., prevailing Central Time on March 7, 2019, with respect to entry of the Final Order.

46.     <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

47.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

48.     No later than two (2) business days after the date of this Interim Order, the Debtors shall serve a copy of the Interim Order on the Notice Parties and shall file certificate of service no later than 24 hours after service.

*Kathy A. Surratt – States*
KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED:  February 20, 2019
St. Louis, Missouri
jjh

**Order Prepared By:**

Richard W. Engel, Jr., MO 34641
Erin M. Edelman, MO 67374
John G. Willard, MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070
Facsimile:  (314) 621-2239
Email:  rengel@armstrongteasdale.com
Email:  eedelman@armstrongteasdale.com
Email:  jwillard@armstrongteasdale.com

Ira Dizengoff (*pro hac vice* admission pending)
Meredith A. Lahaie (*pro hac vice* admission pending)
Kevin Zuzolo (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

Julie Thompson (*pro hac vice* admission pending)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Budget**

Payless
Cash Collateral Budget
($ in 000's)

| 4-5-4 Month | Feb | Feb | Mar | Mar | Mar | Mar | Mar | Apr | Apr | Apr | Apr | May | May | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 2/22/2019 | 3/1/2019 | 3/8/2019 | 3/15/2019 | 3/22/2019 | 3/29/2019 | 4/5/2019 | 4/12/2019 | 4/19/2019 | 4/26/2019 | 5/3/2019 | 5/10/2019 | 5/17/2019 | Total 13 Week |
| Forecast Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| Forecast/Actuals | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | |
| **I. Cash Flow** | | | | | | | | | | | | | | |
| 1 **Receipts** | | | | | | | | | | | | | | |
| 2 GOB Receipts | $ 24,433 | $ 33,695 | $ 39,515 | $ 42,076 | $ 46,075 | $ 45,951 | $ 41,899 | $ 38,877 | $ 34,312 | $ 30,028 | $ 27,587 | $ 26,218 | $ 22,835 | 453,501 |
| 3 Sales Tax | (1,765) | (2,279) | (2,536) | (2,628) | (2,985) | (2,725) | (2,478) | (2,331) | (1,953) | (1,764) | (1,638) | (1,581) | (1,265) | (27,930) |
| 4 Canada / Latin / Franchise | 232 | 616 | 81 | 710 | 1,589 | 3,681 | 916 | 2,059 | 1,588 | 1,011 | 496 | 393 | 1,125 | 14,497 |
| 5 **Total Receipts** | $ 22,899 | $ 32,032 | $ 37,060 | $ 40,158 | $ 44,680 | $ 46,907 | $ 40,336 | $ 38,605 | $ 33,947 | $ 29,275 | $ 26,444 | $ 25,029 | $ 22,695 | 440,067 |
| 6 **Operating Disbursements** | | | | | | | | | | | | | | |
| 7 Merchandise / Freight / Duty | $ (2,995) | $ (943) | $ (1,139) | $ (825) | $ (3,650) | $ (121) | $ (450) | $ (350) | $ (200) | $ - | $ - | $ - | $ - | (10,673) |
| 8 Payroll & Benefits | (8,825) | (1,824) | (9,245) | (3,668) | (9,245) | (1,835) | (9,235) | (3,484) | (7,846) | (1,634) | (7,836) | (1,693) | (8,533) | (74,903) |
| 9 Occupancy | (1,165) | (10,161) | (4,032) | (3,075) | (1,502) | (9,213) | (3,917) | (2,046) | (1,714) | (803) | (8,149) | (2,505) | (1,016) | (49,298) |
| 10 Other Operating Disbursements | (3,388) | (2,370) | (2,879) | (1,507) | (2,866) | (2,943) | (1,494) | (1,697) | (1,657) | (3,391) | (2,001) | (1,642) | (1,652) | (29,485) |
| 11 **Total Operating Disbursements** | $ (16,373) | $ (15,297) | $ (17,295) | $ (9,075) | $ (17,264) | $ (14,111) | $ (15,096) | $ (7,576) | $ (11,417) | $ (5,828) | $ (17,985) | $ (5,840) | $ (11,201) | (164,359) |
| 12 **Total Operating Cash Flow** | $ 6,526 | $ 16,735 | $ 19,765 | $ 31,083 | $ 27,416 | $ 32,796 | $ 25,240 | $ 31,029 | $ 22,530 | $ 23,447 | $ 8,459 | $ 19,189 | $ 11,494 | 275,709 |
| 13 **Financing** | | | | | | | | | | | | | | |
