**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| PAYLESS HOLDINGS LLC, *et al.*, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date**: March 14, 2019 |
| | ) | **Hearing Time**: 10:00 a.m. (Central Time) |
| | ) | **Response Deadline**: March 14, 2019 at |
| | ) | 10:00 a.m. (Central Time) |
| | ) | **Hearing Location**: Courtroom 7 North |

**MOTION TO QUASH DOCUMENT REQUEST OF THE AD HOC GROUP OF PREPETITION TERM LOAN LENDERS, MOTION TO SHORTEN TIME FOR RESPONSE, AND INCORPORATED MEMORANDUM IN SUPPORT**

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move to quash (the "Motion to Quash") the request for production of documents (the "Document Requests") propounded by the Ad Hoc Group of Prepetition Term Loan Lenders (the "Term Lenders"), and joined by Axar Capital Management ("Axar," and with the Term Lenders, the "Objecting Parties"). A copy of the Document Requests is attached as **Exhibit A**. The Debtors respectfully request that the Court grant an expedited ruling on their Motion to Quash, given that the parties will be heard on the application to retain Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as Debtors' counsel (D.I. 33) (the "Akin Retention Application"), and the application to retain Seward & Kissel LLP (D.I. 29) (the "S&K Retention Application," and with the Akin Retention Application, the "Retention Applications"), which underlie the Document Requests, on March 14, 2019. In support of the Motion to Quash, the Debtors state as follows:

**PRELIMINARY STATEMENT**

1.      The Document Requests do not represent a good faith attempt to elicit information reasonably related to the issues before the Court in connection with the Retention Applications.  Rather, the Document Requests are part of an inappropriate effort by the Objecting Parties to hold the Debtors' retention of their professionals hostage in order to pursue their purported grievances related to corporate governance reforms.  The Objecting Parties' lack of good faith in propounding these Document Requests is manifest.  The Document Requests seek *ten years* of documents and correspondence on a wide array of topics that are wholly irrelevant to the Retention Applications, including many requests that seek materials plainly covered by the attorney-client privilege.  The Document Requests were served just three days before the hearing scheduled for consideration of the Retention Applications, and demanded production from Debtors and Akin Gump *within 36 hours of receipt*.  The Document Requests are patently unreasonable, and are a transparent attempt to hold the Retention Applications hostage in order to extract governance changes.

2.      The Debtors filed the Akin Retention Application and the S&K Retention Application on February 19, 2019.  (D.I. 29, 33).  The Akin Retention Application clearly disclosed Akin Gump's current and former representation of Alden in connection with matters unrelated to these chapter 11 proceedings, and represented in no uncertain terms that Akin Gump would not represent Alden in connection with the chapter 11 cases.  To the extent that issues relating to Alden arise, the Debtors have applied to retain Seward & Kissel, on behalf of the independent managers of the Debtors, and Armstrong Teasdale, as restructuring co-counsel— both firms that are eminently qualified to represent the Debtors in connection with such issues. In addition to the Akin Retention Application and supporting Declaration of Meredith A. Lahaie,

2

Akin Gump has submitted two additional declarations, each setting forth additional detail regarding the scope and extent of Akin Gump's connections with Alden. (D.I. 414, 520).

3. On March 7, 2019, the Objecting Parties filed their objection to the Retention Application (D.I. 444) (the "Objection"). As fully explained in the Debtors' response to the Objection (D.I. 520) (the "Response"), the Objection contained numerous incendiary and baseless allegations and mischaracterizations intended to cast aspersions on Akin Gump's ability to serve as disinterested counsel to the Debtors.

4. At no time between the filing of the Retention Application and the filing of the Objection did the Objecting Parties seek discovery from the Debtors. Rather, on the evening of March 11, 2019, three days before the hearing scheduled to consider the Retention Application, the Objecting Parties served their Document Requests upon the Debtors via e-mail. The Document Requests demanded production by 10:00 a.m. on Wednesday, March 13, 2019.

5. In the face of such an inappropriate and unrealistic request, the Debtors have no recourse but to file the immediate Motion to Quash, and respectfully request that this Court shorten time for response to prevent the Objecting Parties from accomplishing their true (and inappropriate) goal of leveraging the Retention Applications to force governance changes by the Debtors.

