**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| Payless Holdings LLC, *et al.*, | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Hearing Date:**  June 20, 2019 at |
| | ) | 11:00 a.m. (Central Time) |
| | ) | **Objection Deadline:**  June 13, 2019 at |
| | ) | 4:00 p.m. (Central Time) |
| | ) | **Hearing Location:**  Courtroom 7 North |

**DEBTORS' MOTION SEEKING ENTRY OF AN
ORDER EXTENDING THEIR EXCLUSIVE PERIODS TO
FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order (the "Proposed Order")[1] extending (i) the period during which the Debtors have the exclusive right to file a chapter 11 plan through and including October 16, 2019 (the "Exclusive Filing Period"), and (ii) the period during which the Debtors have the exclusive right to solicit acceptances of their chapter 11 plan through and including December 15, 2019 (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusivity Periods").  In support of the Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] A copy of the Proposed Order will be made available on the Debtors' case information website at https://cases.primeclerk.com/pss.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for relief requested herein are section 1121 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

4. On February 18, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code. A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* [Docket No. 22] (the "First Day Declaration") and is incorporated herein by reference[2].

5. The Debtors and their non-debtor affiliates (together, the "Company") are the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices. As of the Petition Date, the Company operated approximately 3,400 stores in more than 40 countries. The Debtors are headquartered in Topeka, Kansas, with extensive operations that span across the United States, Canada, Latin America, Asia, the Middle East and Europe.

6. The Debtors' cases are being jointly administered for procedural purposes only and the Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108. On March 1, 2019, the Office of the United States Trustee for the Eastern District of Missouri (the "U.S. Trustee") appointed the official committee

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

2

of unsecured creditors (the "Committee") pursuant to Bankruptcy Code section 1102 [Docket No. 359]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

7. Pursuant to Bankruptcy Code section 1121, the Debtors' Exclusive Filing Period is set to expire on June 18, 2019, and the Debtors' Exclusive Solicitation Period is set to expire on August 17, 2019.

## RELIEF REQUESTED

8. By this Motion, and pursuant to Bankruptcy Code section 1121 and Bankruptcy Rule 9006, the Debtors seek entry of the Proposed Order extending (i) the Exclusive Filing Period through and including October 16, 2019, and (ii) the Exclusive Solicitation Period through and including December 15, 2019.

## BASIS FOR RELIEF

9. Bankruptcy Code section 1121 establishes an initial period of 120 days after commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period during which only the debtor may solicit votes for a plan, both of which are subject to extension through motion practice. As stated above, the Debtors' Exclusive Filing Period will expire on June 18, 2019, and the Exclusive Solicitation Period will expire on August 17, 2019. Due to the large and complex nature of these chapter 11 cases, as well as the significant progress made thus far with respect to a potential reorganization, the Debtors believe it is prudent to seek a 120-day extension of the Exclusivity Periods.

10. Bankruptcy Code section 1121(d)(1) permits a court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof "for cause." Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual and successful reorganization of a debtor's affairs

3

based upon the facts and circumstances of a particular case. *See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003); *In re Wisc. Barge Line, Inc.*, 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987); *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

11.     Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing and solicitation periods: (a) the size and complexity of the case; (b) the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) whether the debtor has made progress in negotiations with its creditors; (d) the existence of good faith progress towards reorganization; (e) whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; (f) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (g) whether or not the debtor is paying its bills as they become due; (h) the amount of time which has elapsed in the case ; and/or (i) whether an unresolved contingency exists. *See, e.g., In re Hoffinger,* 292 B.R. at 643-44; *see also In re Acceptance Ins. Companies*, No. BK05-80059, 2008 WL 3992799, at *2 (Bankr. D. Neb. Aug. 20, 2008); *Matter of Interco Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992).

12.     Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g., In re Hoffinger*, 292 B.R. at 644 ("As always, we emphasize that these are only factors, not all which are relevant in every case. . . . It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."). Moreover, courts routinely grant a debtor's first request for an extension of the exclusivity periods. *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (the debtor's burden of demonstrating "cause" is

4

lighter the less that the exclusivity period has hitherto been extended); *see also In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing a 'reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.").

