**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40883-659 |
| | ) | Chapter 11 |
| Payless Holdings LLC, *et al.*, | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Hearing Date:**  September 4, 2019 at |
| | ) | 10:00 a.m. (Central Time) |
| | ) | **Objection Deadline:**  August 28, 2019 at |
| | ) | 4:00 p.m. (Central Time) |
| | ) | **Hearing Location:**  Courtroom 7 North |

**DEBTORS' MOTION SEEKING ENTRY OF A SECOND
ORDER EXTENDING THEIR EXCLUSIVE PERIODS TO
FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order (the "Proposed Order")[1] extending (i) the period during which the Debtors have the exclusive right to file a chapter 11 plan through and including November 4, 2019 (the "Exclusive Filing Period"), and (ii) the period during which the Debtors have the exclusive right to solicit acceptances of their chapter 11 plan through and including January 3, 2020 (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusivity Periods").[2] In support of the Motion, the Debtors respectfully state as follows:

---

[1] A copy of the Proposed Order will be made available on the Debtors' case information website at https://cases.primeclerk.com/pss.

[2] On July 7, 2019, the July Debtors (as defined below) filed voluntary petitions under chapter 11 of the Bankruptcy Code. Pursuant to Bankruptcy Code section 1121, the July Debtors' Exclusive Filing Period is set to expire on November 4, 2019, and the July Debtors' Exclusive Solicitation Period is set to expire on January 3, 2020. For the avoidance of doubt, by this Motion, the Debtors do not seek for the Court to modify the July Debtors' Exclusivity Periods.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81-9.01(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for relief requested herein are section 1121 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

4. On February 18, 2019 (the "Petition Date"), twenty-seven (27) of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Original Debtors"). On July 7, 2019, Debtors Collective Brands Logistics Limited and Payless Sourcing, LLC filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "July Debtors" and, together with the Original Debtors, the "Debtors"). A comprehensive description of the Debtors' businesses and operations, capital structure and events leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Stephen Marotta, Chief Restructuring Officer of Payless Holdings LLC, in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* [Docket No. 22] (the "First Day Declaration") and the *Supplemental Declaration of Stephen Marotta in Support of Chapter 11 Petitions of the July Debtors* [Docket No. 1305] (the "Supplemental First Day Declaration") and incorporated herein by reference.

5. As of the Petition Date, the Debtors and their non-debtor affiliates operated approximately 3,400 stores in more than 40 countries acting as the largest specialty family

2

footwear retailer in the Western Hemisphere and offering a wide range of shoes and accessory items at affordable prices.

6. The Debtors' cases are being jointly administered for procedural purposes only and the Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108. On March 1, 2019, the Office of the United States Trustee for the Eastern District of Missouri (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") pursuant to Bankruptcy Code section 1102 [Docket No. 359]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

7. On June 25, 2019, the Court entered the *Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 1277] (the "First Extension Order"), extending the Original Debtors' Exclusive Filing Period through and including September 4, 2019 and (ii) the Original Debtors' Exclusive Solicitation Period through and including November 4, 2019.

8. Pursuant to Bankruptcy Code section 1121, the July Debtors' Exclusive Filing Period is set to expire on November 4, 2019, and the July Debtors' Exclusive Solicitation Period is set to expire on January 3, 2020.

9. On August 12, 2019, the Debtors filed the *Joint Reorganization Plan of Payless Holdings LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1459] (the "Plan") and the related *Disclosure Statement for Joint Reorganization Plan of Payless Holdings LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1460] (the "Disclosure Statement").

**RELIEF REQUESTED**

10. By this Motion, and pursuant to Bankruptcy Code section 1121 and Bankruptcy Rule 9006, the Debtors seek entry of the Proposed Order extending (i) the Debtors' Exclusive Filing Period through and including November 4, 2019, and (ii) the Debtors' Exclusive Solicitation Period through and including January 3, 2020. For the avoidance of doubt, the Debtors do not seek to modify the timing of the July Debtors' Exclusivity Periods under Bankruptcy Code section 1121.

**BASIS FOR RELIEF**

11. Bankruptcy Code section 1121 establishes an initial period of 120 days after commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period during which only the debtor may solicit votes for a plan, both of which are subject to extension through motion practice. As stated above, the Original Debtors' Exclusive Filing Period will expire on September 4, 2019, and the Original Debtors' Exclusive Solicitation Period will expire on November 4, 2019. Due to the large and complex nature of these chapter 11 cases, as well as the significant progress made thus far with respect to a potential reorganization, the Debtors believe it is prudent to seek an approximately 60-day extension of the Exclusivity Periods.[3]

12. Moreover, it is likely that the hearing on confirmation of the Plan will be held in or about the third week of October, and the Debtors believe that it is in the best interests of the estates that distractions surrounding exclusivity not be introduced to the confirmation hearing process. The Debtors' prompt exit from chapter 11 is the best way to preserve and maximize value and the Plan provides the structure and possibility for that. Retention of exclusivity will

---

[3] If the Court extends the Exclusive Filing Period by 60 days, the end of the Exclusive Filing Period would be on Sunday, November 3, 2019. Accordingly, the Debtors respectfully request that the Court set the Exclusive Filing Period to be through and including Monday, November 4, 2019.