| 14 ABL Debt Service | $ - | $ (736) | $ - | $ (206) | $ - | $ (111) | $ (378) | $ (30) | $ - | $ - | $ - | $ - | $ - | (1,461) |
| 15 ABL Fees | - | (125) | - | - | - | - | (274) | (150) | (150) | (150) | - | - | - | (850) |
| 16 **Total Financing** | $ - | $ (862) | $ - | $ (206) | $ - | $ (111) | $ (652) | $ (180) | $ (150) | $ (150) | $ - | $ - | $ - | (2,311) |
| 17 **Total Free Cash Flow** | 6,526 | 15,873 | 19,765 | 30,877 | 27,416 | 32,685 | 24,588 | 30,849 | 22,380 | 23,297 | 8,459 | 19,189 | 11,494 | 273,398 |
| 18 **Restructuring Disbursements** | | | | | | | | | | | | | | |
| 19 Restructuring Prof Fees / Escrow | $ (3,970) | $ (836) | $ (760) | $ (1,198) | $ (760) | $ (1,934) | $ (987) | $ (710) | $ (1,580) | $ (1,280) | $ (921) | $ (1,689) | $ (1,472) | (18,096) |
| 20 ABL Pre-Petition Indemnity Acct | - | - | (500) | - | - | - | - | - | - | - | - | - | - | (500) |
| 21 Severance / WARN Act | - | (472) | (0) | (476) | (0) | (472) | (1) | (521) | (334) | (622) | (1) | (472) | (173) | (3,545) |
| 22 Agency Fees | (207) | (267) | (296) | (307) | (344) | (314) | (286) | (269) | (225) | (204) | (189) | (182) | (146) | (3,238) |
| 23 Liquidator Expenses | (1,075) | (1,075) | (725) | (1,075) | (1,075) | (925) | (1,075) | (725) | (725) | (687) | (775) | (575) | (633) | (11,141) |
| 24 Store Employee Incentive Bonus | - | - | - | - | - | - | (787) | - | - | - | (787) | - | (2,067) | (3,642) |
| 25 Retention / KEIP / KERP | - | - | - | - | - | - | - | - | - | (409) | - | - | - | (409) |
| 26 Critical Vendor Payments | (2,000) | (3,000) | - | - | - | - | - | - | - | - | - | - | - | (5,000) |
| 27 Utility Deposit | (1,100) | - | - | - | - | - | - | - | - | - | - | - | - | (1,100) |
| 28 First Day Motion Freight | (2,250) | (4,250) | - | - | - | - | - | - | - | - | - | - | - | (6,500) |
| 29 First Day Motion Sales Tax | (2,500) | (2,500) | - | - | - | - | - | - | - | - | - | - | - | (5,000) |
| 30 **Total Restructuring Disbursements** | $ (13,102) | $ (12,400) | $ (2,281) | $ (3,055) | $ (2,179) | $ (3,645) | $ (3,136) | $ (2,225) | $ (2,864) | $ (3,201) | $ (2,673) | $ (2,918) | $ (4,490) | (58,170) |
| 31 **Net Cash Flow** | $ (6,575) | $ 3,473 | $ 17,483 | $ 27,821 | $ 25,236 | $ 29,040 | $ 21,452 | $ 28,624 | $ 19,516 | $ 20,096 | $ 5,785 | $ 16,271 | $ 7,003 | 215,227 |
| 32 **Liquidity** | | | | | | | | | | | | | | |
| 33 **Cash Schedule** | | | | | | | | | | | | | | |
| 34 Beginning Cash Balance | $ 9,982 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 6,841 | $ 23,112 | 9,982 |
| 35 Net Cash Flow | (6,575) | 3,473 | 17,483 | 27,821 | 25,236 | 29,040 | 21,452 | 28,624 | 19,516 | 20,096 | 5,785 | 16,271 | 7,003 | 215,227 |
| 36 Revolver - Draw / (Paydown) | (907) | (3,473) | (17,483) | (27,821) | (25,236) | (29,040) | (21,452) | (28,624) | (19,516) | (20,096) | (1,444) | - | - | (195,094) |
| 37 **Ending Cash Balance** | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 6,841 | $ 23,112 | $ 30,116 | 30,116 |
| 38 **ABL Schedule** | | | | | | | | | | | | | | |
| 39 ABL Outstanding Balance | $ 125,152 | $ 121,679 | $ 104,196 | $ 76,374 | $ 51,138 | $ 22,098 | $ 647 | $ - | $ - | $ - | $ - | $ - | $ - | - |
| 40 O/S Letters of Credit | 35,820 | 35,820 | 35,820 | 35,820 | 35,820 | 35,820 | 35,820 | 7,842 | - | - | - | - | - | - |
| 41 FILO Outstanding Balance | 33,215 | 33,215 | 33,215 | 33,215 | 33,215 | 33,215 | 33,215 | 33,215 | 21,541 | 1,444 | - | - | - | - |
| 42 **Total ABL** | $ 194,187 | $ 190,714 | $ 173,230 | $ 145,409 | $ 120,173 | $ 91,133 | $ 69,681 | $ 41,057 | $ 21,541 | $ 1,444 | $ - | $ - | $ - | - |