## ARGUMENT

6. A cursory review of the Document Requests reveals that they are overly broad, unduly burdensome, and wholly irrelevant to the relief currently before the Court. For example, among 15 separate categories of documents identified, the Document Requests seek:

- Ten years of documents showing "each matter in which Akin has represented Alden or any of its affiliates or portfolio companies, including . . . the nature of the representation, the attorneys that worked on the matter, the total number of professional hours worked and the total amounts billed and collected";

3

- Documents related to Akin's total fee revenues in each of the last 10 years;

- Ten years of documents showing "each matter in which Akin represented Fred's Inc. or any of its affiliates, including . . . the nature of the representation, the attorneys that worked on the matter, the total number of professional hours worked and the total amounts billed and collected";

- Ten years of documents "including Board Materials and Board Minutes, concerning Governance Procedures, including all instances where the Board of Directors has determined to exclude one of its members from deliberations of the Board of Directors;" and

- Ten years of documents "relating to the appointment of members of the Board of Directors."

Document Requests, Schedule A, ¶¶ 1, 2, 5, 10, 11. Notwithstanding the Objecting Parties' characterization of the Document Requests as "informally" seeking documents in connection with the Retention Applications, there is no plausible argument that these requests are calculated to seek information related to the Retention Applications.

7. During the course of these chapter 11 proceedings, Akin Gump has been forthcoming and transparent regarding its former and current representation of Alden in matters unrelated to these chapter 11 proceedings. Further, Akin Gump has acknowledged that, should any issues arise regarding Alden, Akin Gump would not represent the Debtors in connection with any such issues. By the three declarations submitted in connection with the Akin Retention Application, the Debtors have readily satisfied their burden to show Akin Gump's disinterestedness.

8. The Objecting Parties can make no reasonable argument that *a decade* of communications and documents regarding recusal of Board members from Board decisions, or of documents demonstrating Akin Gump's revenues, bears in any legitimate way upon whether Akin Gump is disinterested or conflicted in connection with these chapter 11 cases.

4

9. Courts do not countenance discovery served in bad faith, nor do they permit unduly burdensome requests. *See Callaham v. Mataloni*, 2009 WL 1363368, at *3 (M.D. Pa. May 14, 2009). It is similarly improper to serve discovery where the "desire for discovery is more a matter of form and tactics than of substance." *U.S. v. Howard*, 360 F.2d 373, 381 (3d Cir. 1966) (noting that discovery served demonstrated "lack of utility save as a harassment"); *accord In re Melenyzer*, 142 B.R. 154, 157 (Bankr. W.D. Tex. 1991) (denying motion to compel where discovery sought for ulterior or improper purposes).

10. The Objecting Parties' apparent motivation—to seek discovery in connection with the Debtors' corporate governance—can and should be sought pursuant to an appropriate motion, and not in connection with the Retention Applications.

WHEREFORE, the Debtors respectfully request that their Motion to Quash, that the Court order that any response by the Ad Hoc Group in opposition to the Motion to Quash be filed by March 14, 2019, that the Court expedite its ruling on the Motion to Quash, and for such other and further relief this Court deems just and proper.

5

Dated:  March 13, 2019
       St. Louis, Missouri

/s/ *Richard W. Engel, Jr.*
Richard W. Engel, Jr. MO 34641
Erin M. Edelman MO 67374
John G. Willard MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
rengel@armstrongteasdale.com
eedelman@armstrongteasdale.com
jwillard@armstrongteasdale.com

-and-

Ira Dizengoff (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
aqureshi@akingump.com
mlahaie@akingump.com


- and -

Julie Thompson (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**



**Kramer Levin Naftalis & Frankel LLP**
1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

P. Bradley O'Neill
Phone: (212) 715-7583
Fax: (212) 715-8163
BONeill@kramerlevin.com

March 11, 2019

**VIA ELECTRONIC DELIVERY**
Meredith Lahaie, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, Bank of America Tower
New York, NY 10036-6745

Re:     Document Request

Dear Meredith:

As you know, we represent an ad hoc group of lenders (the "Ad Hoc Group") under the term loan and guarantee agreement, dated August 10, 2017, as amended. On March 7, 2019, the Ad Hoc Group, together with Axar Capital Management, filed a limited objection (the "Limited Objection") to the Debtors' motion (the "Motion") to retain your firm and Seward & Kissel as counsel in these chapter 11 cases.

In support of the Limited Objection, attached as Schedule A are the Ad Hoc Group's first set of document requests. Given that these cases were only recently filed and the short time before the scheduled hearing date on the Motion, we are serving these requests informally and ask that you produce documents by 10:00AM on Wednesday, March 13, 2019. If you are not prepared to proceed in this manner, please let us know immediately so that we may involve the Court.