## I. The Debtors' Cases Are Large And Complex

13. As of the Petition Date, the Debtors and their non-debtor affiliates and subsidiaries constituted over one hundred entities. They operated and/or operate, as applicable, 3,400 stores in more than 40 countries across the world through three business segments (North America, Latin America, and franchise stores) and an e-commerce business. The Debtors' prepetition capital structure included approximately $470 million in aggregate principal amount of outstanding debt as of the Petition Date.

14. During the course of these chapter 11 cases, the Debtors have simultaneously pursued the orderly liquidation of their approximately 2,500 North American brick and mortar retail locations while strategically reviewing business options regarding their profitable Latin American and franchise businesses. Pursuant to such, and in order to maximize the Debtors' estates and efficiently administer these chapter 11 cases, the Debtors' management, legal staff, professionals and advisors have worked diligently on a wide number of critical tasks since the commencement of these cases. Specifically, following the Petition Date, the Debtors and their professionals have focused on, *inter alia*:

   a. commencing comprehensive store closing sales with respect to the Debtors' North American brick and mortar retail locations, with results from such sale process surpassing initial projections;

5

b. negotiating the Debtors' consensual use of cash collateral and a debtor in possession financing facility, which was subsequently repaid with liquidation sale proceeds following the repayment of the Debtors' ABL facility;

c. assessing the validity of over 1,800 proofs of claim filed in these cases up to this point;

d. developing a business plan with respect to the Debtors' go-forward business, centered on the Debtors' Latin American and franchise businesses;

e. analyzing tax issues related to certain potential sale and/or reorganization constructs;

f. complying with information, document and other requests from the Special Committee (as defined below) and its advisors in connection with the Special Committee's investigation into certain prepetition transactions;

g. reaching a consensus with the Committee and a substantial number of the Debtors' landlords with respect to the Debtors' use and occupancy of their leased North American retail locations and certain claims arising therefrom, including the treatment and payment of "stub rent" claims;

h. evaluating thousands of the Debtors' unexpired leases of nonresidential real property and executory contracts to determine whether to assume, assume and assign, or reject such leases and contracts, as well as effectuating such actions;

i. implementing supplementary governance procedures to address issues identified by the Court and certain parties-in-interest;

j. reviewing and analyzing significant licensing, joint venture and franchise agreements;

k. negotiating non-disclosure and related agreements to facilitate the sharing of information with creditors;

l. developing an IT transition plan and the framework for the separation of services as between the Debtors and certain of their non-Debtor affiliates;

m. interfacing with the Ontario Superior Court of Justice (Commercial List) and the appointed monitor in proceedings in respect of certain Canadian Debtors pursuant to the *Companies' Creditors Arrangement Act* (Canada);

n. addressing numerous questions, concerns and issues raised by vendors, landlords, customers and other parties in interest; and

o. obtaining first day relief on an interim and final basis.

6

15.     The Debtors have made significant progress towards concluding these cases in a value-maximizing manner, but still require additional time to resolve the complex outstanding issues in these cases.  As the successful wind-down of the North American brick and mortar retail operations nears completion, the Debtors have focused on developing a business plan to maximize the value of the remaining assets for the benefit of their creditor constituencies.

16.     Courts have regularly extended the exclusive periods provided for under Bankruptcy Code section 1121(d) in large, complex chapter 11 cases and have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods.  *See, e.g., In re Wisc. Barge Lines, Inc.*, 78 B.R. at 948 (stating that, if extensions of exclusivity were denied, it would be virtually impossible for major corporations . . . to ever enjoy the exclusive benefits provided by 11 U.S.C. § 1121"); *see also In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (approving debtor's third exclusivity extension and noting that the "traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"); *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause can include an "unusually large case"); *In re Texaco*, *Inc.*, 76 B.R. at 325-27 (cause existed to warrant extension of exclusivity based on the size and complexity of the case alone).  Thus, the Debtors submit that the size and complexity of these chapter 11 cases provides sufficient cause for the Court to extend the Exclusivity Periods.

**II.     The Debtors Need More Time To Negotiate A Plan Of Reorganization And Provide Relevant Constituents With Adequate Information**

17.     The requested 120-day extension of the Exclusivity Periods is appropriate and will not prejudice or pressure the Debtors' creditors.  The Debtors' liquidation sale process is scheduled to conclude on June 30, 2019, and the Debtors have been diligently formulating a

7

post-emergence business plan that will form the basis of a plan of reorganization. The Debtors, in cooperation with other parties in interest, are best positioned to achieve this result but will need sufficient time to complete the store closing process and conduct negotiations with the various constituents involved.