4

ensure that the Debtors' stakeholders remain focused on the Plan and an exit from chapter 11 rather than use the expiring Exclusivity Periods as a point of leverage. An extension of the Exclusivity Periods will not prejudice any party's rights to seek relief at a later time for the purpose of terminating the Exclusivity Periods.

13. Bankruptcy Code section 1121(d)(1) permits a court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof "for cause." Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual and successful reorganization of a debtor's affairs based upon the facts and circumstances of a particular case. *See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003); *In re Wisc. Barge Line, Inc.*, 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987); *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

14. Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing and solicitation periods: (a) the size and complexity of the case; (b) the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) whether the debtor has made progress in negotiations with its creditors; (d) the existence of good faith progress towards reorganization; (e) whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; (f) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (g) whether or not the debtor is paying its bills as they become due; (h) the amount of time which has elapsed in the case ; and/or (i) whether an unresolved contingency exists. *See, e.g., In re Hoffinger,* 292 B.R. at 643-44; *see also In re Acceptance Ins. Companies*, No. BK05-

5

80059, 2008 WL 3992799, at *2 (Bankr. D. Neb. Aug. 20, 2008); *Matter of Interco Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992).

15. Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g., In re Hoffinger*, 292 B.R. at 644 ("As always, we emphasize that these are only factors, not all which are relevant in every case. . . . It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each.").

### I. The Debtors' Cases Are Large And Complex

16. As of the Petition Date, the Debtors and their non-debtor affiliates and subsidiaries constituted over one hundred entities. They operated 3,400 stores in more than 40 countries across the world through three business segments (North America, Latin America, and franchise stores) and an e-commerce business. The Debtors' prepetition capital structure included approximately $470 million in aggregate principal amount of outstanding debt as of the Petition Date.

17. During the course of these chapter 11 cases, the Debtors have simultaneously pursued the orderly liquidation of their approximately 2,500 North American brick and mortar retail locations while strategically reviewing business options regarding their profitable Latin American and franchise businesses. Further, in order to maximize the Debtors' estates and efficiently administer these chapter 11 cases, the Debtors' management, legal staff, professionals and advisors have worked diligently on a wide number of critical tasks since the commencement of these cases. Specifically, following the Petition Date, the Debtors and their professionals have focused on, *inter alia*:

> a. completing comprehensive store closing sales with respect to the Debtors' North American brick and mortar retail locations;

6

b. negotiating the Debtors' initial and continued consensual use of cash collateral and a debtor in possession financing facility, which was subsequently repaid with liquidation sale proceeds following the repayment of the Debtors' ABL facility;

c. reaching a consensus with the Committee and a substantial number of the Debtors' landlords with respect to the Debtors' use and occupancy of their leased North American retail locations and certain claims arising therefrom, including the treatment and payment of "stub rent" claims;

d. evaluating thousands of the Debtors' unexpired leases of nonresidential real property and executory contracts to determine whether to assume, assume and assign, or reject such leases and contracts, as well as effectuating such actions;

e. commencing the July Debtors' chapter 11 cases;

f. developing a business plan with respect to the Debtors' go-forward business, centered on the Debtors' Latin American, e-commerce and franchise businesses;

g. analyzing tax issues related to certain potential reorganization constructs;

h. assessing the validity of over 1,800 proofs of claim filed in these cases up to this point;

i. complying with information, document and other requests from the Special Committee (as defined below) and its advisors in connection with the Special Committee's investigation into certain prepetition transactions;

j. implementing supplementary governance procedures to address issues identified by the Court and certain parties-in-interest;

k. reviewing and analyzing significant licensing, joint venture and franchise agreements;

l. negotiating non-disclosure and related agreements to facilitate the sharing of information with creditors;

m. developing an IT transition plan and the framework for the separation of services as between the Debtors and certain of their non-Debtor affiliates;

n. drafting, negotiating and filing the Plan;

o. interfacing with the Ontario Superior Court of Justice (Commercial List) and the appointed monitor in proceedings in respect of certain Canadian Debtors pursuant to the *Companies' Creditors Arrangement Act* (Canada); and

7

      p. addressing numerous questions, concerns and issues raised by vendors, landlords, customers and other parties in interest.