## Exhibit B

**Canadian Budget**

**Payless Canada**
**Cash Collateral Budget**
**(US$ in 000's)**

| 4-5-4 Month<br>Week Ending<br>Forecast Week #<br>Forecast/Actuals | Feb<br>2/22/2019<br>1<br>Forecast | Feb<br>3/1/2019<br>2<br>Forecast | Mar<br>3/8/2019<br>3<br>Forecast | Mar<br>3/15/2019<br>4<br>Forecast | Mar<br>3/22/2019<br>5<br>Forecast | Mar<br>3/29/2019<br>6<br>Forecast | Mar<br>4/5/2019<br>7<br>Forecast | Apr<br>4/12/2019<br>8<br>Forecast | Apr<br>4/19/2019<br>9<br>Forecast | Apr<br>4/26/2019<br>10<br>Forecast | Apr<br>5/3/2019<br>11<br>Forecast | May<br>5/10/2019<br>12<br>Forecast | May<br>5/17/2019<br>13<br>Forecast | Total 13 Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **I. Cash Flow** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **1 Receipts** | | | | | | | | | | | | | | |
| 2 Canada Sales Receipts | $ 2,524 | $ 3,526 | $ 4,361 | $ 4,516 | $ 4,719 | $ 4,395 | $ 2,797 | $ 1,749 | $ 1,382 | $ 1,071 | $ 684 | $ - | $ - | 31,724 |
| 3 Canada Sales Tax (Net of taxes paid on good and services) | - | (220) | - | - | - | - | (432) | - | - | - | (1,623) | - | - | (2,274) |
| **4 Total Receipts** | $ 2,524 | $ 3,306 | $ 4,361 | $ 4,516 | $ 4,719 | $ 4,395 | $ 2,365 | $ 1,749 | $ 1,382 | $ 1,071 | $ (938) | $ - | $ - | 29,449 |
| | | | | | | | | | | | | | | |
| **5 Operating Disbursements** | | | | | | | | | | | | | | |
| 6 Payroll/Benefits | $ (1,177) | $ (79) | $ (1,304) | $ (4) | $ (1,233) | $ (4) | $ (1,245) | $ (837) | $ (450) | $ (1) | $ (433) | $ (566) | $ - | (7,333) |
| 7 Occupancy | (1,098) | (1,288) | - | (1,288) | - | - | (389) | - | (389) | - | - | - | - | (4,452) |
| 8 Stores | (42) | (42) | (42) | (42) | (42) | (42) | (42) | (15) | (9) | (9) | (9) | (13) | - | (351) |
| 9 Utilities | (28) | (28) | (28) | (28) | (28) | (28) | (28) | (11) | (9) | (9) | (9) | - | - | (234) |
| 10 Operating Expenses | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | - | - | (85) |
| 11 Insurance | (126) | - | - | - | - | - | - | - | - | - | - | - | - | (126) |
| 12 IT | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | - | - | (16) |
| 13 Interunit-Service & Mgmt Fees [Worldwide to Canada LP] | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (15) | (15) | (305) |
| **14 Total Operating Disbursements** | $ (2,505) | $ (1,471) | $ (1,409) | $ (1,396) | $ (1,337) | $ (109) | $ (1,739) | $ (897) | $ (892) | $ (53) | $ (485) | $ (593) | $ (15) | (12,902) |