Sincerely,

*P. Bradley O'Neill /p*

P. Bradley O'Neill

cc:     Stephen D. Zide
        Gregory Horowitz
        Abid Qureshi

## Schedule A

### Definitions

1. "Aerosoles" means Aerogroup International, Inc., AGI HoldCo, Inc., Aerogroup International, LLC, Aerogroup International Holdings, LLC, Aerogroup Retail Holdings, Inc., Aerogroup Gift Card Company, Inc., and any of their respective parents, subsidiaries, affiliates, officers, directors, employees, agents or other parties purporting to act on their behalf.

2. "Aerosoles Contract" means any joint or shared services agreement, or any similar agreement or contract, entered into between Payless and Aerosoles.

3. "Akin" means the law firm Akin Gump Strauss Hauer & Feld LLP and any partners, associates, employees, agents or other parties purporting to act on its behalf.

4. "Alden" means Alden Global Capital LLC and any of its parents, subsidiaries, affiliates, officers, directors, employees, agents or other parties purporting to act on its behalf.

5. "All Documents" or "All Communications" means (a) all hard copy Documents or Communications in Your possession, custody, or control, and (b) all electronically stored information in Your possession, custody, or control that is retrievable from a reasonable and proportionately appropriate search, the criteria for which should be negotiated and discussed with the undersigned attorneys for the Ad Hoc Group.

6. "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Missouri.

7. "Board of Directors" means any one or more of the boards of directors of Payless, and any members, committees, or subcommittees thereof, and each of their predecessors and successors.

8. "Board Materials" means all Documents (including any drafts) provided to or considered by the Board of Directors, including without limitation Documents related to advice by financial advisors.

9. "Board Minutes" means all written or recorded (by any means including without limitation tape recording, video recording, or otherwise) consents, resolutions, minutes, transcriptions, or notes of any meetings, decisions, deliberations, discussions, or actions of the Board of Directors, including without limitation all drafts of any such materials.

10. "BVI Loan" means the approximately $45.5 million delayed draw term loan between Payless CA Management Limited, as the borrower, certain subsidiaries of Payless CA Management Limited party thereto from time to time as guarantors, and Alden Global Opportunities Master Fund, L.P., as lenders and administrative agent, which matures on October 2, 2023 and accrues paid in kind interest at 10% per annum, secured by a first priority lien in substantially all tangible and intangible assets of non-debtor Payless CA Management Limited and the other guarantor thereunder.

11. "Concerning" means relating to, in connection with, referring to, alluding to, supporting, refuting, reflecting, touching upon, involving, pertaining to, explaining, containing, recording, summarizing, showing, disclosing, setting forth, discussing, describing, evaluating, analyzing, evidencing, or constituting.

12. "Communication" and "Communications" mean every manner of disclosure, transfer, or exchange of information whether containing facts, ideas, inquiries, or other information, whether face-to-face, oral, electronic, or written, whether conveyed in person or by telephone, mail, email, facsimile or other means, or whether during a meeting, conference, consultation, discussion, or negotiation.

13. "Debtors" means Payless Holdings LLC and each of its direct and indirect subsidiaries and/or affiliates that are presently debtors in these jointly administered proceedings under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and all of their current and former, direct and indirect, affiliates and subsidiaries, officers, directors, employees, agents or other parties purporting to act on their behalf.

14. "DIP Financing" means financing sought by the Debtors through the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 216], and approved on an interim basis by the Bankruptcy Court pursuant to the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 265].

15. "Document" is intended to be given its broadest possible scope and refers to any written, recorded, or graphic matter, or any other means of recording or preserving thought, expression, or information. The term "Document" includes correspondence, letters, memoranda, reports, presentations, contracts, term sheets, diaries, calendars, calendar entries, telephone logs, appointment books, journals, notes, data, electronically stored information, emails, text messages, instant messages, postings, social media, written or electronic communications of any type. The term "Document" includes originals, drafts, and non-identical copies (whether by interlineation, stamp, notation, identification of copy sent or received, or otherwise).

16. "Headquarters Transfer" means the transaction or transactions and any related processes pursuant to which, in or around May 2018, Alden caused Payless to relocate its corporate headquarters and/or certain corporate functions from Topeka, Kansas to Dallas, Texas.

17. "Governance Procedures" means any charters, procedures, practices, or rules, whether formal or informal, considered or adopted by the Board of Directors, to address actual or potential conflicts of interest, including any procedures considered or adopted in connection with the filing of these chapter 11 cases.

18. "Including" means including without limitation.

19. "LatAm" means the Debtors' Latin America business, including Payless CA Management LTD. and the Debtors' 60% interest in two Latin America business joint venture entities.

20. "LatAm Sale" means any monetization, sale, transfer, or other transaction involving LatAm.

21. "Payless" means prepetition Payless Holdings LLC and any of its respective parents, subsidiaries, affiliates, officers, directors, employees, agents or other parties purporting to act on their behalf.