18. Moreover, on May 8, 2019, the Court entered the *Order with Respect to the Retention and Appointment of (I) Akin, Gump, Strauss, Hauer & Feld; and (II) Seward & Kissel as Counsel to the Debtors* [Docket No. 983] (the "Akin and S&K Retention Order")[3]. The Akin and S&K Retention Order provided, among other things, that a special committee of the board of managers of Payless Holdings LLC (the "Board") comprised of the Independent Managers be established by the Board (the "Special Committee"). The Special Committee has the exclusive authority on behalf of the Board to review, consider, negotiate, adopt or approve any document, action or transaction (including a plan of reorganization) in which Alden Global Capital and/or its affiliates (collectively, "Alden") or any manager of the Board is or may be interested or implicated.

19. Pursuant to the Akin and S&K Retention Order, the Special Committee was also tasked with adopting written protocols to ensure that appropriate informational barriers are established and enforced to prevent the inappropriate disclosure of certain information. The Special Committee negotiated the written protocols with the Committee, the Ad Hoc Group of Prepetition Term Lenders (the "Ad Hoc Group") and Axar Capital Management, and the protocols were adopted and filed with the Court on May 22, 2019 [Docket No. 1063]. Consistent with the Akin and S&K Retention Order and the formation of the Special Committee, the Special

---

[3] On February 19, 2019, the Court entered interim orders authorizing the retention of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as counsel to the Debtors [Docket No. 33] and of Seward & Kissel LLP ("S&K") as counsel to the Debtors at the direction of Patrick Bartels and Scott Vogel, independent managers of Payless Holdings LLC (the "Independent Managers") [Docket No. 29].

8

Committee has taken the lead role on behalf of the estates, with assistance from its own advisors[4] and other Debtor advisors, as appropriate, on chapter 11 plan considerations and development. Those efforts have been ongoing for less than a month at this point, but good progress is being made. The Special Committee will also take the lead for the Debtors in connection with plan negotiations.

### III.   The Debtors Have Made Good Faith Progress Towards Reorganization

20.   As stated above, the Debtors have been developing and evaluating their prospective business plan around which a plan of reorganization will be structured. To that end, the Debtors have been working diligently to evaluate a number of threshold issues including the allocation of value throughout the Debtors' corporate structure and related tax matters that will drive potential plan structures, and have been cooperating with the Debtors' creditor constituencies with respect to this assessment. This includes the sharing of significant due diligence and other materials.

21.   Further, pursuant to the Akin and S&K Retention Order, the Special Committee was granted exclusive authority on behalf of the Debtors to investigate, prosecute, release or settle any claims or causes of action in which Alden or any past or current manager of the Board is or may be implicated (the "<u>Insider Investigation</u>"). The Insider Investigation contemplates the evaluation of issues and claims critical to resolution of the Debtors' cases, and is well underway. To that end, the Special Committee has reviewed more than 400,000 pages of documents from the Debtors and others that were involved in significant prepetition related-party transactions, conducted initial interviews of key witnesses, and is in the process of arranging for the interviews of additional witnesses, including current and former managers, officers and

---

[4] S&K and FTI Consulting, Inc. ("FTI") are acting as advisors to the Special Committee. Concurrently with this Motion, on May 30, 2019, the Debtors, acting at the sole direction of the Special Committee, filed an application to retain FTI as financial advisor [Docket No. 1107].

employees of the Debtors, and the production of additional materials. Following the Akin and S&K Retention Order, the Special Committee also retained FTI as its proposed financial advisor to, among other things, advise it in connection with the Insider Investigation.

22. On May 20, 2019, the Court granted the motion of the Debtors, acting at the direction of the Special Committee, for an *Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004, 9006, and 9016 Authorizing Expedited Discovery and Granting Related Relief* [Docket No. 1036] (the "Special Committee's Rule 2004 Order"). The Special Committee's Rule 2004 Order will provide the Special Committee with the ability to respond quickly to developments in these cases as it looks to conclude the Insider Investigation, and will help persuade persons reluctant to cooperate with it to do so, and do so expeditiously, and if they fail to do so, to permit the Special Committee to promptly compel their cooperation without undue delay, allowing the pace of the remaining witness interviews and document collection to intensify as the investigation draws closer to completion.