18. The Debtors have made significant progress towards concluding these cases in a value-maximizing manner, but following the recent completion of the Store Closing Sales, require additional time to solicit, and attempt to resolve any open issues regarding, the Plan. The extended Exclusivity Periods will enable parties to concentrate their focus on the Plan and any necessary negotiations thereupon.

19. Courts have regularly extended the exclusive periods provided for under Bankruptcy Code section 1121(d) in large, complex chapter 11 cases and have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See, e.g., In re Wisc. Barge Lines, Inc.*, 78 B.R. at 948 (stating that, if extensions of exclusivity were denied, it would be virtually impossible for major corporations . . . to ever enjoy the exclusive benefits provided by 11 U.S.C. § 1121"); *see also In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. T'x. 1996) (approving debtor's third exclusivity extension and noting that the "traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"); *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause can include an "unusually large case"); *In re Texaco*, *Inc.*, 76 B.R. at 325-27 (cause existed to warrant extension of exclusivity based on the size and complexity of the case alone). Thus, the Debtors submit that the size and complexity of these chapter 11 cases provides sufficient cause for the Court to extend the Exclusivity Periods.

    **II.**     **Additional Time To Negotiate Any Issues Surrounding The Plan Is Beneficial**

20. The requested 60-day extension of the Exclusivity Periods is appropriate and will not prejudice or pressure the Debtors' creditors. Since entry of the First Extension Order, the

8

Debtors have worked with the parties in interest towards their ultimate goal of seeking confirmation of a plan of reorganization. Specifically, pursuant to the *Order with Respect to the Retention and Appointment of (I) Akin, Gump, Strauss, Hauer & Feld; and (II) Seward & Kissel as Counsel to the Debtors* [Docket No. 983] (the "Akin and S&K Retention Order")[4], the Special Committee was granted the exclusive authority on behalf of the Board to review, consider, negotiate, adopt or approve any document, action or transaction (including the Plan) in which the Alden Parties or any manager of the Board is or may be interested or implicated (the "Insider Transactions"). Further to its authority in connection with Insider Transactions, the Special Committee, with assistance from its advisors, has taken the lead role on behalf of the Debtors in plan negotiations with and among the stakeholder groups. The extension of the Exclusivity Periods will, in an abundance of caution, give the Debtors (at the direction of the Special Committee) time to work with parties on implementing any necessary or beneficial modifications to the Plan in an effort to achieve consensus. Prior to filing this Motion, the Debtors (through the Special Committee) advised their major creditor constituencies that they would be seeking the relief requested herein. As of yet, the Debtors have not heard any objection.

21. Because the First Extension Order requires the Debtors to file any request for an additional extension of the Exclusive Filing Period no later than a date that will enable it to be heard on September 4, 2019, the Debtors cannot wait to determine if there will be cause to amend or otherwise file the Plan before filing a motion for such extension. Thus, the Debtors believe that the requested relief is appropriate at this time.

---

[4] On February 19, 2019, the Court entered interim orders authorizing the retention of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as counsel to the Debtors [Docket No. 33] and of Seward & Kissel LLP ("S&K") as counsel to the Debtors at the direction of Patrick Bartels and Scott Vogel, independent managers of Payless Holdings LLC (the "Independent Managers") [Docket No. 29]. Pursuant to the Akin and S&K Retention Order a special committee, comprised of the Independent Managers (the "Special Committee"), was appointed.

9

### III. The Debtors Have Made Good Faith Progress Towards Reorganization

22. As noted, on August 12, 2019, the Debtors filed the Plan and Disclosure Statement and related approval and scheduling motion. Further, since the entry of the First Extension Order, the Debtors, at the direction of the Special Committee, have worked diligently towards developing and evaluating their prospective business plan around which a plan of reorganization could be structured. To that end, the Special Committee has been assessing a number of threshold issues including the allocation of value throughout the Debtors' corporate structure and related tax matters that impact upon potential plan structures, and has been engaging and cooperating with the Debtors' creditor constituencies with respect to these assessments. This has included the sharing of significant due diligence and other materials. The analysis and diligence evaluated by the Special Committee and shared with the creditor constituencies, as well as creditor discussion *inter se*, comprise the foundation for the terms of the Plan.

23. The Debtors' efforts, including those of the Special Committee, towards reorganization are reflected in the filing of the Plan. The Debtors respectfully submit that the filing indicates that their progression is on track and that their exclusive rights to steer the reorganization process should be maintained.