| | | | | | | | | | | | | | | |
| **15 Total Operating Cash Flow** | $ 19 | $ 1,835 | $ 2,952 | $ 3,120 | $ 3,382 | $ 4,286 | $ 626 | $ 851 | $ 490 | $ 1,018 | $ (1,423) | $ (593) | $ (15) | 16,547 |
| | | | | | | | | | | | | | | |
| **16 Restructuring Disbursements** | | | | | | | | | | | | | | |
| 17 Restructuring Professionals | $ (724) | $ (468) | $ (503) | $ (446) | $ (431) | $ (370) | $ (347) | $ (397) | $ (389) | $ (386) | $ (364) | $ (289) | $ (264) | (5,379) |
| 18 Severance | - | - | - | - | - | - | - | (578) | - | - | - | (250) | - | (828) |
| 19 Agency Fees | - | (25) | (57) | (68) | (64) | (72) | (58) | (28) | (24) | (18) | (14) | (4) | - | (432) |
| 20 Liquidator Expenses | - | (93) | (121) | (121) | (121) | (98) | (91) | (86) | (41) | (41) | (18) | - | - | (830) |
| 21 Store Employee GOB Incentive Bonus | - | - | - | - | - | - | - | (616) | - | - | - | (267) | - | (883) |
| 22 Employee Incentive Plan | (202) | - | - | - | - | - | - | - | - | - | - | - | - | (202) |
| 23 Critical Vendor Payments | (300) | - | (112) | - | - | - | - | - | - | - | - | - | - | (300) |
| 24 Utility Deposit | - | (27) | - | - | - | - | - | - | - | - | - | - | - | (112) |
| 25 Gift Card Redemption | (27) | (27) | (27) | (27) | - | - | - | - | - | - | - | - | - | (107) |
| **26 Total Restructuring Disbursements** | $ (1,252) | $ (726) | $ (708) | $ (662) | $ (616) | $ (540) | $ (496) | $ (1,705) | $ (454) | $ (445) | $ (396) | $ (811) | $ (264) | (9,075) |
| | | | | | | | | | | | | | | |
| **27 Net Cash Flow** | $ (1,233) | $ 1,109 | $ 2,244 | $ 2,458 | $ 2,766 | $ 3,746 | $ 130 | $ (854) | $ 36 | $ 573 | $ (1,820) | $ (1,404) | $ (279) | 7,472 |
| | | | | | | | | | | | | | | |
| **28 Cash Schedule** | | | | | | | | | | | | | | |
| 29 Beginning Cash Balance | $ 2,706 | $ 1,473 | $ 2,582 | $ 4,826 | $ 7,284 | $ 8,485 | $ 8,920 | $ 8,697 | $ 6,084 | $ 6,084 | $ 6,084 | $ 4,265 | $ 2,725 | 2,706 |
| 30 Net Cash Flow | (1,233) | 1,109 | 2,244 | 2,458 | 2,766 | 3,746 | 130 | (854) | 36 | 573 | (1,820) | (1,404) | (279) | 7,472 |
| 31 Canadian Excess Proceeds | - | - | - | - | (1,564) | (3,312) | (353) | (1,759) | (36) | (573) | - | (136) | - | (7,734) |
| **32 Ending Cash Balance** | $ 1,473 | $ 2,582 | $ 4,826 | $ 7,284 | $ 8,485 | $ 8,920 | $ 8,697 | $ 6,084 | $ 6,084 | $ 6,084 | $ 4,265 | $ 2,725 | $ 2,445 | 2,445 |