22. "Person" means any natural person (whether alive or deceased), or any legal entity (whether or not currently existing), including any business or governmental entity or association.

23. "You" or "Your" means the named recipient of this request.

24. The individual terms "all," "any," and "each" shall be understood to include and encompass all of the terms "all," "any," and "each."

25. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside its scope.

26. The use of the singular form of any word includes the plural and vice versa.

27. To the extent it results in a more complete disclosure, the present tense shall be construed to include the past tense and vice versa.

## Instructions

1. This is a continuing request. Responsive Documents discovered, received, or generated after the initial production of Documents should be promptly produced in the same manner, and at the same address, as the initial production.

2. Documents responsive to this request shall be produced in their entirety, regardless of whether You consider the entire Document to be responsive or relevant.

3. Any file folder or other container in which a Document is kept in the regular course of business is deemed to be an integral part of the Document and is to be produced with the Document.

4. The Documents produced in response to this request shall be produced as they are maintained in the normal course of business.

5. If You are unable to locate any Document requested that You know existed, state all efforts that have been made to locate it, and provide the name of any Person whom You believe may possess any information regarding the Document.

6. If You object to producing any Documents on the ground of privilege, You shall serve on the Ad Hoc Group a privilege log of the responsive Documents that are not being disclosed and a copy of the redacted Documents, bates-stamped. The privilege log shall

- 6 -

identify all redacted and completely withheld Documents by bates stamp numbers, dates, authors, and recipients, the general subject matter of the Document if it will not waive the privilege, and the privileges being asserted.

7. If You claim any ambiguity in interpreting this request, You may not use such a claim as a basis for refusing to respond, but shall respond applying the broadest possible interpretation.

8. Unless otherwise specified, this request calls for Documents in Your possession, custody, or control concerning, dated, created, sent, received, or operative any time on or after September 1, 2009. Nothing in this request shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in this request.

Documents Requested

1. Documents sufficient to show each matter in which Akin has represented Alden or any of its affiliates or portfolio companies, including, for each such matter, the nature of the representation, the attorneys that worked on the matter, the total number of professional hours worked and the total amounts billed and collected.

2. Documents sufficient to show Akin's total fee revenues in each of the last 10 years.

3. Documents sufficient to show each matter in which Akin represented Payless, including, for each such matter, the nature of the representation, the attorneys that worked on the matter, the total number of professional hours worked and the total amounts billed and collected.

4. Documents sufficient to show each matter in which Akin represented Aerosoles or any of its affiliates, including, for each such matter, the nature of the representation,

the attorneys that worked on the matter, the total number of professional hours worked and the total amounts billed and collected.

5. Documents sufficient to show each matter in which Akin represented Fred's Inc. or any of its affiliates, including, for each such matter, the nature of the representation, the attorneys that worked on the matter, the total number of professional hours worked and the total amounts billed and collected.

6. Documents sufficient to show each matter in which Akin represented Alden in connection with matters involving Payless and the Debtors, including during any time prior to February 18, 2019, and including, for each such matter, the nature of the representation, the attorneys that worked on the matter, the total number of professional hours worked and the total amounts billed and collected.

7. All Documents concerning Akin's involvement in the Headquarters Transfer.

8. All Documents concerning Akin's involvement with the Aerosoles Contract.

9. All Documents concerning Communications between Akin and Alden concerning (i) the DIP Financing, (ii) Governance Procedures, (iii) the Headquarters Transfer, and the (iv) Aerosoles Contract.

10. All Documents, including Board Materials and Board Minutes, concerning Governance Procedures, including all instances where the Board of Directors has determined to exclude one of its members from deliberations of the Board of Directors..

11. All Documents and Communications relating to the appointment of members of the Board of Directors.

12. All Documents and Communications concerning transactions, affiliations or relationships among members of the Board of Directors or between members of the Board of Directors and Alden.

13. Documents sufficient to show any determination of independence (or lack of independence) of members of the Board of Directors.

14. All Documents and Communications of the Board of Directors, or any committee or subcommittee of the Board of Directors, addressing any affiliate transactions not referred to above.

15. All Documents concerning Communications between Akin and Alden concerning (i) the LatAm Sale, (ii) the sale of the Debtors' franchise businesses, (iii) the BVI Loan, (iv) the closure of all Payless stores in North America, and (v) the Payless "going out of business" sales.

*[Remainder of Page Intentionally Left Blank]*

Dated: New York, New York
March 11, 2019

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ P. Bradley O'Neill
P. Bradley O'Neill
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

*Counsel to the Ad Hoc Group of Prepetition Term Loan Lenders*