23. The Special Committee is also cooperating with both the Committee and the Ad Hoc Group with regard to their respective review of potential estate claims, including sharing certain materials that it has received and coordinating and including those constituencies in witness interviews, and is committed to continuing to do so.

### IV.    The Debtors Have Been Paying Their Debts When Due

24. The Debtors have been diligently paying undisputed debts as they come due and expect to continue to be able to do so. Specifically, the Debtors have successfully paid off both their prepetition ABL facility as well as the entire debtor in possession financing facility obtained during these chapter 11 cases. The fact that a debtor has sufficient liquidity to pay its debts as they come due supports the granting of an extension of the Exclusivity Periods because it

10

suggests that such an extension will not jeopardize the rights and recoveries of creditors and counterparties.

### V. These Cases Are Less Than 120 Days Old

25. Although the Debtors have made much progress in less than four months, their accomplishments should not diminish the fact that a relatively small amount of time has lapsed in these chapter 11 cases and the Special Committee's expanded mandate has been in place for less than one month. An exclusivity extension will benefit all stakeholders by facilitating the Debtors' efforts to file, confirm and consummate a value-maximizing plan, which will inure to the benefit of all stakeholders in the most expeditious manner available. Further, as discussed above, courts routinely grant a debtor's first request for an extension of the exclusivity periods.

### VI. The Extension Of Exclusivity Requested In This Motion Is Reasonable In Light Of The Extensions Granted In Similar Chapter 11 Cases

26. Courts in this district have routinely granted relief similar to the relief requested herein in comparable chapter 11 cases. *See, e.g., In re Peabody Energy Corp.*, No-16-42529-399 (Bankr. E.D. Mo. Aug. 18, 2016) [Docket Nos. 1106, 1780 and 2415] (extending the debtors' exclusivity periods three times); *In re Payless Holdings LLC*, No. 17-42267-659 (Bankr. E.D. Mo. Aug. 2, 2017) [Docket No. 1728] (extending the debtors' exclusive period to file a plan by 60 days); *In re Abengoa Bioenergy US Holdings, LLC*, No. 16-41161-659 (Bankr. E.D. Mo. Apr. 27, 2017) [Docket No. 1341] (extending the debtors' exclusivity periods by 90 days); *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo. July 5, 2016) [Docket No. 1080] (extending the debtors' exclusivity periods by 120 days); and *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (Bankr. E.D. Mo. July 20, 2016) [Docket No. 999] (extending the debtors' exclusivity periods by 120 days).

11

## NOTICE

27.     The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Doug Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (c) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey Wolf), (d) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard), (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (f) counsel to the Prepetition Term Loan Agent, Norton Rose Fulbright US LLP (Attn: Stephen Castro and David Rosenzweig); (e) the Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (f) counsel to the Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (g) counsel to the Committee (i) Pachulski Stang Ziehl & Jones LLP (Attn: Robert Feinstein and Bradford Sandler) and (ii) Polsinelli LLP (Attn: Matthew Layfield); (h) the United States Attorney's Office for the Eastern District of Missouri; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

28.     WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

[*Remainder of page intentionally left blank.*]

Dated: May 30, 2019
      St. Louis, Missouri

/s/ *Richard W. Engel, Jr.*
Richard W. Engel, Jr. MO 34641
Erin M. Edelman MO 67374
John G. Willard MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
rengel@armstrongteasdale.com
eedelman@armstrongteasdale.com
jwillard@armstrongteasdale.com

-and-

Ira Dizengoff (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Kevin Zuzolo (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

- and -

Julie Thompson (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Counsel to the Debtors and Debtors in Possession*

- and –

13

John R. Ashmead (admitted *pro hac vice*)
Mark D. Kotwick (admitted *pro hac vice*)
Robert J. Gayda (admitted *pro hac vice*)
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8412
ashmead@sewkis.com
kotwick@sewkis.com
gayda@sewkis.com

*Counsel to the Debtors and Debtors in Possession,
acting at the direction of the Special Committee*

14