### IV. The Debtors Have Been Paying Their Debts When Due

24. The Debtors have been diligently paying undisputed debts as they come due and expect to continue to be able to do so. Specifically, the Debtors have successfully paid off both their prepetition ABL facility as well as the entire debtor in possession financing facility obtained during these chapter 11 cases. Partly reflective of this, the Debtors have negotiated a fully consensual extension of their use of cash collateral in these cases [Docket No. 1422]. The fact

that a debtor has sufficient liquidity to pay its debts as they come due supports the granting of an extension of the Exclusivity Periods because it suggests that such an extension will not jeopardize the rights and recoveries of creditors and counterparties.

### V.  These Cases Are Less Than 180 Days Old

25.  Although the Debtors have made much progress in less than six months, their accomplishments should not diminish the fact that a relatively small amount of time has lapsed in these chapter 11 cases in the context of one of the largest orderly chapter 11 retail liquidations in history, nor should they diminish the efforts undertaken by the Special Committee in connection with its expanded mandate. An exclusivity extension will benefit all stakeholders by facilitating the Debtors' efforts to solicit, confirm and consummate a value-maximizing plan, which will inure to the benefit of all stakeholders in the most expeditious manner available.

### VI.  The Extension Of Exclusivity Requested In This Motion Is Reasonable In Light Of The Extensions Granted In Similar Chapter 11 Cases

26.  Courts in this district have routinely granted relief similar to the relief requested herein in comparable chapter 11 cases. *See, e.g., In re Peabody Energy Corp.*, No-16-42529-399 (Bankr. E.D. Mo. Aug. 18, 2016) [Docket Nos. 1106, 1780 and 2415] (extending the debtors' exclusivity periods three times); *In re Payless Holdings LLC*, No. 17-42267-659 (Bankr. E.D. Mo. Aug. 2, 2017) [Docket No. 1728] (extending the debtors' exclusive period to file a plan by 60 days); *In re Abengoa Bioenergy US Holdings, LLC*, No. 16-41161-659 (Bankr. E.D. Mo. Apr. 27, 2017) [Docket No. 1341] (extending the debtors' exclusivity periods by 90 days); *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo. July 5, 2016) [Docket No. 1080] (extending the debtors' exclusivity periods by 120 days); and *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (Bankr. E.D. Mo. July 20, 2016) [Docket No. 999] (extending the debtors' exclusivity periods by 120 days).

## NOTICE

27. The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) counsel to the Prepetition ABL Administrative Agent, (i) Choate Hall & Stewart LLP (Attn: Kevin Simard, Doug Gooding and Jonathan Marshall) and (ii) Thompson Coburn LLP (Attn: Mark Bossi); (c) counsel to the FILO Agent, Greenberg Traurig, LLP (Attn: Jeffrey Wolf), (d) counsel to certain Prepetition Term Loan Lenders (i) Kramer Levin Naftalis & Frankel LLP (Attn: Stephen D. Zide), (ii) Doster, Ullom & Boyle, LLC (Attn: Gregory D. Willard), (iii) Stroock & Stroock & Lavan LLP (Attn: Kristopher M. Hansen and Daniel A. Fliman) and (iv) Lewis Rice LLC (Attn: Sonette T. Magnus); (f) counsel to the Prepetition Term Loan Agent, Norton Rose Fulbright US LLP (Attn: Stephen Castro and David Rosenzweig); (e) the Monitor, FTI Consulting Canada, Inc. (Attn: Paul Bishop, Greg Watson and Jim Robinson); (f) counsel to the Monitor, Bennett Jones LLP (Attn: Sean Zweig, Kevin Zych and Aiden Nelms); (g) counsel to the Committee (i) Pachulski Stang Ziehl & Jones LLP (Attn: Robert Feinstein and Bradford Sandler) and (ii) Polsinelli LLP (Attn: Matthew Layfield); (h) the United States Attorney's Office for the Eastern District of Missouri; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

28. WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

[*Remainder of page intentionally left blank.*]

12

Dated:  August 14, 2019
St. Louis, Missouri

/s/ *Richard W. Engel, Jr.*
Richard W. Engel, Jr. MO 34641
Erin M. Edelman MO 67374
John G. Willard MO 67049
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
rengel@armstrongteasdale.com
eedelman@armstrongteasdale.com
jwillard@armstrongteasdale.com

-and-

Ira Dizengoff (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Kevin Zuzolo (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
mlahaie@akingump.com
kzuzolo@akingump.com

- and -

David F. Staber (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
dstaber@akingump.com

-and-

Julie Thompson (*admitted pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K. Street N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
julie.thompson@akingump.com

*Counsel to the Debtors and Debtors in Possession*

- and –

John R. Ashmead (admitted *pro hac vice*)
Robert J. Gayda (admitted *pro hac vice*)
Catherine V. LoTempio (admitted *pro hac vice*)
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8412
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com

*Counsel to the Special Committee*